**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Ricardo Cajero Torres and Mario Bautista, each individually and on behalf all other employees similarly situated,

Plaintiffs,

- against -

Sushi Sushi Holdings Inc. d/b/a Sushi Sushi, Harlem Sushi Inc. d/b/a Sushi Sushi, Igor Grinberg, and Angie Herrera,

Defendants.

Case No. 19-cv-2532

**FIRST AMENDED COLLECTIVE ACTION COMPLAINT**

Plaintiffs Ricardo Cajero Torres and Mario Bautista (collectively "Plaintiffs") on their own behalf and on behalf of all others similarly situated, by and through their undersigned attorneys, Hang & Associates, PLLC, hereby file this complaint against the Defendants Sushi Sushi Holdings Inc. d/b/a Sushi Sushi, Harlem Sushi Inc. d/b/a Sushi Sushi, Igor Grinberg, and Angie Herrera, (collectively "Defendants"), allege and show the Court the following:

## INTRODUCTION

1. This is an action brought by the Plaintiffs on their behalf and on behalf of similarly situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law, arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, overtime compensation for all hours worked over forty (40) each workweek.

3. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime compensation, (3) reimbursement for expenses relating to tools of the trade, (4) liquidated damages, (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs.

4. Plaintiffs further allege pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") and New York Common law that they are entitled to recover from the Defendants: (1) unpaid minimum wages, (2) overtime compensation, (3) unpaid "Spread of Hours" premium, (4) unpaid agreed upon wages, (5) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL, (6) liquidated damages equal to the sum of unpaid minimum, unpaid spread of hours premium, and unpaid overtime compensation pursuant to the NY Wage Theft Prevention Act, (7) prejudgment and post-judgment interest; and (8) attorney's fees and costs.

**JURISDICTION AND VENUE**

5. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

**PLAINTIFFS**

7. Plaintiff Ricardo Cajero Torres is a resident of Queens and was employed as a delivery worker by Defendants, a Japanese-style sushi restaurant called Sushi Sushi, located at 1504 Amsterdam Ave. New York, NY 10031from on or about January 2016 to January 27, 2019.

8. Plaintiff Mario Bautista is a resident of Manhattan and was employed as a delivery worker by Defendants, a Japanese-style sushi restaurant called Sushi Sushi, located at 1504 Amsterdam Ave. New York, NY 10031, from on or about December 2017 to January 20, 2019.

**DEFENDANTS**

9. Defendants operate two Japanese-style sushi restaurants in New York City under a common name "Sushi Sushi," with one located at 1504 Amsterdam Ave, New York, NY 10031 ("Harlem Location") and the other located at 126 MacDougal Street, New York, NY 10038 ("West Village Location").

10. Upon information and belief, Individual Defendant Igor Grinberg owns both corporate entities, Sushi Sushi Holdings Inc. and Harlem Sushi Inc. who share their principal place of business at 126 MacDougal Street, New York, NY 10012 and owns and operates both the Harlem Location and the West Village Location.

**CORPORATE DEFENDANTS**

***Sushi Sushi Holdings Inc.***

11. Upon information and belief, Corporate Defendant, Sushi Sushi Holdings Inc. d/b/a Sushi Sushi, is a domestic business corporation organization and existing under the laws of the State of New York and maintains its principal place of business at 126 MacDougal Street, New York, NY 10038.

12.     Upon information and belief, Sushi Sushi Holdings Inc. operates a Japanese-style sushi restaurant under the trade name "Sushi Sushi", located at 126 MacDougal Street, New York, NY 10038; their West Village location.

13.     Upon information and belief, at all times relevant hereto, Sushi Sushi Holdings Inc. d/b/a Sushi Sushi, is a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over Five Hundred Thousand Dollars ($500,000) as it generates approximately Eight Thousand Dollars ($8,000) per month in sales.

14.     Upon information and belief, at all relevant times hereto, Sushi Sushi Holdings Inc. d/b/a Sushi Sushi, have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce", within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203 because Sushi Sushi Holdings Inc. purchases food, drink and restaurant supplies from outside the state of New York and internationally.

15.     Sushi Sushi Holdings Inc. d/b/a Sushi Sushi, constitutes an enterprise within the meaning of the FLSA, 29 U.S.C § 203(r).

16.     Sushi Sushi Holdings Inc. d/b/a Sushi Sushi has been Plaintiffs' employer within the meaning of the New York State Labor Law ("NYLL") § 2, 190, and 651.

***Harlem Sushi Inc.***

17.     Upon information and belief, Corporate Defendant, Harlem Sushi Inc. d/b/a/ Sushi Sushi, is a domestic business corporation organization and existing under the laws of the State of New York and maintains its principal place of business at 126 MacDougal Street, New York, NY 10012.

18. Upon information and belief, Harlem Sushi Inc. d/b/a Sushi Sushi, operates a Japanese-style sushi restaurant under the trade name "Sushi Sushi" located at 1504 Amsterdam Ave, New York, NY 10031; their Harlem location.

19. Upon information and belief, at all times relevant hereto, Harlem Sushi Inc. d/b/a Sushi Sushi, is a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over Five Hundred Thousand Dollars ($500,000) as it generates approximately Eight Thousand Dollars ($8,000) per month in sales.

**INDIVIDUAL DEFENDANTS**

20. Upon information and belief, Defendant Igor Grinberg is the owner, officer, director and/or managing agent of both Sushi Sushi Holdings Inc. d/b/a Sushi Sushi and Harlem Sushi Inc. d/b/a Sushi Sushi, and participated in its day-to-day operations, acted intentionally and maliciously, is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Sushi Sushi Holdings Inc. and Harlem Sushi Inc.

21. Upon information and belief, Defendant Igor Grinberg owns the stock of Sushi Sushi Holdings d/b/a Sushi Sushi and Harlem Sushi Inc. d/b/a Sushi Sushi, and manages and makes all business decisions including but not limited to the amount in salary the employees will receive, and the number of hours employees will work.

22. Upon information and belief, Defendant Angie Herrera is the supervisor, manager and/or managing agent of Sushi Sushi Holdings Inc. d/b/a Sushi Sushi and Harlem Sushi Inc. d/b/a Sushi Sushi, and participated in its day-to-day operations, acted intentionally and maliciously, is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29

C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Sushi Sushi Holdings Inc. and Harlem Sushi Inc.

23. Upon information and belief, Defendant Angie Herrera owns the stock of Sushi Sushi Holdings Inc. d/b/a Sushi Sushi and Harlem Sushi Inc. d/b/a Sushi Sushi, and manages and makes all business decisions including but not limited to the amount in salary the employee will receive, and the number of hours employees will work.

24. At all times relevant herein Sushi Sushi Holdings Inc. d/b/a Sushi Sushi, was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

25. At all times relevant herein Harlem Sushi Inc. d/b/a Sushi Sushi, was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

26. At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Sushi Sushi Holdings Inc. d/b/a Sushi Sushi.

27. At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Harlem Sushi Inc. d/b/a Sushi Sushi.

28. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages and overtime compensation and failed to provide them with a wage notice at the time of hiring in violation of the NYLL.

29. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

**STATEMENT OF FACTS**

30. Defendants committed the following alleged acts knowingly, intentionally and willfully.

31. Defendants knew that the nonpayment of minimum wages, overtime pay, spread of hours premium, and failure to provide wage statements and the required wage notice at the time of hiring would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

***Plaintiff Ricardo Cajero Torres***

32. From on or about January 2016 to January 27, 2019, Plaintiff Ricardo Cajero Torres ("Plaintiff Torres") was hired by Defendants as a delivery worker for Defendants' sushi restaurant at their Amsterdam Location.

33. Starting on or about January 2016 until January 27, 2019, Plaintiff Torres worked six (6) days per week: Monday, Thursday and Friday from 11:00 am to 11:00 pm; Tuesday, Wednesday and Sunday from 6:00 pm to 11:00 pm; and Saturdays off. During this period Plaintiff Torres was not provided with an hour break and worked approximately fifty-one (51) hours per week.

34. When his employment began, Plaintiff Torres was initially paid weekly in cash. Beginning on or about January 2018, Defendants began paying Plaintiff Torres weekly in combination of check and cash but failed to provide him a wage statement with each payment. Plaintiff Torres saw that other employees such as the cooks were still paid in cash while others were switched to checks and cash combination.

35. Plaintiff Torres was paid $7.50 per hour in the year 2016, $8.00 per hour in 2017, and $9.00 per hour in 2018, but was not paid overtime premium for hours worked above forty (40) hours per week.

36.     Despite Defendant maintaining a time sheet to track its employees' hours worked, Defendant failed to pay Plaintiff Torres overtime in violation of Federal and New York Labor laws.

37.     Plaintiff Torres was never informed in writing as to his hourly rate of pay and overtime rate of pay. In addition, Plaintiff Torres did not receive notice that Defendants were taking a tip credit, in violation of the New York Labor Law. In addition, Plaintiff Torres did not receive any notice as to the amount of tip credit allowance taken for each payment period during his employment. Therefore, any purported tip credit taken by Defendants with respect to Plaintiff Torres is invalid.

38.     Although Plaintiff Torres often worked shifts exceeding ten (10) hours per day, Plaintiff Torres was not compensated for New York State's "spread of hours" premium for shifts that lasted longer than ten (10) hours, one day each week.

39.     Defendants knowingly and willfully operated their business with a policy of not reimbursing Plaintiff Torres for expenses incurred in relation to tools of the trade used by Plaintiff Torres to make deliveries for the Defendant. Defendant required that Plaintiff Torres purchase an electronic bicycle in order to make deliveries faster. Plaintiff spent $2,000 to purchase said bicycle and $50 per month to maintain and repair the electric bicycle which was not reimbursed by the Defendants.

40.     Under the FLSA, the Plaintiff Torres is entitled to a credit for expenses for tools of trade.

***Plaintiff Mario Bautista***

41.     From on or about December 2017 to January 20, 2019, Plaintiff Mario Bautista ("Plaintiff Bautista") was hired by Defendants as a delivery worker for Defendants' sushi restaurant at their Harlem Location.

42.     Starting on or about December 2017 until January 20, 2019, Plaintiff Bautista worked six (6) days per week with Tuesdays off.  His schedule was: Monday, Wednesday, Thursday, and Friday from 12:00 pm to 2:00 pm and then 5:00pm to 11:00pm, and on Sunday from 11:00 am to 9:00 pm.  During this period Plaintiff Bautista worked approximately fifty (50) hours per week.

43.     Plaintiff Bautista was paid $8.00 per hour but was not paid overtime for hours worked beyond forty (40) hours.

44.     Despite Defendant maintaining a time sheet to track its employees' hours worked, Defendant failed to pay Plaintiff Bautista overtime in violation of Federal and New York Labor laws.

45.     Defendant paid Plaintiff Bautista in cash every Friday, but often delayed paying the full amount owed for the week requesting Plaintiff Bautista wait for the next week to be paid the difference.  This constant practice left a carrying balance of Plaintiff Bautista's owed wages that left Plaintiff Bautista having to account for and plead for his unpaid wages.

46.     Plaintiff Bautista was never informed in writing as to his hourly rate of pay and overtime rate of pay. In addition, Plaintiff Bautista did not receive notice that Defendants were taking a tip credit, in violation of the New York Labor Law. In addition, Plaintiff Bautista did not receive any notice as to the amount of tip credit allowance taken for each payment period during his employment. Therefore, any purported tip credit taken by Defendants with respect to Plaintiff Bautista is invalid.

47. Although Plaintiff Bautista worked a shift exceeding ten (10) hours per day, Plaintiff Bautista was not compensated for New York State's "spread of hours" premium for shifts that lasted longer than ten (10) hours, for that day each week.

48. Defendants knowingly and willfully operated their business with a policy of not reimbursing Plaintiff Bautista for expenses incurred in relation to tools of the trade used by Plaintiff Bautista to make deliveries for the Defendant. Defendants required Plaintiff Bautista to purchase and maintain his own electric bike in order to make deliveries faster. It cost Plaintiff Bautista $1,450 to purchase said bicycle and $100 per month to maintain it, which was not reimbursed by the Defendants.

49. Under the FLSA, the Plaintiff Bautista is entitled to a credit for expenses for tools of trade.

50. Defendants did not compensate Plaintiffs overtime compensation according to state and federal laws.

51. Plaintiffs were not compensated for New York State's "spread of hours" premium for shifts that lasted longer than ten (10) hours, one day each week.

52. Defendants did not provide Plaintiffs with a wage notices at the time of their hiring.

53. Defendants did not provide Plaintiffs with a wage statements with each pay.

54. Defendants did not reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs to make deliveries for the Defendant.

55. Upon information and belief, Defendants employed the same pay practices at both their Harlem Location and West Village Location.

56. Defendants committed the following alleged acts knowingly, intentionally and willfully.

57. Defendants knew that the nonpayment of overtime and minimum wage would economically injure Plaintiffs and the Collective Members by their violation of federal and state laws.

58. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

59. Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

60. Defendants did not provide Plaintiffs and other Collective Action Members with written notices about the terms and conditions of their employment upon hire in relation to their rate of pay, regular pay cycle and rate of overtime pay. These notices were similarly not provided upon Plaintiffs and other Collective Members' pay increase(s).

**COLLECTIVE ACTION ALLEGATIONS**

61. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs or other similarly situated employees.

62. Defendants knowingly and willfully operated their business with a policy of not paying the New York State unpaid "Spread of Hours" premium to Plaintiffs and other similarly situated employees.

63. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

64.     Plaintiffs brings this action, each individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants at the Restaurant location for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom failed to receive minimum wages, spread-of-hours pay, and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members"), and have been subject to the same common decision, policy, and plan to not provide required wage notices at the time of hiring and wage statements with each pay, in contravention to federal and state labor laws.

65.     Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than ten (10) Collective Action Members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

66.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

67.     This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either

inconsistent or varying adjudication with respect to individual members of this collective that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

68.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

69.    Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a.  Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b.  Whether the Defendants failed to pay the Collective Action Members the minimum wage in violation of the FLSA and the regulations promulgated thereunder;

c.  Whether the Defendants failed to pay the Collective Action Members spread of hours payment for each day an employee worked over 10 hours;

d.  Whether the Defendants failed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

e. Whether the Defendants failed to pay the Collective Action Members spread of hours payment for each day an employee worked over 10 hours;

f. Whether the Defendants failed to provide the Collective Action Members with a wage notice at the time of hiring as required by the NYLL;

g. Whether the Defendants failed to provide the Collective Action Members with a wage statements at the time of pay as required by the NYLL;

h. Whether the Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and,

i. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

70. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

71. Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

**STATEMENT OF CLAIM**

**COUNT I**
**[Violations of the Fair Labor Standards Act—Minimum Wage Brought on behalf of the Plaintiffs and the FLSA Collective]**

72. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

73. At all relevant times, upon information and belief, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods"

for "commerce," within the meaning of the FLSA, 29 U.S.C. §§206(a) and §§207(a). Further, Plaintiffs are covered within the meaning of FLSA, U.S.C. §§206(a) and 207(a).

74. At all relevant times, Defendants employed "employees" including Plaintiffs, within the meaning of FLSA.

75. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

76. The FLSA provides that any employer engaged in commerce shall pay employees the applicable minimum wage. 29 U.S.C. § 206(a).

77. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

78. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

79. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT II**
**[Violation of New York Labor Law—Minimum Wage**
**Brought on behalf of Plaintiffs]**

80. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

81. At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

82. Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

83. Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay them minimum wages in the lawful amount for hours worked.

**COUNT III**
**[Violations of the Fair Labor Standards Act—Overtime Wage Brought on behalf of the Plaintiffs and the FLSA Collective]**

84. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

85. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

86. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

87. Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

88. At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and

Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

89. The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

90. Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff's and FLSA Collectives' labor.

91. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action Members.

**COUNT IV**
**[Violation of New York Labor Law—Overtime Pay]**

92. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

93. Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

94. Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the NYLL.

95. Defendants' failure to pay Plaintiffs and the FLSA Collective was not in good faith.

**COUNT V**
**[Violation of New York Labor Law—Spread of Hour Pay]**

96. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

97. The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, et seq., and §§650, et seq., and New York State Department of Labor regulations §146-1.6.

98. Defendants' failure to pay Plaintiffs and FLSA Collective spread-of-hours pay was not in good faith.

**COUNT VI**
**[Violation of the Fair Labor Standards Act —Failure Reimburse for Expenses relating to Tools of the Trade]**

99. Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members repeat and re-allege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

100. At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs in order to make deliveries for Defendant's restaurant business.

101. Defendants failed to pay Plaintiffs for expenses incurred in relation to tools of the trade, which includes but is not limited to purchasing a bicycle and the cost of maintaining and repairing the bicycle due to its constant use for the Defendant's restaurant. At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs in order to make deliveries for Defendants.

102. Defendants knew of and/or showed a willful disregard for the provisions of the

FLSA as evidenced by their failure to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiff when Defendants knew or should have known such was due.

**COUNT VII**
**[Violation of New York Labor Law—Time of Hire Wage Notice Requirement]**

103. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

104. The Defendants failed to furnish to the Plaintiffs at the time of hiring a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL, § 195(1).

105. Due to the defendants' violation of the NYLL, § 195(1) each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

**COUNT VIII**
**[Violation of New York Labor Law—New York Pay Stub Requirement]**

106. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

107. The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §198-1(d).

108. Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of Plaintiffs and did not provide the pay stub on or after each Plaintiff's payday.

109. Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for Plaintiffs for costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA collective members, respectfully requests that this court enter a judgment providing the following relief:

a) Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed by defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

b) Certification of this case as a collective action pursuant to FLSA;

c) Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d) A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)    An injunction against Sushi Sushi Holdings Inc. d/b/a Sushi Sushi its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    An injunction against Harlem Sushi Inc. d/b/a Sushi Sushi its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

g)    An award of unpaid wages and minimum wages due to Plaintiffs under the FLSA and New York Labor Law, plus compensatory and liquidated damages in the amount of twenty five percent under NYLL §§190 et seq., §§650 et seq., and one hundred percent after May 1, 2011 under NY Wage Theft Prevention Act, and interest;

h)    An award of unpaid overtime wages due under FLSA and New York Labor Law, plus compensatory and liquidated damages in the amount of twenty five percent under NYLL §§190 et seq., §§650 et seq., and one hundred percent after May 1, 2011 under NY Wage Theft Prevention Act, and interest;

i)    An award of unpaid "spread of hours" premium due under the New York Labor Law;

j)    An award of unpaid expenses relating to tools of the trade due under the FLSA;

k)    An award of damages for Defendants' failure to provide wage notice at the time of hiring as required under the New York Labor Law.

l)    An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay minimum wages, and overtime compensation pursuant to 29 U.S.C. §216;

m)    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wages, "spread of hours" premium, and overtime compensation pursuant

to New York Labor Law;

n) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

o) The cost and disbursements of this action;

p) An award of prejudgment and post-judgment fees;

q) Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

r) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
May 10, 2019

**HANG & ASSOCIATES, PLLC**

By: /s/ *Lorena P. Duarte*

Lorena P. Duarte, Esq.
136-20 38th Ave., Suite #10G
Flushing, New York 11354
Telephone: (718) 353-8522
Email: *lduarte@hanglaw.com*
*Attorneys for Plaintiffs*

# EXHIBIT 1

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Sushi Sushi and/or related entities.

I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

***SPANISH TRANSLATION:***

**CONSENTIMIENTO PARA DEMANDAR BAJO**
**LEY DE NORMAS LABORALES FEDERALES**

Soy un empleado actualmente o fui empleado anteriormente por Sushi Sushi y/o entidades relacionadas.

Doy mi consentimiento para ser demandante en una acción para cobrar los salarios no pagados. Estoy de acuerdo en que estoy obligado por los términos del Retención Contingente de Tarifas firmados por el demandante nombrado en este caso.

Ricardo Cajero Torres
Full Legal Name (Print)

[signature]
Signature

1/28/19.
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Sushi Sushi and/or related entities.

I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

***SPANISH TRANSLATION:***

**CONSENTIMIENTO PARA DEMANDAR BAJO**
**LEY DE NORMAS LABORALES FEDERALES**

Soy un empleado actualmente o fui empleado anteriormente por Sushi Sushi y/o entidades relacionadas.

Doy mi consentimiento para ser demandante en una acción para cobrar los salarios no pagados. Estoy de acuerdo en que estoy obligado por los términos del Retención Contingente de Tarifas firmados por el demandante nombrado en este caso.

Mario Bautista
Full Legal Name (Print)

Signature

1/30/19
Date