UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICARDO CAJERO TORRES, MARIO
BAUTISTA, and MANUEL DIAZ CORTES,

                                  Plaintiffs,

                                  -v-

SUSHI SUSHI HOLDINGS INC., d/b/a SUSHI
SUSHI, HARLEM SUSHI INC., d/b/a SUSHI SUSHI,
IGOR GRINBERG, and ANGIE HERRERA,

                                  Defendants.

19 Civ. 2532 (PAE) (RWL)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

    This decision addresses three disputes in this action, which is brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Pending are (1) a motion *in limine* by plaintiffs Ricardo Cajero Torres ("Cajero Torres"), Mario Bautista ("Bautista"), and Manuel Diaz Cortes ("Cortes"), seeking to preclude defendants from introducing certain evidence at trial; (2) defendants' request that Cortes's claims be dismissed as untimely; and (3) a motion for a default judgment by plaintiffs against the corporate defendants, Sushi Sushi Holdings Inc. ("Sushi Sushi") and Harlem Sushi Inc. ("Harlem Sushi"), which no longer have legal representation. The Court resolves those issues as follows.

## I.    Background

    Plaintiffs Cajero Torres and Bautista commenced this action in March 2019. Dkt. 1. On March 22, 2019, the Court referred the case for general pretrial management to the Honorable Robert W. Lehrburger, U.S. Magistrate Judge. Dkt. 5. On May 10, 2019, Cajero Torres and Bautista filed the first amended complaint. Dkt. 14 ("FAC"). On June 7, 2019, defendants answered the FAC. Dkt. 18. On July 8, 2019, Judge Lehrburger entered a case management

plan, which set the close of fact discovery on December 20, 2019, a deadline which was later extended through January 2020. Dkts. 27, 32. On October 9, 2019, plaintiffs filed the second amended complaint, adding a new plaintiff—Cortes—which is now the operative complaint in this case. Dkt. 37 ("SAC"). The SAC alleges that defendants failed to pay plaintiffs the minimum wage, overtime wages, "spread of hour" pay under the NYLL, "tools of the trade" reimbursements under the FLSA, and tips and gratuities, and also failed to provide certain wage statements and notices. *Id.* On November 12, 2019, defendants answered the SAC. Dkt. 38 ("Answer").

On May 19, 2020, after six months of inactivity on the docket, plaintiffs moved to reopen discovery, until July 31, 2020, to conduct depositions. Dkt. 40. The next day, Judge Lehrburger denied that request is untimely, noting that discovery had closed in January 2020 and that "making that request now is far beyond the pale." Dkt. 41. On June 12, 2020, at the parties' request, Judge Lehrburger referred the case to the District's mediation program. Dkt. 43.

In November 2020, the Court received notice that the parties' efforts at mediation had failed. As such, and given the close of discovery, the Court scheduled a case-management conference for December 23, 2020. Dkt. 47. At that conference, the Court learned that not only had plaintiffs failed to take depositions during the discovery window—they had, in fact, failed to make *any* discovery requests at all. *See* Dkt. 50.[1] At that conference, the Court set deadlines for the parties' pretrial filings, as required by the Court's individual rules. Dkt. 49. The same day, the Court referred the case to Judge Lehrburger for purposes of settlement discussions. Dkt. 51.

---

[1] Defendants had, however, voluntarily and informally produced some documents to plaintiffs during the course of discovery, in an effort to reach an early resolution of this case, but not before the addition of Cortes as a plaintiff. Thus, plaintiffs never sought or received any records relevant to Cortes's claims.

2

On January 14 and 19, 2021, defendants' counsel moved to withdraw, citing a breakdown in communications and lack of payment. Dkts. 59, 63. On February 5, 2021, the Court, after giving defendants several weeks to retain new counsel during which no such counsel appeared, granted those motions. Dkt. 71. The order granting those motions noted that, because corporate entities such as Sushi Sushi and Harlem Sushi cannot proceed *pro se*, the Court would entertain a motion from plaintiffs seeking a default judgment against those defendants. *Id.* at 1–2 (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)). On February 16 and March 2, 2021, the Court again reminded plaintiffs that they were at liberty to move for a default judgment against the now-unrepresented corporate defendants. Dkts. 75, 83.

On March 12, 2021, after several extensions—some of which were requested only after the parties' deadlines had passed—the parties filed a joint proposed pretrial order, and plaintiffs filed proposed *voir dire* and a proposed jury charge. Dkts. 84–86. In the pretrial order, defendants argue that Cortes's claims are all untimely under the FLSA. Dkt. 84 ("JPTO") at 2. On March 15, 2021, a day after their deadline to do so, plaintiffs filed a motion *in limine*, seeking to exclude (1) certain exhibits from trial based on defendants' purported failure to produce them during discovery; and (2) the testimony of two witnesses whom defendants had not disclosed in their initial disclosures or thereafter. Dkt. 91 ("Pl. MIL"). On March 23, 2021, defendant Igor Grinberg ("Grinberg"), proceeding *pro se*, opposed that motion, arguing that he had provided all relevant documents to his counsel during discovery, and that he believed his counsel had served those documents on plaintiffs despite plaintiffs' failure to serve a single request for production. Dkt. 95 ("Def. MIL Opp'n"). On March 26, 2021, plaintiffs replied. Dkt. 96 ("Pl. MIL Reply"). On March 31, 2021, in response to a letter from Grinberg, the Court noted that he had missed his deadline to move *in limine* and that such deadline would not be extended again. Dkt. 99.

On April 6, 2021, the Court held a final pretrial conference. *Id.* There, the Court confirmed with plaintiffs' counsel that plaintiffs had not served any discovery in the case. The Court also noted that plaintiffs still had not moved for a default judgment against the corporate defendants, who had been unrepresented since early February 2021. Given that delay, and "the inattention that has more broadly characterized plaintiffs' counsel's litigation of this action," the Court directed plaintiffs to move for a default judgment no later than April 20, 2021. Dkt. 108 at 1–2. The Court further warned that, if plaintiffs failed to do so, the Court would dismiss their claims against the corporate defendants for failure to prosecute under Federal Rule of Civil Procedure 41(b). *Id.* at 2. Also at the April 6 conference, the Court directed the parties—if their upcoming April 12 mediation conference with Judge Lehrburger proved unsuccessful—to exchange proposed trial exhibits within 48 hours of that conference, to avoid uncertainty over what documents were at issue in the case.

On April 15, 2021, Grinberg filed a letter confirming his compliance with the Court's order regarding the exchange of exhibits, and criticizing plaintiffs' failure to do so. Dkt. 100. On April 16, 2021, after learning that the parties' settlement efforts had again fallen through, the Court issued an order addressing two issues: (1) the timeliness of Cortes's claims; and (2) the dispute over the parties' respective exhibits. Dkt. 101. As to the former, the Court directed plaintiffs, by April 23, 2021, "to identify the basis in admissible evidence, if any, for finding Cortes's FLSA claims to be timely and, in any event, the basis, if any, for exercising supplemental jurisdiction over any timely New York Labor Law claims asserted by Cortes. If plaintiffs cannot do so," the Court warned, it "intend[ed] to dismiss all of Cortes's claims." *Id.* at 1. As to the latter, the Court noted that the Court could not discern from the present record, "which documents, if any, were provided by each side" during discovery. *Id.* at 2. To facilitate

its review, the Court thus directed both sides to file, also by April 23, 2021, copies of their proposed trial exhibits on the docket, with proof of disclosure during discovery, if such proof existed. *Id.*

On April 20, 2021—plaintiffs' deadline to move for a default judgment against the corporate defendants—the day passed without plaintiffs filing any such motion. The next day, however, plaintiffs did so. Dkt. 102; *see* Dkt. 103 ("Pl. DJ Mem."); Dkts. 104–07. On April 22, 2021, the Court issued an order to show cause, which described plaintiffs' repeated lapses in this case and directed them to explain why they had, yet again, failed to comply with an order of the Court, and why the Court should not, as a result, deny their default motion and dismiss the claims against the corporate defendants. Dkt. 108 ("OTSC"). On April 23, 2021, plaintiffs' counsel filed a declaration explaining that the delay in filing the motion for default was the result of his entry of the wrong date on his calendar, and arguing that dismissal for failure to prosecute is inappropriate under governing Second Circuit precedent. Dkt. 109 ("Zhu Decl.").

Also on April 23, 2021, plaintiffs filed a letter in response to the Court's April 16 order. Dkt. 110 ("Pl. Apr. 23 Ltr."). In it, plaintiffs did not attempt to argue that Cortes's claims are timely under the FLSA. Instead, they argued only that his NYLL claims—which are subject to a longer statute of limitations—are timely, and that the Court should exercise supplemental jurisdiction over those state-law claims. *Id.* at 1–3. They did not cite any evidence in support of that proposition. *Id.* In the same letter, plaintiffs also attached all seven of their proposed trial exhibits, while noting that some of defendants' exhibits remain inaccessible to plaintiffs. *Id.* at 3–4. The same day, Grinberg filed a letter attaching some trial exhibits and discussing how some were produced to plaintiffs' counsel (while, as to others, noting only that he had provided the documents to *his own* counsel). Dkt. 112 ("Def. Apr. 23 Ltr.").

On April 26, 2021, Grinberg filed another letter, which (1) argues that Cortes's claims should be dismissed with prejudice, given, *inter alia*, his alleged perjury; (2) faults plaintiffs for seeking to use evidence at trial that defendants had produced during discovery; and (3) argues that the Court should deny plaintiffs' motion for a default judgment and dismiss the claims against the corporate defendants with prejudice. Dkt. 113 ("Apr. 26 Ltr.").

## II. Discussion

### A. Motion *in Limine*

First, the Court addresses plaintiffs' motion *in limine*. That motion seeks to exclude (1) the testimony of two trial witnesses—Kristen Newland and Raul Morales—whose identities were not disclosed to plaintiffs until the filing of the JPTO; and (2) certain defense exhibits that plaintiffs argue were not produced to them during discovery. *See* Pl. MIL. The Court holds with plaintiffs as to the former, and with defendants as to the latter.

Rule 26 requires parties to disclose "each individual likely to have discoverable information" as well as "a description by category and location" of all "documents, electronically stored information, and tangible things" that the disclosing party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i), (ii). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004).

"The imposition of sanctions under Rule 37 lies within the broad discretion of the trial court." *Beata Music LLC v. Danelli*, No. 18 Civ. 6354 (JGK), 2021 WL 195708, at *4 (S.D.N.Y. Jan. 20, 2021) (citing *Minotti v. Lensink*, 895 F.2d 100, 102–03 (2d Cir. 1990)). In exercising that discretion as to undisclosed witnesses, courts in this Circuit generally consider four factors:

6

> (1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)). In all cases, however, "[p]reclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution." *Daudier v. E & S Med. Staffing, Inc.*, No. 12 Civ. 206 (PAE), 2013 WL 4407072, at *8 (S.D.N.Y. Aug. 15, 2013) (quoting *Ebewo*, 309 F. Supp. 3d at 607).

The Court agrees that preclusion of Newland's and Morales's testimony is appropriate here. Defendants failed to identify either witness in their initial disclosures, never supplemented those disclosures, and have now failed to provide any explanation for that failure. Nor have they shown that these witnesses are particularly important to the litigation. As to Newland, defendants proffer that her testimony will (1) show that Herrera was not a manager, because Newland held the same position Herrera did (cashier) and can speak to the functions of their shared role; and (2) explain "the interactions between the 'cashiers' and" plaintiffs. Def. MIL Opp'n at 3–4. The former, however, appears unnecessary given Herrera's ability to testify as to her own role; and the latter is only vaguely described. As to Morales, it is unclear if his testimony would be relevant. Defendants explain that he primarily would authenticate certain records relating to plaintiffs, and that "[h]e will refute all of the plaintiffs['] claims." *Id.* at 4; JPTO at 7. But defendants also admit that Morales *replaced* Cajero Torres in his role in 2019, and thus that he did not overlap at all with any of the plaintiffs as an employee of defendants. Def. MIL Opp'n at 4. It is thus unclear on what basis he would be able to authenticate records that were created before he became an employee of defendants, let alone refute plaintiffs' factual allegations. The Court also finds that plaintiffs would be prejudiced by the admission of these witnesses'

7

testimony. To be sure, plaintiffs' failure to take *any* depositions in this case weighs against that finding, given the unlikelihood that they would have, even if disclosed, taken these witnesses' depositions. But the Court cannot be sure that plaintiffs would not have deposed these specific witnesses had they been disclosed. And plaintiffs' inability to do so—caused by defendants' nondisclosure—would, in that event, be a source of prejudice at trial. Finally, although a continuance to allow plaintiffs to depose each witness is possible, *see Patterson*, 440 F.3d at 117, as trial is not yet scheduled,[2] the Court remains disinclined to reopen discovery at this late stage of the litigation. Thus, the Court grants plaintiffs' motion *in limine* to the extent it seeks to exclude the trial testimony of Newland and Morales.

As to the documents at issue, however, plaintiffs do not offer any basis for the imposition of sanctions. Rule 37(c)(1), on which plaintiffs rely, speaks conditionally: "*if* a party fails to provide information or identify a witness . . . , the party is not allowed to use that information or witness . . . at trial." But here, unlike with the failure to disclose trial witnesses, plaintiffs do not identify any predicate failure by defendants. Rather, as shown by the exhibits plaintiffs filed with their motion *in limine*, defendants appear to have provided a thorough identification of the categories of documents on which they expected to rely at trial, *see* Dkt. 94-1 (initial disclosures), and voluntarily produced substantial material to plaintiffs—despite plaintiffs' abject failure to request *any* such productions, Dkt. 94-2 (describing document production). That defendants now seek to introduce some unrequested documents, which they had not previously voluntarily produced, does not merit sanctions. Because trial is not imminent, and plaintiffs will thus have

---

[2] Given the District's central scheduling of trials during the COVID-19 pandemic, the Court does not have complete discretion over the timing of trials. The Court has requested a trial date in this case in September 2021, and will notify the parties when such date is assigned.

time to review these documents well in advance thereof, the Court denies plaintiffs' motion *in limine* as it relates to previously unproduced documents. That said, to the extent that defendants have failed to produce to plaintiffs any such documents or other evidence that they intend to use at trial to date, *see* Pl. Apr. 23 Ltr. at 3, they are hereby directed to do so forthwith, in a format accessible to plaintiffs.[3]

### B. Timeliness of Cortes's Claims

Next, the Court addresses the timeliness of Cortes's claims. As defendants note, the SAC pleads only that Cortes worked for defendants between June 2013 and July 2016, even though the original complaint in this action by the other plaintiffs was filed in May 2019 and Cortes joined the case as a plaintiff in August 2019. JPTO at 2; SAC ¶ 54; *see* Apr. 26 Ltr. at 1–2.[4] On their face, those dates of employment place him far outside the FLSA's general two-year statute of limitations, and also beyond the extended window for claims of willful violations. *See* 29 U.S.C. § 255(a). And, directed by the Court "to identify the basis in admissible evidence, if any, for finding Cortes's FLSA claims to be timely," plaintiffs have now conceded that no such basis exists. *See* Pl. Apr. 23 Ltr. at 3 (Cortes's "FLSA claims are time barred."). Instead, plaintiffs

---

[3] Defendants, through Grinberg, have also sought to preclude five of the seven exhibits that plaintiffs intend to introduce at trial, arguing that plaintiffs did not produce them during discovery. *See* JPTO at 8. The Court has already denied that request as untimely. *See* Dkt. 99. In any event, it appears from Grinberg's most recent writing that his objections are based on a misunderstanding that plaintiffs are not "allowed to use evidence [] that the defendants sent to them during the period of discovery as the plaintiff[s'] own evidence" at trial. *See* Apr. 26 Ltr. at 3. Plaintiffs are, in fact, entitled to introduce at trial documents that defendants produced during discovery. And, having reviewed plaintiffs' proposed exhibits, *see* Pl. Apr. 23 Ltr., Exs. P-1 to P-7, they appear to match the descriptions provided in the JPTO. Accordingly, the Court will not exclude plaintiffs' proposed exhibits.

[4] Defendants also assert—without providing evidence in support—that Cortes only worked up through April 30, 2015. *See* Apr. 26 Ltr. at 1. Absent evidentiary support, the Court does not take that allegation into account. In any event, given the Court's dismissal of Cortes's claims on other grounds, such a factual showing would not alter the disposition here.

argue that, notwithstanding the untimeliness of Cortes's federal claims, the Court should exercise supplemental jurisdiction over his state-law claims under the NYLL, which has a longer, six-year statute of limitations. *See* N.Y. Lab. Law § 198(3). The Court holds otherwise.

Defendants did not file a motion for summary judgment seeking dismissal of Cortes's claims. However, they did include the statute of limitations as an affirmative defense in their Answer to the SAC, and raised it in the JPTO. *See* Answer at 20; JPTO at 2. That suffices to preserve the defense through trial. *See, e.g.*, *Colon v. Goord*, 115 F. App'x 469, 470 (2d Cir. 2004) (summary order) ("Defendants have not waived their statute of limitations defense by failing to raise it in their motion under Rules 12(c) and 56. Statute of limitations is an affirmative defense that is preserved by assertion in a party's first responsive pleading."); *Kulzer v. Pittsburgh-Corning Corp.*, 942 F.2d 122, 125 (2d Cir. 1991) ("bare assertion" of statute of limitations in answer preserved it to be raised again mid-trial, despite defendant's failure to raise it in pretrial dispositive motions). And "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that [they] had to come forward with all of [their] evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *see In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 96 (2d Cir. 2016) ("The Federal Rules state that a court may grant summary judgment *sua sponte* . . . '[a]fter giving notice and a reasonable time to respond' and 'after identifying for the parties material facts that may not be genuinely in dispute.'" (quoting Fed. R. Civ. P. 56(f))).

Here, the Court identified for plaintiffs the "material facts that may not be genuinely in dispute"—*i.e.*, the timeliness of Cortes's federal claims, and whether the Court should exercise supplemental jurisdiction over his state-law claims. *In re 650 Fifth Ave.*, 830 F.3d at 96. And, after defendants raised the issue in the JPTO and the Court discussed it with both sides at the

final pretrial conference, the Court gave plaintiffs a week to marshal evidence in support of their position on that issue.  *See* Dkt. 101; JPTO.  Plaintiffs thus were unquestionably "on notice that [they] had to come forward with all of [their] evidence" to avoid dismissal.  *Celotex*, 477 U.S. at 326; *see* Dkt. 101 ("If plaintiffs cannot do so, the Court intends to dismiss all of Cortes's claims.").  In response, plaintiffs seek to preserve only Cortes's state-law claims under the NYLL, invoking the Court's supplemental jurisdiction.  Thus, the only question is whether the Court will exercise such jurisdiction over Cortes's NYLL claims.

The Court declines to do so.  Under 28 U.S.C. § 1367(a), even where the Court lacks original jurisdiction over a party's claims, it may exercise supplemental jurisdiction over such claims if they share a "common nucleus of operative fact" with those over which it did have jurisdiction.  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997).  Whether to exercise supplemental jurisdiction "is within the sound discretion of the district court."  *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 117 (2d Cir. 2013) (citation omitted).  In exercising that discretion, courts "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise" supplemental jurisdiction.  *Id.* at 117–18 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)).  "Once all federal claims have been dismissed, the balance of factors will usually point toward a declination."  *Id.* at 118 (cleaned up).

In the context of claims under the FLSA and NYLL, as plaintiffs note, courts sometimes exercise supplemental jurisdiction over the latter where a plaintiff's FLSA claims are untimely, but other plaintiffs in the case have timely such claims.  *See, e.g.*, *Fallon v. 18 Greenwich Ave., LLC*, No. 19 Civ. 9579 (MKV), 2021 WL 1105066, at *8 (S.D.N.Y. Mar. 23, 2021) (collecting cases).  But "where the proof that would support the NYLL claims is sufficiently distinct from

the proof that would support the other plaintiffs' FLSA claims," "federal courts will decline to exercise supplemental jurisdiction over NYLL claims of those plaintiffs whose FLSA claims are time-barred." *Id.* at *8; *see, e.g.*, *Camara v. Kenner*, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *6 (S.D.N.Y. Mar. 29, 2018). This case falls into the latter category. From the parties' submissions, it appears that the evidence each side seeks to admit at trial is unique to each plaintiff: all plaintiffs were subject to separate time records, pay records, and tip statements. *See* JPTO at 8–9. Plaintiffs, in fact—likely because they failed to pursue discovery at all in this action—seek only to introduce seven exhibits, none of which pertain to Cortes at all. *See id.* at 8 (identifying pay checks, tax forms, time records, and pay records for Cajero Torres, and a pay record for Bautista). Further, Cortes's employment did not overlap at all with Bautista's, *compare* SAC ¶ 45 (Bautista worked for defendants between December 2017 and January 2019), *with id.* ¶ 55 (Cortes worked for defendants between June 2013 and June 2016), and overlapped with Cajero Torres's only for several months, *see id.* ¶ 36 (Cajero Torres worked for defendants between January 2016 and January 2019). Thus, "[t]here is sufficient distinction between [Cortes's] NYLL . . . claims on one hand and the remaining Plaintiffs' FLSA [and] NYLL . . . claims on the other to warrant declining supplemental jurisdiction over the former." *Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17 Civ. 840 (VSB), 2021 WL 634717, at *14 (S.D.N.Y. Feb. 16, 2021). Accordingly, the Court dismisses, with prejudice, Cortes's claims brought under the FLSA as (concededly) untimely, and dismisses, without prejudice, his claims under the NYLL, because there is no freestanding subject-matter jurisdiction as to these claims and because the Court declines to exercise supplemental jurisdiction over them.[5]

---

[5] Defendants urge the Court to dismiss Cortes's NYLL claims with prejudice. *See, e.g.*, Apr. 26 Ltr. at 2–3. But, where, as here, the Court declines to exercise jurisdiction over a claim, it can

C. **Motion for Default Judgment**

As discussed, defendants' counsel have withdrawn from this case, leaving Sushi Sushi and Harlem Sushi unrepresented. As corporate entities, those defendants cannot represent themselves, or be represented by a non-lawyer, in federal court. *See Lattanzio*, 481 F.3d at 139. Plaintiffs have now moved for a default judgment against those defendants—albeit a day after the deadline the Court set to do so, and after the Court expressly warned plaintiffs that a failure to so move by that deadline would result in dismissal for failure to prosecute. Dkts. 102–07. As a result of that delay, the Court had previously directed plaintiffs to show cause why their failure to meet that court-imposed deadline should not result in that sanction. *See* Dkt. 108. But having carefully reviewed the parties' submissions and the applicable legal standard under Rule 41(b),[6] the Court concludes that such sanctions would be inappropriate. That is so, despite the Court's clear warning to plaintiffs, for several reasons. First, plaintiffs' delinquency lasted only a day, appears to have been the result of an administrative oversight, and was corrected without the judicial involvement. Second, given the short duration of the delay, plaintiffs' day-late filing will not prejudice defendants. Third, because plaintiffs' claims against the individual defendants

---

only dismiss that claim without prejudice. *See, e.g.*, *Soules v. Town of Oxford*, 669 F. App'x 54, 57 (2d Cir. 2016) (summary order).

[6] In considering dismissal pursuant to Rule 41(b) for failure to prosecute weighs the following five factors:

> (1) the duration of the plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001) (quoting *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193–94 (2d Cir. 1999)).

will move forward in any event, and because the corporate defendants are in default, dismissing the claims against the corporate defendants would do little to alleviate court-calendar congestion. Accordingly, the Court will not dismiss plaintiffs' claims against the corporate defendants, and will not deny their motion for a default judgment on this basis.

As to the merits of that motion, the Court has carefully reviewed plaintiffs' submissions, including their memorandum of law and supporting affidavits, pursuant to Federal Rule of Civil Procedure 55(b)(2). Those papers are in good order, with one exception: because the Court in this order dismisses Cortes's federal claims as untimely and declines supplemental jurisdiction over his NYLL claims, the Court will not enter default as to Cortes's claims. Otherwise, because proof of service of the motion for default judgment has been filed, *see* Dkt. 111; no counsel has appeared for Sushi Sushi or Harlem Sushi in several months; Sushi Sushi and Harlem Sushi have failed to file any opposition to plaintiffs' motion for default judgment and have failed to defend this case; and because plaintiffs have proffered evidence sufficient to support the claims of Cajero Torres and Bautista—but not Cortes—the Court enters a default judgment, solely as to liability, for plaintiffs Cajero Torres and Bautista against defendants Sushi Sushi and Harlem Sushi. The Court, by separate order, will commission an inquest into damages. Because such an inquest has potential to help guide the parties to a settlement as to the unresolved claims in this case, the Court will request that this inquest be undertaken with dispatch.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiffs' motion *in limine* in part and grants it in part. The Court will not preclude any of defendants' proposed trial exhibits on the basis that they were not produced during discovery, but will preclude defendants from calling as witnesses Kristen Newland and Raul Morales.

The Court further dismisses plaintiff Cortes's claims under the FLSA as untimely, and declines to exercise supplemental jurisdiction over his NYLL claims, dismissing the latter without prejudice.

Finally, the Court grants plaintiffs' motion for a default judgment, solely as to liability, and solely as to Cajero Torres's and Bautista's—but not Cortes's—claims against defendants Sushi Sushi and Harlem Sushi. An order referring this case for a damages inquest will issue shortly.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 90 and 102.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: May 27, 2021
       New York, New York