UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO CAJERO TORRES, et al.,

                              Plaintiffs,                     19-CV-2532 (PAE) (RWL)

              -v-                                                       ORDER

SUSHI SUSHI HOLDINGS INC., et al.,

                              Defendants.

PAUL A. ENGELMAYER, District Judge:

      Attached to this Order are the following Court Exhibits:

- Exhibit 1: The draft jury charge dated May 18, 2022.

- Exhibit 2: The draft Cajero-Torres verdict form from May 18, 2022.

- Exhibit 3: The draft jury charge dated May 19, 2022.

- Exhibit 4: The Cajero-Torres verdict form from May 19, 2022.

- Exhibit 5: The Bautista verdict form from May 19, 2022.

- Exhibit 6: The final jury charge read into the record on May 19, 2022

- Exhibit 7: The PowerPoint presentation used by defense counsel during their
  closing argument.

- Exhibit 8: The final Cajero-Torres verdict form.

- Exhibit 9: The final Bautista verdict form.

- Exhibit 10: The exhibit list.

SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: May 23, 2022
New York, New York

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO CAJERO TORRES and MARIO
BAUTISTA,

                             Plaintiffs,

                -v-

IGOR GRINBERG and ANGIE HERRERA,

                        Defendants.

19 Civ. 2532 (PAE)

<u>Jury Charge</u>

**Jury Charge**
**May 18, 2022**

### TABLE OF CONTENTS

I.   GENERAL INSTRUCTIONS ................................................................................ 1

   A.   Introductory Remarks ........................................................................... 1

   B.   Role of the Court ................................................................................... 2

   C.   Role of the Jury ..................................................................................... 2

   D.   Role of Counsel / Objections and Sidebars ........................................... 2

   E.   Sympathy or Bias .................................................................................. 3

   F.   Burden of Proof ..................................................................................... 4

   G.   What Is and Is Not Evidence ................................................................. 5

   H.   Direct and Circumstantial Evidence ..................................................... 6

   I.   Witness Credibility ................................................................................ 7

   J.   Interested Witnesses .............................................................................. 9

   K.   Multiple Parties ................................................................................... 10

   L.   Preparation of Witnesses ..................................................................... 10

   M.   All Available Evidence Need Not Be Produced ................................... 10

   N.   Summaries and Charts ......................................................................... 11

   O.   Foreign Language Testimony ............................................................... 11

II.   SUBSTANTIVE CHARGES ........................................................................... 11

   A.   Overview of Statutes and Claims ........................................................ 12

   B.   Duration of Employment ..................................................................... 13

   C.   Employer Status .................................................................................. 14

   D.   Minimum Wage Claims ....................................................................... 16

   E.   Overtime Claims .................................................................................. 21

   F.   Spread of Hours Claims ....................................................................... 25

   G.   Wage Notice Claims ............................................................................ 26

   H.   Wage Statement Claims ....................................................................... 27

   I.   Tools of the Trade Claims .................................................................... 28

   J.   Good Faith ........................................................................................... 30

III.   DELIBERATIONS OF THE JURY ............................................................... 31

   A.   Right to See Exhibits and Hear Testimony .......................................... 31

   B.   Communication with the Court ............................................................ 32

**C.**   **Notes** ................................................................................................................ **32**

**D.**   **Duty to Deliberate; Unanimous Verdict** ................................................... **32**

**E.**   **Verdict Form** ................................................................................................... **33**

**F.**   **Duties of Foreperson** ...................................................................................... **33**

**G.**   **Return of Verdict** ........................................................................................... **33**

**IV.**   **CONCLUSION** ........................................................................................................ **34**

I.   **GENERAL INSTRUCTIONS**

   A.   **Introductory Remarks**

Members of the jury, you have now heard all of the evidence in the case, as well as the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.  I will be distributing to you a verdict form, one for each of the two plaintiffs, in which to record your verdict.  It will list the questions that you must consider, in the order that you should consider them.

**B.    Role of the Court**

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated, or states, a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You must not substitute your own notions or opinions of what the law is or ought to be.

**C.    Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations.  You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone.  You may not consider or speculate on matters not in evidence or matters outside the case.

**D.    Role of Counsel / Objections and Sidebars**

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your concern.  You should draw no inference from the fact that an attorney objected to any evidence.

Nor should you draw any inference from the fact that I might have sustained or overruled an objection. Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its significance. That is for you to decide.

From time to time, the lawyers and I had conferences out of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### E.      Sympathy or Bias

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. All parties are entitled to the same fair trial at your hands. All parties stand equal before the law, and are to be dealt with as equals in this Court.

F.      **Burden of Proof**

The plaintiffs, Ricardo Cajero Torres and Mario Bautista, have the burden of proving all the elements of their claims by a preponderance of the evidence.

What does a "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents.  In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If, after considering all of the testimony, you are satisfied that the plaintiff, the party with the burden of proof, has carried his burden on each essential point of a claim, then you must find in the plaintiff's favor.  If, after such consideration, you find that the evidence produced by the plaintiff is outweighed by the evidence against the plaintiff's position, or that the credible evidence on a given issue is evenly divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then you must decide that issue against the plaintiff.  That is because the plaintiff, because he bears the burden of proof, must prove more than simple equality of evidence—he must prove the element by a preponderance of the evidence.  On the other hand, the plaintiff need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the plaintiff—that what he claims is more likely true than not—then that element will have been proven by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof only in a *criminal* trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind.

### G.     What Is and Is Not Evidence

I want to take a moment to describe to you what is and is not evidence in this case.  As I have said, you may rely only on the evidence in your deliberations.  The evidence in this case is the sworn testimony of the witnesses, and the exhibits received in evidence.  On the other hand, certain things are not evidence.

First, I will describe a list of examples of things that are not evidence:

1.     A question by a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

2.     Similarly, arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said in their opening statements was intended, and what they will say to you in their closing statements will be intended, to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

3.     Statements that I may have made concerning the evidence do not constitute evidence.  Similarly, at times, I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear.  You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

4.     Testimony that has been stricken or excluded is not evidence, and it may not be considered by you in rendering your verdict.

5.     Anything you may have seen or heard outside the courtroom is not evidence.

Now, I will provide you with some things that you may consider as evidence.  As I have said, evidence may come in several forms:

1.     The sworn testimony of witnesses, regardless of who called them, is evidence.  This is true of the witnesses' answers on both direct and cross examination.  However, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

2.     The exhibits that were admitted during the trial are evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

3.     Prior testimony is evidence.  Such testimony, known as depositions, is produced through a procedure where, prior to trial, the attorneys for one side may question a witness or an adversary under oath.  This is part of what is called pretrial discovery, and each side is entitled to take depositions.  To the extent I admitted excerpts of prior testimony at trial, you may consider the prior testimony of a witness according to the same standards you would use to evaluate the testimony of a witness given at trial.

## H.     Direct and Circumstantial Evidence

Generally, as I told you in my initial instructions, there are two types of evidence that you may consider in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence is testimony by a witness about something she knows by virtue of her own senses—something she has seen, felt, touched, or heard.  For example, if a witness testified that when she left his house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts.  To use the same example I gave you at the start of trial:  Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day.  Assume that the

6

courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella, which was dripping wet.  Then a few minutes later another person entered with a wet raincoat.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, and no one has testified that it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.  Many facts, such as a person's state of mind or intentions, are rarely susceptible of proof by direct evidence.  Usually, such facts are established by circumstantial evidence.  Where circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

## I.      Witness Credibility

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judge of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he or she appear to be frank, forthright, and candid?  Or was the

witness evasive and edgy, as if hiding something?  How did the witness appear?  What was his or her demeanor—that is, his or her carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  However, you are not required to consider such a witness as totally "unbelievable."  You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.  By the processes which I have just described, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness.  It is for you to determine whether a prior statement was inconsistent, and if so, how much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at trial.

### J.    Interested Witnesses

In deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit in some way from the outcome of the case, such as a financial interest.  Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties.  You should also consider any other interest or motive that the witness may have in cooperating with a particular party.

In this case, the plaintiffs, Ricardo Cajero Torres and Mario Bautista, and the defendants, Igor Grinberg and Angie Herrera, testified before you.  As parties to this action, they are, by definition, interested witnesses.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness.  The mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth.  It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has intentionally or otherwise colored or distorted his or her testimony.

You are not required to believe an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### K.      Multiple Parties

In reaching a verdict you must bear in mind that each plaintiff's claims are to be considered separately solely on the evidence, or lack of evidence, presented in support of that plaintiff's claims.  Similarly, you must bear in mind that each defendant is to be considered separately based solely on the evidence, or lack of evidence, presented against that defendant without regard to the liability of the other defendant.

### L.      Preparation of Witnesses

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.  Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### M.      All Available Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of

the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in this case.

Each party has had an equal opportunity or lack of opportunity to call any witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what any uncalled witnesses would have testified to had they been called.  The absence of any witnesses should not affect your judgment in any way.

### N. Summaries and Charts

During the trial, certain summary charts were admitted into evidence as exhibits in order to save time and avoid unnecessary inconvenience.  You may ask for these exhibits during your deliberations in the same way that you may ask for any other exhibit in evidence, and consider them as you would any other evidence.  These charts constitute evidence that you should consider where finding facts in accordance with the weight of all the evidence in the case.

### O.  Foreign Language Testimony

During the trial, two of the witnesses testified in Spanish.  The evidence you are to consider is only that provided through the official court translators.  That is, you must base your decision on the evidence presented in the English translation of the witnesses' testimony, as stated in open court and memorialized in the trial transcript.  You must disregard any different meaning.

## II.   Substantive Charges

I am now going to instruct you on the substantive law to be applied to Mr. Cajero Torres and Mr. Bautista's claims in this lawsuit, which they bring against Mr. Grinberg and Ms. Herrera.

A.    **Overview of Statutes and Claims**

Plaintiffs bring this action under the Federal Labor Standards Act, which I will refer to as the "FLSA," and the New York State Labor Law, which I will refer to as the "NYLL." These statutes provide for minimum wages and overtime pay, among other things. The parties agree that both the FLSA and the NYLL apply to this case. The FLSA and the NYLL are similar in many respects, so I will discuss these laws separately only when the differences between them are relevant to the findings you must make.

Plaintiffs have brought six categories of claims arising from their work at the restaurant at issue in this case, which I will refer to for short as "Sushi Sushi." I will now briefly summarize each category. Later, I will explain the law as to each claim in depth.

First, the plaintiffs contend that the defendants violated the FLSA and the NYLL by failing to pay them the applicable minimum wage for each hour they worked for the first 40 hours of work per week. I will refer to these claims as the "Minimum Wage" claims.

Second, the plaintiffs contend that the defendants violated the FLSA and the NYLL by failing to pay them overtime at one and one-half (1.5) times their regular hourly pay for hours worked in excess of 40 in a single week. I will refer to those claims as the "Overtime" claims.

Third, the plaintiffs contend that the defendants violated the NYLL by failing to pay them the so-called "spread of hours," which is an extra hour of pay at the minimum wage rate for days that a plaintiff's work spanned more than 10 hours. I will refer to those claims as the "Spread of Hours" claims.

Fourth, the plaintiffs contend that the defendants did not provide them with accurate wage notices as required by the NYLL. I will refer to those claims as the "Wage Notice" claims.

12

Fifth, the plaintiffs contend that the defendants failed to provide the plaintiffs with accurate wage statements as required by the NYLL. I will refer to those claims as the "Wage Statement" claims."

Sixth and finally, the plaintiffs contend that the defendants failed to reimburse them for the reasonable value of work-related equipment, specifically, electric bicycles, that they purchased and paid to maintain. They claim that having to pay and not be reimbursed for these expenses put plaintiffs' compensation below the required minimum wage, in violation of an FLSA provision known as the "tools of the trade" requirement. I will refer to these as the "Tools of the Trade" claims.

You will each be given a verdict form, one for each plaintiff, with the questions you must answer regarding that plaintiff's claims. I will review these questions with you as I read this charge to you. You will also need to do a little arithmetic in connection with some of these questions. I will send a calculator into the jury room with you to help.

**B.    Duration of Employment**

As an initial matter, you will need to determine the time period, if any, that each plaintiff was employed by Sushi Sushi.

The parties have agreed that each plaintiff was employed at some time as a delivery worker at the restaurant. They also agree that Ricardo Cajero Torres's employment at Sushi Sushi ended on January 27, 2019, and that Mario Bautista's employment there ended on January 20, 2019.

However, the parties dispute when each plaintiff *began* his employment. It is each plaintiff's burden to prove by a preponderance of the evidence when he was employed, and it is up to you to decide this factual issue.

13

To meet that burden, a plaintiff may rely on all of the evidence received at trial, regardless of which side presented it.  However, if you find that Sushi Sushi did not keep or maintain accurate employment records, a plaintiff can each meet his burden by presenting sufficient evidence to show his dates of employment as a matter of just and reasonable inference. He may meet their burden by relying on his recollection alone.  The law does not require him to recall exact dates.  You should find that he met his burden of proof as to the period of his employment if you find his testimony is credible and provides a basis for a reasonable approximation of the period during which he was employed.

If you find that a plaintiff has met that burden, then the defendants have the burden to show either the precise period that the plaintiff worked or that his approximation of the period he worked is unreasonable.  If you find the defendants met their burden of proving that either plaintiff's approximation is unreasonable, then you may find he worked the period the defendants claim.  If, however, you find the defendants did not meet their burden, then you should approximate the period of time based on the plaintiff's testimony alone.

Ultimately, it is up to you to draw a reasonable conclusion as to the period during which each plaintiff was employed.  The question in Issue I of the verdict form for each plaintiff asks you to state the dates of plaintiff's employment at Sushi Sushi.

### C.     Employer Status

The next issue for you to determine involves whether the defendants were employers.  To determine whether a defendant is liable to a plaintiff on any of the claims in this case, you must first determine whether he or she employed the plaintiff.  If a defendant you are considering was not a plaintiff's employer, that defendant cannot be liable to the plaintiff on any claim.

The parties agree that the corporate owner of Sushi Sushi, which is not a defendant in this matter, was an employer of both plaintiffs. They also agree that Igor Grinberg was an employer of both plaintiffs. And so as to the first question listed under Issue II on each verdict form, relating to whether Igor Grinberg was an employer of the plaintiff, you must check the "Yes" answer.

However, Angie Herrera contends that she was not an employer of either plaintiff. It is possible that a worker can have more than one employer at the same job. If a plaintiff is found to have more than one employer at the same job, he is "jointly employed." And note that while I will sometimes refer to "the defendants," that is not intended to indicate a view that both defendants are employers.

Under the FLSA and NYLL, an individual is an "employer" if he or she possesses the power to control, in whole or in part, a company's operations in a manner that relates to the employment of the company's employees. In making this determination as to Ms. Herrera, you should consider the totality of the circumstances that constitute the economic reality of the employee/employer relationship. Ownership, or a stake in the company, is insufficient to establish that an individual is an employer unless the owner also has some involvement in the company's relationship with its employees. Whether an individual defendant was an employer depends on whether that individual possessed the power to control the plaintiff's work. The focus is on the economic reality of the situation rather than technical concepts or job titles. Factors that bear on the economic realities of the employer/employee relationship include, but are not limited to, whether the individual has the authority to:

- hire and fire employees;

- supervise and control employees' work schedules or conditions of employment;

15

- determine the rate and method of payment for employees; and

- maintain employment records for employees.

No one of these factors standing alone is dispositive.  You may consider these factors and any others that you find pertinent to the economic reality of the employer/employee relationship in deciding whether a plaintiff has proven by a preponderance of the evidence that Angie Herrera was an employer of his.

If after consideration of all the evidence you determine that a plaintiff has proven, by a preponderance of the evidence, that Ms. Herrera was, at some point during his work, his employer, then you must answer "Yes" to the question regarding her in Issue II.

**D.    Minimum Wage Claims**

The next set of issues concerns the Minimum Wage claims.  In these claims, the plaintiffs claim that they were not paid the minimum wage for each hour of work required under the FLSA and the NYLL.  To sustain his burden of proof with respect to these claims, a plaintiff must prove by a preponderance of the evidence that the defendants paid him less than the required minimum wage for hours that he worked.

The applicable minimum wage rates under the FLSA and the NYLL at the time are not the same.  However, because the applicable minimum wage under the New York Labor Law is higher than the federal minimum wage, and because a plaintiff cannot recover twice for the same minimum wage violations under both federal and state law, I will address, and you will be applying, the applicable minimum wage rate under the NYLL only.

To establish a minimum wage claim, the plaintiff must establish by a preponderance of the evidence that during all or part of the time that he was employed, he was paid less than he was legally due in minimum wages.

16

I will instruct you now on how to determine whether the plaintiff was paid less than he was legally due in minimum wages.  There are several steps in making this determination.

### 1.   The Minimum Wage Rates Applicable to Plaintiffs

The first issue is to decide the minimum wage rate that applied to each plaintiff under the NYLL.

### a.   The Minimum Hourly Rate Before a Tip Credit

The minimum hourly wage rate set by the NYLL has changed over time.  The rate applicable to Sushi Sushi is that for what the law calls a "Small Employer."  That is because, as the parties agree, Sushi Sushi had 10 or fewer employees at all relevant times.  The following rates are the required minimum hourly wage in the years in which one or both of plaintiffs worked for Sushi Sushi.

- For any work performed during calendar year 2016, meaning from January 1, 2016 through December 31, 2016, the minimum hourly wage was $9.

- For any work performed during calendar year 2017, meaning from January 1, 2017 through December 31, 2017, the minimum hourly wage was $10.50.

- For any work performed during calendar year 2018, meaning from January 1, 2018 through December 31, 2018, the minimum hourly wage was $12.

- For any work performed during calendar year 2019, meaning from January 1, 2019 through December 31, 2019, the minimum hourly wage was $13.50.

### b.   Tip Credit

There is one other determination you must make in determining the hourly rate that Sushi Sushi was required to pay the plaintiffs.  Under the NYLL, an employer is allowed to pay certain "tipped employees" an hourly rate that is less than the prevailing minimum wage by crediting the tips received by the employee against part of the required hourly wage.  This is known as a "tip

17

credit." Service employees, such as restaurant delivery workers, are among those to whom an employer can pay a reduced cash wage on account of the employee's receipt of tips. If you find that defendants were entitled to take a "tip credit" under the NYLL for a particular plaintiff, the wage that defendants were required to pay the plaintiff must be reduced accordingly.

The NYLL sets the maximum amount allowed for a tip credit. In other words, for a tipped employee, even if defendants are entitled to take a tip credit, there is still a minimum cash wage they must pay the employee per hour. I instruct you that the minimum cash wage in New York City for each year relevant to the case was as follows:

- For work performed during calendar year 2016, meaning from January 1, 2016 through December 31, 2016, instead of a $9 minimum wage, an employer could take a tip credit of up to $1.50 per hour. The minimum cash wage for 2016 was therefore $7.50 per hour.

- For work performed during calendar year 2017, meaning from January 1, 2017 through December 31, 2017, instead of a $10.50 minimum wage, an employer could take a tip credit of up to $3 per hour. The minimum cash wage for 2017 was therefore $7.50 per hour.

- For work performed during calendar year 2018, meaning from January 1, 2018 through December 31, 2018, instead of a $12 minimum wage, an employer could take a tip credit of up to $4 per hour. The minimum cash wage for 2018 was therefore $8 per hour.

- For work performed during calendar year 2019, meaning from January 1, 2019 through December 31, 2019, instead of a $13.50 minimum wage, an employer could take a tip credit of up to $4.50 per hour. The minimum case wage for 2019 was

18

therefore $9 per hour.

The first issue for you to resolve in Issue III is whether Sushi Sushi qualified to take "tip credit" for the plaintiff you are considering.

Under the New York Labor Law, an employer is entitled to take a "tip credit" against the required minimum wage if he or she establishes by a preponderance of the evidence the following four things:

**First**, that the employee receives sufficient tips to make up the difference between the regular minimum wage rate and the lower rate reflecting the "tip credit."

**Second**, that defendants gave written notice to the plaintiff, in English and any other language spoken by the employee as his primary language, stating the amount of the tip credit to be taken from the basic minimum hourly rate.

**Third**, that the employer did not retain for itself any portion of the tips received from customers, or require the employee to share tips with non-tipped employees.  It is undisputed that Sushi Sushi complied with this requirement.

**Fourth**, that the employer maintained sufficient records of the number of hours the plaintiff worked, daily and weekly, including the time of arrival and departure of each employee, and provided the plaintiff a statement listing hours worked, rates paid, gross wages, allowances claimed as part of the minimum wage, deductions, and net wages with every payment of wages.

If you find all of these elements by a preponderance of the evidence, then defendants may take advantage of the tip credit.

In Question 4 of Issue III of your verdict forms, you will be asked to record your determination whether Sushi Sushi was entitled to take a tip credit.

### 2.   The Hourly Wage Rate Paid to the Plaintiffs

The next step is to determine at what hourly rate the plaintiff was paid by Sushi Sushi.  I will refer to this as his "Regular Rate of Pay."

It is undisputed that each of the plaintiffs at all times was paid at an hourly rate.  So, you don't have to do any math to determine their regular rates of pay.  You merely must determine what that rate of pay was.  Defendants contend that each plaintiff was paid at a rate consistent with that of employers who qualified to take the tip credit.  Plaintiffs contend that they were paid at lower rates.

You may consider all of the evidence received at trial when you determine a plaintiff's regular rate of pay, including the pay records that have been received in evidence.  However, if you find that the defendants did not maintain accurate records as to the regular rate of pay then the plaintiffs can meet their burden by presenting sufficient evidence to show the regular rate of pay as a matter of just and reasonable inference.  A plaintiff may rely on his own testimony regarding his recollection of the rate he was paid.  You may find he met his burden of proof if you find his testimony is credible.  If you find that a plaintiff has satisfied this burden, then the defendants, as I explained before in connection with determining the duration of the plaintiffs' employment have the burden to show that the inferences drawn from that plaintiff's testimony are unreasonable.

In Question 5 of Issue III, you are asked to enter your finding as to the plaintiff's regular rate of pay in each relevant year

### 3.   Conclusion

You now have all the information you need to determine whether each plaintiff was paid the required minimum wage.  The final step is simply to compare (1) the hourly minimum cash

wage that Sushi Sushi was required to pay the plaintiff, which turns on whether it qualified to take the tip credit, with (2) the regular hourly rate of pay that you have found Sushi Sushi paid the plaintiff.

In Question 6 of Issue III, you will be asked whether Sushi Sushi paid the plaintiff the required minimum wage for each year in question.

### E.    Overtime Claims

The next set of issues concerns plaintiffs' Overtime Claims.

To prevail on his Overtime Claims, a plaintiff must prove by a preponderance of the evidence that the defendants failed to pay the plaintiff overtime pay as required.

A plaintiff is entitled to overtime pay for the hours he worked in excess of 40 in any given workweek.  Any hours that a plaintiff worked in excess of 40 in a single week are called "overtime hours."

### 1.    Calculating A Plaintiff's Hours Worked and Whether the Plaintiff Ever Worked Overtime

Because the parties dispute whether or to what extent the plaintiffs worked overtime hours, you must first determine how many hours each plaintiff worked per week.  An employee is considered to be working for purposes of the claims whenever he exerts himself, mentally or physically, for tasks controlled or required by the employer and performs these tasks primarily for the benefit of the employer.

The number of hours an employee works in a day is determined under what is called the "continuous workday" rule.  Under that rule, the workday begins when the employee begins to engage in work and continues until the completion of his work.  It includes all of the time within that period whether or not the employee is engaged in work throughout the entire period.

There is, however, an exception to this rule for meal periods and for periods longer than 30 minutes if the employee is completely relieved from duty.  I will refer to those periods as "non-compensable breaks" because those periods are not compensable work time.  It is the defendants' burden to prove that a break was a non-compensable break.  The defendants must do so by a preponderance of the evidence.  A noncompensable break must last at least 30 minutes. In contrast, short periods away from work, commonly known as break periods or coffee breaks, are compensable work time.  To qualify as a non-compensable break, the employee must be relieved from duty.  An employee is relieved from duty when the employee's time is not spent predominantly for the benefit of the employer.  In other words, if during the period at issue the employee's time and attention are primarily occupied by private or personal pursuits, such as relaxing or eating, then the employee is relieved from duty.  On the other hand, if during the periods at issue the employee's time or attention is taken up principally by work responsibilities that prevent the employee from comfortably spending the break, then the employee has not been relieved from duty.  Whether the time was spent predominantly for the employer's or employee's benefit depends on all the facts and circumstances of the case.

In order to determine the number of hours worked, you must determine whether the defendants have demonstrated a plaintiff took non-compensable breaks.  If a plaintiff did take noncompensable breaks, then the length of those breaks must be taken into account when determining the number of hours a plaintiff worked.  A plaintiff's "compensable hours" are the number of hours he worked less any non-compensable breaks.

With respect to this issue, as with the period of each plaintiff's employment, the plaintiffs may rely on all the evidence received at trial, regardless of which side presented it.  However, if you find that a defendant did not keep and maintain required employment records then a plaintiff

can meet his burden by presenting sufficient evidence to show the hours he worked as a matter of

just and reasonable inference.  He may meet his burden by relying on his recollection alone.  The

law does not require him to recall exact dates or exact hours.  You should find that he met his

burden of proof as to the length of shifts if you find his testimony to be credible and that it

provides a basis for a reasonable approximation of the total number of hours he worked.

If you find that a plaintiff has met that burden, then the defendant at issue has the burden

to show either the precise hours that plaintiff worked or that his approximation of hours worked

is unreasonable.  If you find the defendants have met their burden of proving a plaintiff's

approximation is unreasonable, then you may find that he worked the period the defendants

claim.  If, however, you find the defendants did not meet their burden then you should

approximate the period of time based on the applicable plaintiff's testimony alone.

Ultimately, it is up to you to draw a reasonable conclusion as to the number of hours each

plaintiff worked per workday, how many days a week each plaintiff worked, and how many

hours per week each plaintiff worked.

Question 7, under Issue IV, asks whether the plaintiff ever worked overtime hours.  If

you find that the plaintiff never worked more than 40 hours in a given week for Sushi Sushi, then

check the box "No" and skip Question 8.

If, however, you conclude that the plaintiff at least once worked more than 40 hours in a

given week, then check the box "Yes" and proceed to Question 8, which asks whether the

plaintiff ever worked overtime hours and was not properly compensated.

## 2.  Calculating Whether the Plaintiff Was Not Properly Compensated for Overtime Work

As I mentioned, a plaintiff is entitled to overtime pay for the hours he worked in excess

of 40 in any given workweek.  A workweek is defined as any period of 168 consecutive hours.

In this case, the parties have agreed that the workweek was from Monday at 12:00 am to the following Sunday at 11:59 p.m.

An employee must be paid at a rate of at least one and one-half (1.5) times either the statutory minimum wage or—if the employee's regular rate of pay was higher than the statutory minimum wage—the employee's regular rate of pay. In this case, the defendants do not claim to have paid the plaintiffs at a rate higher than the statutory minimum wage and the plaintiffs do not claim that their regular rate of pay was above the statutory minimum wage. So, the issue on the overtime claims in this case is whether, for hours worked in excess of 40 in any given workweek, the plaintiff was paid at least one and one-half (1.5) times the statutory minimum wage.

In making this determination, the rate that Sushi Sushi was required to pay for overtime work is to be determined by first multiplying the statutory minimum wage rate by one and one-half (1.5), and only then deducting, if you have found it applicable, the tip credit. The chart below sets out what the required rate of pay for overtime work was in each year relevant to this case, depending on whether you have found the tip credit to apply or not.

| Period | Required Overtime Wage Rate (no tip credit) | Required Overtime Wage Rate (with tip credit) |
|---|---|---|
| January 1, 2016 to December 31, 2016 | $13.50 per hour (1.5 times $9) | $12 per hour (1.5 times $9 minus $1.50 tip credit) |
| January 1, 2017 to December 31, 2017 | $15.75 per hour (1.5 times $10.50) | $12.75 per hour (1.5 times $10.50 minus $3 tip credit) |
| January 1, 2018 to December 31, 2018 | $18 per hour (1.5 times $12) | $14 per hour (1.5 times $12 minus $4 tip credit) |
| January 1, 2019 to December 31, 2019 | $20.25 per hour (1.5 times $13.50) | $15.75 per hour (1.5 times $13.50 minus $4.50 tip credit) |

On Issue IV, Question 8 asks you to determine for each year that the plaintiff worked for Sushi Sushi, whether there was at least one week in which plaintiff worked overtime hours and

was not properly compensated for those hours.  If you checked the box "Yes" in response to Question 7, you must answer Question 8.

I also want to direct your attention to a chart, following Issue V, on your verdict sheets. It is entitled "Calculations for Issues III, IV, and V."  It instructs you to determine, for any year in which you have found that plaintiff was not paid either the required minimum wages or overtime wages, the number of regular and overtime hours that you find the plaintiff worked that year.  It also instructs you to determine the total wages, not including tips, that the plaintiff received from Sushi Sushi that year.

You are not responsible for calculating the amount of damages, if any, for these claims. Rather, if you find the defendants failed to pay required minimum wages or overtime, I will calculate these damages based on your determination of the number of hours the plaintiff worked and the wages that you determine he received.

## F.        Spread of Hours Claims

The next set of issues concerns the Spread of Hours claims.  Under the NYLL, an employee is entitled to an additional hour of pay, at the minimum hourly rate, on any day in which his "spread of hours" exceeds 10 hours.

To prevail on his "spread of hours" claim, a plaintiff must prove by a preponderance of the evidence each of the following elements:

*First*, that his spread of hours on a given day was greater than 10, and

*Second*, that he was not paid an additional hour's wages at the minimum wage rate for that day's work.

The NYLL defines the spread of hours as follows:  "The spread of hours is the length of the interval between the beginning and end of an employee's workday."  The spread of hours for

any day includes compensable time plus, as I have previously defined it, any non-compensable break time.

To give an example, imagine an employee begins work at 7:00 a.m. and works until 10:00 am.  Then the employee is off work until 7:00 p.m. that evening and worked until 10:00 p.m.  The employee worked a total of six hours, but his spread of hours is 15, the number of hours between 7:00 a.m and 10:00 p.m.  In this scenario, the employee would be paid for seven hours: the six hours he actually worked, plus an additional hour—paid at the minimum wage rate—because he worked a "spread of hours" greater than 10.

The additional hour paid to an employee for spread of hours is not counted towards the total hours an employee works in a given week for purposes of computing overtime pay.

In Question 9 of Issue V on the verdict forms, you must indicate whether a plaintiff's spread of hours ever exceeded 10 hours.  If you find that it did exceed 10 hours, then you must answer Question 10, which asks whether for each year in which he worked for Sushi Sushi, plaintiff was properly compensated for his spread of hours.

In the chart that follows Issue V, entitled "Calculations for Issues III, IV, and V," for any year in which you answered "Yes," you must also indicate the number of days his spread of hours exceeded 10 hours, but as to which he did not receive spread of hour pay.

G.   **Wage Notice Claims**

Plaintiffs next contend that the defendants failed to provide them with employment information required by New York law.  Under the NYLL at the time of plaintiffs' employment, every employer was required to provide certain information to an employee at the time of hiring, including:

- "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day,

26

week, salary, piece, commission, or other";

- "allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances";

- the regular pay day designated by the employer;

- the name of the employer;

- any "doing business as" names used by the employer;

- the physical address of the employer's main office or principal place of business, and a mailing address if different;

- the telephone number of the employer, along with any other information as the commissioner deems material and necessary.

Notice must be given to the employee in both English and in the language identified by each employee as his primary language.

The employer bears the burden of proving compliance with the wage notice requirements. You should find in favor of a plaintiff unless the defendants prove by a preponderance of the evidence that they provided the plaintiff with the wage notice information required by the NYLL.

Questions 12 through 14 on Issue VI relate to this claim.

**H.      Wage Statement Claims**

Plaintiffs next contend that the defendants failed to provide them with wage statements, or pay stubs, as required by the NYLL.

The NYLL requires that "[e]very employer shall provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages."

Every pay stub must list:

27

1.      The dates of work covered by that payment of wages;

2.      The name of the employee;

3.      The name of the employer;

4.      The rate and frequency of pay;

5.      Gross wages;

6.      The numbers of regular and overtime hours worked;

7.      Any deductions or allowances claimed; and

8.      Net wages.

If you find that plaintiffs have proven by a preponderance of the evidence that the defendants failed to provide each plaintiff on a statement that he could retain, then you must find that the defendants violated the NYLL pay stub requirement..

Question 15 and 16 of Issue VII relate to this claim.

I.      **Tools of the Trade Claims**

The plaintiffs next, and finally, contend that the defendants required them to spend their own money to purchase work-related equipment that was required for their jobs.  FLSA regulations state that, if it is a requirement of the employer that an employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the FLSA in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid to him.

Accordingly, an employer may not require an employee to spend his own money to purchase "tools of the trade" if doing so would lower the employee's pay below that required by the minimum wage or overtime requirements, which I have already described.  "Tools of the

trade" means tools, including bicycles and any reasonably necessary safety equipment, "which will be used in or are specifically required for the performance of the employer's particular work."

In sum, to establish this claim, the plaintiff must prove the following elements:

**First**, that Sushi Sushi required that the plaintiff possess and/or use the bicycle to carry out his duties as an employee;

**Second**, that the plaintiff incurred out-of-pocket expenses for purchasing, maintaining, or replacing the bicycle;

**Third**, that the reasonable value of these expenses, when incurred, reduced (or further reduced) the plaintiff's compensation below the required minimum wage; and

**Fourth**, that the plaintiff incurred these expenses in the two-year period before he brought the claims or, if the defendants willfully violated the FLSA in the three years before that date. The claims here were brought on March 21, 2019. An employer's violation is willful if the employer either (1) knew its conduct was prohibited by law or (2) showed reckless disregard as to whether its conduct was prohibited by law. Reckless disregard means that the employer was aware that its conduct was governed by law but failed to investigate the matter further in order to comply with the law. The burden is on the plaintiff to prove by a preponderance of the evidence that his employer acted willfully.

Thus, if you find by a preponderance of the evidence that the relevant plaintiff was required to spend his own money to carry out the job duties assigned by the defendants in accordance with the foregoing instructions, you should find in favor of the plaintiff on this claim. That is true even if the plaintiff kept the equipment at issue after leaving his job.

29

If you find that a plaintiff has proven by a preponderance of the evidence that the defendants required him to pay for "tools of the trade" and repairs to those tools with his own money, and that the employee's pay was thereby reduced below the minimum wage or the amount required by the overtime laws, then you must award the plaintiff the portion of his expenses that caused the employee to be paid less than the minimum wage and the required overtime. To qualify as an expense chargeable to the defendants, the plaintiff must have incurred the expense while working for the defendants.

Questions 17 through 21 on Issue VIII relate to this claim. The last of these questions, number 21, asks if any violation was willful. You should answer this question only if you have found a violation, and only if you have found the defendant in question to have been an employer of the plaintiff.

### J.      Good Faith

If you found that Sushi Sushi failed to pay plaintiff the applicable minimum wage, failed to pay a plaintiff overtime pay, failed to pay a plaintiff spread of hours pay, failed to provide an adequate wage notice to a plaintiff, or failed to provide wage statements to a plaintiff—according to the law as I have previously described it to you—you will then need to determine whether any defendant you have found to be an employer acted in good faith. That is because the law may lessen a defendant's liability if he or he acted in good faith. I will now instruct you on how to determine if the defendants acted in good faith.

To act in good faith is to act with objectively reasonable grounds for believing that the acts or omissions at issue did not violate the law. It is the defendants' burden to establish good faith. It is not enough for a defendant to claim that he or she did not know that his or her acts or omissions violated the law. To establish good faith, a defendant must prove that he or she took

active steps to ascertain the dictates of the law, and that he or she then took action to comply with the law, as he or she understood it.

Questions 22 to 27 in Issue VIII on your verdict form ask you whether, to the extent you have determine that a defendant violated the law as I have described it to you, he or she nonetheless acted in good faith. If you have not found a defendant to have been an employer of the plaintiff, *or* if you have not found the violation of law in question, you are not to answer the question.

## III.   DELIBERATIONS OF THE JURY

### A.   Right to See Exhibits and Hear Testimony

Members of the jury, now that you have heard the closing arguments of the parties, you are about to go into the jury room to begin your deliberations. Before you do that, I will give you a few final instructions.

The exhibits received in evidence will be accessible to you on a monitor in the jury room. If during those deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony. And please be patient—with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request. If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you with a list of witnesses, in the order in which they testified; a list of exhibits; a verdict form, which I will discuss in a moment; and a copy of these instructions. There is one of each of these for each juror.

### B.        Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court—should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### C.        Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors' recollections are equal.  If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.        Duty to Deliberate; Unanimous Verdict

You will now retire to decide the questions I have described to you.  For the plaintiff to prevail on the questions that you must answer, he must sustain his burden of proof as I have explained to you with respect to the questions you are considering.  Your verdict on each question must be unanimous.  Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors.  This is the very essence of jury deliberation.  It is your duty to discuss the evidence.  If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience.  You are not to give up a point of view,

however, that you conscientiously believe in simply because you are outnumbered or

outweighed.  You should vote with the others only if you are convinced on the evidence, the

facts, and the law that it is the correct way to decide the case. You are not to discuss the case

until all jurors are present.  Five or six jurors together is only a gathering of individuals. Only

when eight jurors are present do you constitute a jury, and only then may you deliberate.

### E.      Verdict Form

I have prepared a verdict form for you to use in recording your decision.  Please use that

form to report your verdict.

### F.      Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  The first thing you should do when you

retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out

a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or

her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The

foreperson is merely your spokesperson to the court.  He or she will send out any notes, and

when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a

verdict, and you will come into open court and give the verdict.

### G.      Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has

been given to you.  All jurors must sign the form reflecting each juror's agreement with the

verdict.  The foreperson should then advise the marshal outside your door that you are ready to

return to the courtroom.

33

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, members of the jury, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

## IV.   CONCLUSION

Members of the jury, that concludes my instructions to you.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

* * * * *

Members of the jury, you may now retire.  The marshal will be sworn before we retire.

(Marshal sworn)

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO CAJERO TORRES and MARIO
BAUTISTA,

                                  Plaintiffs,

                - against -

IGOR GRINBERG and ANGIE HERRERA,

                                Defendants.

19 Civ. 2532 (PAE)

**VERDICT FORM AS TO
RICARDO CAJERO TORRES**

Hon. Paul A. Engelmayer, United States District Judge:

## ISSUE I:  DURATION OF EMPLOYMENT

1.      On which dates was plaintiff employed by Sushi Sushi?

      FROM _____          TO _____

## ISSUE II: EMPLOYER STATUS

2.      Was defendant Igor Grinberg an employer of plaintiff?

      YES _____          NO _____

3.      Was defendant Angie Herrera an employer of plaintiff?

      YES _____          NO _____

## ISSUE III:  MINIMUM WAGES

4.  Did Sushi Sushi qualify to take a tip credit with respect to plaintiff?

    In 2016:    YES _____        NO _____

    In 2017:    YES _____        NO _____

    In 2018:    YES _____        NO _____

    In 2019:    YES _____        NO _____

5.  What was plaintiff's regular hourly rate of pay at Sushi Sushi?

    In 2016:    _____

    In 2017:    _____

    In 2018:    _____

    In 2019:    _____

6.  Was plaintiff paid at least the minimum wage by Sushi Sushi?

    In 2016:    YES _____        NO _____

    In 2017:    YES _____        NO _____

    In 2018:    YES _____        NO _____

    In 2019:    YES _____        NO _____

**ISSUE IV:  OVERTIME WAGES**

7. During the term of plaintiff's employment with Sushi Sushi, did plaintiff ever work overtime hours?

    YES _____          NO _____

8. Was there at least one week in which plaintiff worked overtime hours and was not properly compensated for his overtime hours?

    In 2016:    YES _____          NO _____

    In 2017:    YES _____          NO _____

    In 2018:    YES _____          NO _____

    In 2019:    YES _____          NO _____

**ISSUE V:  SPREAD OF HOURS**

9. Did plaintiff's "spread of hours" exceed 10 hours on any given day at any time during his employment at Sushi Sushi?

    YES _____          NO _____

10. Was plaintiff properly compensated for his "spread of hours" by Sushi Sushi?

    In 2016:    YES _____          NO _____

    In 2017:    YES _____          NO _____

    In 2018:    YES _____          NO _____

    In 2019:    YES _____          NO _____

## CALCULATIONS FOR ISSUES III, IV, AND V

11. Please fill in the chart according to the instructions.

12. You must fill in the sections (1), (2) and (3) for any year in which you answered "No" to Question 6, *or* "Yes" to Question 8.

- In the section marked "(1)", please indicate the number of compensable regular hours that you find the plaintiff worked for that year.

- In the section marked "(2)", please indicate the number of compensable overtime hours that you find plaintiff worked for that year.

- In the section marked "(3)", please indicate the total amount of money plaintiff received for that year, not including tips.

You must fill in section (4) for any year in which you answered "No" to Question 10.

- In that section, please indicate the number of days, if any, that you find plaintiff worked more than 10 hours without receiving payment for an extra hour for spread of hours pay during the year listed.

| Year | (1) Number of regular hours worked by plaintiff | (2) Number of overtime hours worked by plaintiff | (3) Total wages (not including tips) that plaintiff was paid in this year | (4) Number of days in which plaintiff worked more than 10 hours without receiving spread of hours pay |
|------|------|------|------|------|
| 2016 | | | | |
| 2017 | | | | |
| 2018 | | | | |
| 2019 | | | | |

## ISSUE VI:  TIME-OF-HIRE WAGE NOTICE

13. Was plaintiff provided with an adequate wage notice within 10 days of the date he was hired by Sushi Sushi?

    YES _____          NO _____

14. If you answered "No" to the preceding question, was he ever provided with an adequate wage notice?

    YES _____          NO _____

15. If you answered "Yes" to the preceding question, on what date or date(s) was he provided with an adequate wage notice?

    _____

## ISSUE VII:  WAGE STATEMENTS

16. Was plaintiff provided with a full and accurate wage statement each payday during the term of his employment at Sushi Sushi?

    YES _____          NO _____

17. If you answered "No" to the preceding question, for how many weeks did Sushi Sushi fail to provide plaintiff with full and accurate wage statements?

    _____ weeks.

## ISSUE VIII:  TOOLS OF THE TRADE

18. Has plaintiff proven that he is entitled to reimbursement for the purchase of any electric bicycle?

    YES _____          NO _____

19. If you answered "Yes" to Question 18, how much of his own money did he spend on the purchase that was not reimbursed?

    AMOUNT:  $ _____

20. Has plaintiff proven that he is entitled to reimbursement for maintenance of any electric bicycle?

    YES _____          NO _____

21. If you answered "Yes" to Question 20, how much of his own money did he spend on maintenance <u>per month</u> on average that was not reimbursed?

    AMOUNT:  $ _____

22. If you answered "Yes" to Question 18 or 20, did the defendant willfully violate the FLSA in failing to reimburse the plaintiff?

    Igor Grinberg          YES _____          NO _____

    Angie Herrera          YES _____          NO _____

## ISSUE IX.  GOOD FAITH

23.  To the extent Sushi Sushi failed to compensate plaintiff the applicable minimum wage, did the defendants nonetheless act in good faith?

YES _____          NO _____

24.  To the extent that Sushi Sushi failed to compensate plaintiff adequate overtime wages, did the defendants nonetheless act in good faith?

YES_____          NO _____

25. To the extent that Sushi Sushi failed to compensate plaintiff for his spread of hours, did the defendants nonetheless act in good faith?

YES_____          NO _____

26. To the extent that Sushi Sushi failed to provide plaintiff with an adequate wage notification, did the defendants nonetheless act in good faith?

YES _____          NO _____

27. To the extent that Sushi Sushi failed to provide plaintiff with adequate wage statements, did the defendants nonetheless act in good faith?

YES _____          NO _____

## **VERDICT CERTIFICATION**

**PRINTED NAME**                    **SIGNATURE**

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

Dated:            _____

BY PRINTING AND SIGNING YOUR NAME ABOVE, EACH JUROR IS INDICATING THAT HE OR SHE AGREES WITH EACH AND EVERY ANSWER REPORTED ON THIS VERDICT FORM.  AFTER EACH MEMBER OF THE JURY HAS PRINTED AND SIGNED THE VERIFICATION, THE FOREPERSON SHOULD SUMMON THE MARSHAL AND ADVISE HIM OR HER THAT YOU ARE READY TO REPORT YOUR ANSWERS TO THE COURT.

**EXHIBIT 3**

**COURT EXHIBIT 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICARDO CAJERO TORRES and MARIO
BAUTISTA,

                            Plaintiffs,

              -v-

IGOR GRINBERG and ANGIE HERRERA,

                         Defendants.

---

19 Civ. 2532 (PAE)

<u>Jury Charge</u>

**Draft Jury Charge**
**May 19, 2022**

TABLE OF CONTENTS

I.   GENERAL INSTRUCTIONS ................................................................ 1

   A.   Introductory Remarks ............................................................... 1

   B.   Role of the Court .................................................................... 2

   C.   Role of the Jury ..................................................................... 2

   D.   Role of Counsel / Objections and Sidebars ............................. 2

   E.   Sympathy or Bias ................................................................... 3

   F.   Burden of Proof ..................................................................... 4

   G.   What Is and Is Not Evidence ................................................. 5

   H.   Direct and Circumstantial Evidence ...................................... 6

   I.   Witness Credibility ................................................................ 7

   J.   Interested Witnesses .............................................................. 9

   K.   Multiple Parties ................................................................... 10

   L.   Preparation of Witnesses ..................................................... 10

   M.   All Available Evidence Need Not Be Produced .................... 10

   N.   Summaries and Charts ......................................................... 11

   O.   Foreign Language Testimony ............................................... 11

II.   SUBSTANTIVE CHARGES ............................................................ 11

   A.   Overview of Statutes and Claims ......................................... 12

   B.   Duration of Employment ..................................................... 13

   C.   Employer Status ................................................................... 14

   D.   Minimum Wage Claims ....................................................... 16

   E.   Overtime Claims .................................................................. 21

   F.   Spread of Hours Claims ....................................................... 24

   G.   Wage Notice Claims ............................................................ 26

   H.   Wage Statement Claims ....................................................... 27

   I.   Tools of the Trade Claims .................................................... 28

   J.   Good Faith ........................................................................... 30

III.   DELIBERATIONS OF THE JURY ................................................... 31

   A.   Right to See Exhibits and Hear Testimony ........................... 31

   B.   Communication with the Court ............................................ 32

    **C.**   **Notes** .................................................................................................................. **32**

    **D.**   **Duty to Deliberate; Unanimous Verdict** ............................................. **32**

    **E.**   **Verdict Form** ................................................................................................. **33**

    **F.**   **Duties of Foreperson** ................................................................................. **33**

    **G.**   **Return of Verdict** ....................................................................................... **33**

**IV.**    **CONCLUSION** .................................................................................................... **34**

I.   **GENERAL INSTRUCTIONS**

    A.   **Introductory Remarks**

Members of the jury, you have now heard all of the evidence in the case, and you will

soon hear the final arguments of the parties.  You have paid careful attention to the evidence, and

I am confident that you will act together with fairness and impartiality to reach a just verdict in

the case.

Now it is time for me to instruct you as to the law that governs the case. There are three

parts to these instructions.  First, I'm going to give you some general instructions about your

role, and about how you are to decide the facts of the case.  These instructions really would apply

to just about any trial.  Second, I'll give you some specific instructions about the legal rules

applicable to this particular case.  Third, after counsel's closing arguments, I'll give you some

final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen

carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm

reading these instructions from a prepared text.  It would be more lively, no doubt, if I just

improvised.  But it's important that I not do that.  The law is made up of words, and those words

are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right

words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you

miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.  I

will be distributing to you a verdict form, one for each of the two plaintiffs, in which to record

your verdict.  It will list the questions that you must consider, in the order that you should

consider them.

### B.      Role of the Court

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated, or states, a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You must not substitute your own notions or opinions of what the law is or ought to be.

### C.      Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal or professional expertise you might have or other facts not in evidence to the other jurors during deliberations.  You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone.  You may not consider or speculate on matters not in evidence or matters outside the case.

### D.      Role of Counsel / Objections and Sidebars

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your concern.  You should draw no inference from the fact that an attorney objected to any evidence.

Nor should you draw any inference from the fact that I might have sustained or overruled an objection. Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its significance. That is for you to decide.

From time to time, the lawyers and I had conferences out of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### E.      Sympathy or Bias

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. All parties are entitled to the same fair trial at your hands. All parties stand equal before the law, and are to be dealt with as equals in this Court.

### F.        Burden of Proof

The plaintiffs, Ricardo Cajero Torres and Mario Bautista, have the burden of proving all the elements of their claims by a preponderance of the evidence.

What does a "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents.  In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If, after considering all of the testimony, you are satisfied that the plaintiff, the party with the burden of proof, has carried his burden on each essential point of a claim, then you must find in the plaintiff's favor.  If, after such consideration, you find that the evidence produced by the plaintiff is outweighed by the evidence against the plaintiff's position, or that the credible evidence on a given issue is evenly divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then you must decide that issue against the plaintiff.  That is because the plaintiff, because he bears the burden of proof, must prove more than simple equality of evidence—he must prove the element by a preponderance of the evidence.  On the other hand, the plaintiff need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the plaintiff—that what he claims is more likely true than not—then that element will have been proven by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof only in a *criminal* trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind.

### G.    What Is and Is Not Evidence

I want to take a moment to describe to you what is and is not evidence in this case.  As I have said, you may rely only on the evidence in your deliberations.  The evidence in this case is the sworn testimony of the witnesses, and the exhibits received in evidence.  On the other hand, certain things are not evidence.

First, I will describe a list of examples of things that are not evidence:

1.    A question by a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

2.    Similarly, arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said in their opening statements was intended, and what they will say to you in their closing statements will be intended, to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

3.    Statements that I may have made concerning the evidence do not constitute evidence.  Similarly, at times, I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear.  You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

5

4.      Testimony that has been stricken or excluded is not evidence, and it may not be considered by you in rendering your verdict.

5.      Anything you may have seen or heard outside the courtroom is not evidence.

Now, I will provide you with some things that you may consider as evidence.  As I have said, evidence may come in several forms:

1.      The sworn testimony of witnesses, regardless of who called them, is evidence.  This is true of the witnesses' answers on both direct and cross examination.  However, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

2.      The exhibits that were admitted during the trial are evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

3.      Prior testimony is evidence.  Such testimony, known as depositions, is produced through a procedure where, prior to trial, the attorneys for one side may question a witness or an adversary under oath.  This is part of what is called pretrial discovery, and each side is entitled to take depositions.  To the extent I admitted excerpts of prior testimony at trial, you may consider the prior testimony of a witness according to the same standards you would use to evaluate the testimony of a witness given at trial.

**H.     Direct and Circumstantial Evidence**

Generally, as I told you in my initial instructions, there are two types of evidence that you may consider in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence is testimony by a witness about something she knows by virtue of her own senses—something she has seen, felt, touched, or heard.  For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts.  To use the same example I gave you at the start of trial:  Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day.  Assume that the

courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone

walked in with an umbrella, which was dripping wet.  Then a few minutes later another person

entered with a wet raincoat.  Now, you cannot look outside of the courtroom and you cannot see

whether or not it is raining, and no one has testified that it is raining.  So you have no direct

evidence of that fact.  But on the combination of facts that I have asked you to assume, it would

be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and

experience and common sense from one established fact the existence or non-existence of some

other fact.  Many facts, such as a person's state of mind or intentions, are rarely susceptible of

proof by direct evidence.  Usually, such facts are established by circumstantial evidence.  Where

circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general

rule that the law makes no distinction between direct evidence and circumstantial evidence.

## I.      Witness Credibility

You have had the opportunity to observe the witnesses.  It is now your job to decide how

believable each witness was in his or her testimony.  You are the sole judge of the credibility of

each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness,

the circumstances under which each witness testified, the impression the witness made when

testifying, and any other matter in evidence which may help you decide the truth and the

importance of each witness's testimony.

How do you determine where the truth lies?  You watched each witness testify.

Everything a witness said or did on the witness stand counts in your determination.  How did the

witness impress you?  Did he or she appear to be frank, forthright, and candid?  Or was the

witness evasive and edgy, as if hiding something?  How did the witness appear?  What was his or her demeanor—that is, his or her carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  However, you are not required to consider such a witness as totally "unbelievable."  You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.  By the processes which I have just described, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

8

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness. It is for you to determine whether a prior statement was inconsistent, and if so, how much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at trial.

### J.      Interested Witnesses

In deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit in some way from the outcome of the case, such as a financial interest. Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. You should also consider any other interest or motive that the witness may have in cooperating with a particular party.

In this case, the plaintiffs, Ricardo Cajero Torres and Mario Bautista, and the defendants, Igor Grinberg and Angie Herrera, testified before you. As parties to this action, they are, by definition, interested witnesses.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness. The mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has intentionally or otherwise colored or distorted his or her testimony.

You are not required to believe an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### K.       Multiple Parties

In reaching a verdict you must bear in mind that each plaintiff's claims are to be considered separately solely on the evidence, or lack of evidence, presented in support of that plaintiff's claims.  Similarly, you must bear in mind that each defendant is to be considered separately based solely on the evidence, or lack of evidence, presented against that defendant without regard to the liability of the other defendant.

### L.       Preparation of Witnesses

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.  Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### M.       All Available Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of

the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in this case.

Each party has had an equal opportunity or lack of opportunity to call any witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what any uncalled witnesses would have testified to had they been called.  The absence of any witnesses should not affect your judgment in any way.

### N. Summaries and Charts

During the trial, certain summary charts were admitted into evidence as exhibits in order to save time and avoid unnecessary inconvenience.  You may ask for these exhibits during your deliberations in the same way that you may ask for any other exhibit in evidence, and consider them as you would any other evidence.  These charts constitute evidence that you should consider where finding facts in accordance with the weight of all the evidence in the case.

### O.  Foreign Language Testimony

During the trial, two of the witnesses testified in Spanish.  The evidence you are to consider is only that provided through the official court translators.  That is, you must base your decision on the evidence presented in the English translation of the witnesses' testimony, as stated in open court and memorialized in the trial transcript.  You must disregard any different meaning.

## II.   SUBSTANTIVE CHARGES

I am now going to instruct you on the substantive law to be applied to Mr. Cajero Torres and Mr. Bautista's claims in this lawsuit, which they bring against Mr. Grinberg and Ms. Herrera.

A.       **Overview of Statutes and Claims**

Plaintiffs bring this action under the Federal Labor Standards Act, which I will refer to as the "FLSA," and the New York State Labor Law, which I will refer to as the "NYLL." These statutes provide for minimum wages and overtime pay, among other things. The parties agree that both the FLSA and the NYLL apply to this case. The FLSA and the NYLL are similar in many respects, so I will discuss these laws separately only when the differences between them are relevant to the findings you must make.

Plaintiffs have brought six categories of claims arising from their work at the restaurant at issue in this case, which I will refer to for short as "Sushi Sushi." I will now briefly summarize each category. Later, I will explain the law as to each claim in depth.

First, the plaintiffs contend that the defendants violated the FLSA and the NYLL by failing to pay them the applicable minimum wage for each hour they worked for the first 40 hours of work per week. I will refer to these claims as the "Minimum Wage" claims.

Second, the plaintiffs contend that the defendants violated the FLSA and the NYLL by failing to pay them overtime at one and one-half (1.5) times their regular hourly pay for hours worked in excess of 40 in a single week. I will refer to those claims as the "Overtime" claims.

Third, the plaintiffs contend that the defendants violated the NYLL by failing to pay them the so-called "spread of hours," which is an extra hour of pay at the minimum wage rate for days that a plaintiff's work spanned more than 10 hours. I will refer to those claims as the "Spread of Hours" claims.

Fourth, the plaintiffs contend that the defendants did not provide them with accurate wage notices as required by the NYLL. I will refer to those claims as the "Wage Notice" claims.

Fifth, the plaintiffs contend that the defendants failed to provide the plaintiffs with accurate wage statements as required by the NYLL.  I will refer to those claims as the "Wage Statement" claims.

Sixth and finally, the plaintiffs contend that the defendants failed to reimburse them for the reasonable value of work-related equipment, specifically, electric bicycles, that they purchased and paid to maintain.  They claim that having to pay and not be reimbursed for these expenses put plaintiffs' compensation below the required minimum wage, in violation of an FLSA provision known as the "tools of the trade" requirement.  I will refer to these as the "Tools of the Trade" claims.

You will each be given a verdict form, one for each plaintiff, with the questions you must answer regarding that plaintiff's claims.  I will review these questions with you as I read this charge to you.  Mr. Smallman will distribute one of them now to help you follow along.  You will also need to do a little arithmetic in connection with some of these questions.  I will send a calculator into the jury room with you to help.

### B.   Duration of Employment

As an initial matter, you will need to determine the time period, if any, that each plaintiff was employed by Sushi Sushi.

The parties have agreed that each plaintiff was employed at some time as a delivery worker at the restaurant.  They also agree that Ricardo Cajero Torres's employment at Sushi Sushi ended on January 27, 2019, and that Mario Bautista's employment there ended on January 20, 2019.

13

However, the parties dispute when each plaintiff *began* his employment.  It is each plaintiff's burden to prove by a preponderance of the evidence when he was employed, and it is up to you to decide this factual issue.

To meet that burden, a plaintiff may rely on all of the evidence received at trial, regardless of which side presented it.  However, if you find that Sushi Sushi did not keep or maintain accurate employment records, as to this issue, a plaintiff can each meet his burden by presenting sufficient evidence to show his dates of employment as a matter of just and reasonable inference.  He may meet their burden by relying on his recollection alone.  The law does not require him to recall exact dates.  You should find that he met his burden of proof as to the period of his employment if you find his testimony is credible and provides a basis for a reasonable approximation of the period during which he was employed.

If you find that a plaintiff has met that burden, then the defendants have the burden to show either the precise period that the plaintiff worked or that his approximation of the period he worked is unreasonable.  If you find the defendants met their burden of proving that either plaintiff's approximation is unreasonable, then you may find he worked the period the defendants claim.  If, however, you find the defendants did not meet their burden, then you should approximate the period of time based on the plaintiff's testimony alone.

Ultimately, it is up to you to draw a reasonable conclusion as to the period during which each plaintiff was employed.  Question 1 in Issue I of the verdict form for each plaintiff asks you to state the dates of plaintiff's employment at Sushi Sushi.

### C.    Employer Status

The next issue for you to determine involves whether the defendants were employers.  To determine whether a defendant is liable to a plaintiff on any of the claims in this case, you must

first determine whether he or she employed the plaintiff.  If a defendant you are considering was not a plaintiff's employer, that defendant cannot be liable to the plaintiff on any claim.

The parties agree that the corporate owner of Sushi Sushi, which is not a defendant in this matter, was an employer of both plaintiffs.  They also agree that Igor Grinberg was an employer of both plaintiffs.  And so as to the Question 2 listed under Issue II on each verdict form, relating to whether Igor Grinberg was an employer of the plaintiff, you must check the "Yes" answer.

However, Angie Herrera contends that she was not an employer of either plaintiff.  It is possible that a worker can have more than one employer at the same job.  If a plaintiff is found to have more than one employer at the same job, he is "jointly employed."  And note that while I will sometimes refer to "the defendants," that is not intended to indicate a view that both defendants are employers.

Under the FLSA and NYLL, an individual is an "employer" if he or she possesses the power to control, in whole or in part, a company's operations in a manner that relates to the employment of the company's employees.  In making this determination as to Ms. Herrera, you should consider the totality of the circumstances that constitute the economic reality of the employee/employer relationship.  Ownership, or a stake in the company, is insufficient to establish that an individual is an employer unless the owner also has some involvement in the company's relationship with its employees.  Whether an individual defendant was an employer depends on whether that individual possessed the power to control the plaintiff's work.  The focus is on the economic reality of the situation rather than technical concepts or job titles.  Factors that bear on the economic realities of the employer/employee relationship include, but are not limited to, whether the individual has the authority to:

- hire and fire employees;

- supervise and control employees' work schedules or conditions of employment;

- determine the rate and method of payment for employees; and

- maintain employment records for employees.

No one of these factors standing alone is dispositive. You may consider these factors and any others that you find pertinent to the economic reality of the employer/employee relationship in deciding whether a plaintiff has proven by a preponderance of the evidence that Angie Herrera was an employer of his.

If after consideration of all the evidence you determine that a plaintiff has proven, by a preponderance of the evidence, that Ms. Herrera was, at some point during his work, his employer, then you must answer "Yes" to Question 3 in Issue II. Otherwise, answer "No."

### D.      Minimum Wage Claims

I will next turn to the Minimum Wage claims, which on the verdict form is Issue III. In these claims, the plaintiffs claim that they were not paid the minimum wage for each hour of work required under the FLSA and the NYLL. To sustain his burden of proof with respect to these claims, a plaintiff must prove by a preponderance of the evidence that the defendants paid him less than the required minimum wage for hours that he worked.

The applicable minimum wage rates under the FLSA and the NYLL at the time are not the same. However, because the applicable minimum wage under the New York Labor Law is higher than the federal minimum wage, and because a plaintiff cannot recover twice for the same minimum wage violations under both federal and state law, I will address, and you will be applying, the applicable minimum wage rate under the NYLL only.

To establish a minimum wage claim, the plaintiff must establish by a preponderance of the evidence that during all or part of the time that he was employed, he was paid less than he was legally due in minimum wages.

I will instruct you now on how to determine whether the plaintiff was paid less than he was legally due in minimum wages. There are several steps in making this determination.

### 1.   The Minimum Wage Rates Applicable to Plaintiffs

The first issue is to decide the minimum wage rate that applied to each plaintiff under the NYLL.

### a.   The Minimum Hourly Rate Before a Tip Credit

The minimum hourly wage rate set by the NYLL has changed over time. The rate applicable to Sushi Sushi is that for what the law calls a "Small Employer." That is because, as the parties agree, Sushi Sushi had 10 or fewer employees at all relevant times. The following rates are the required minimum hourly wage in the years in which one or both of plaintiffs worked for Sushi Sushi.

- For any work performed during calendar year 2016, meaning from January 1, 2016 through December 31, 2016, the minimum hourly wage was $9.

- For any work performed during calendar year 2017, meaning from January 1, 2017 through December 31, 2017, the minimum hourly wage was $10.50.

- For any work performed during calendar year 2018, meaning from January 1, 2018 through December 31, 2018, the minimum hourly wage was $12.

- For any work performed during calendar year 2019, meaning from January 1, 2019 through December 31, 2019, the minimum hourly wage was $13.50.

### b. Tip Credit

There is one other determination you must make in determining the hourly rate that Sushi Sushi was required to pay the plaintiffs.  Under the NYLL, an employer is allowed to pay certain "tipped employees" an hourly rate that is less than the prevailing minimum wage by crediting the tips received by the employee against part of the required hourly wage.  This is known as a "tip credit."  Service employees, such as restaurant delivery workers, are among those to whom an employer can pay a reduced cash wage on account of the employee's receipt of tips.  If you find that defendants were entitled to take a "tip credit" under the NYLL for a particular plaintiff, the wage that defendants were required to pay the plaintiff must be reduced accordingly.

The NYLL sets the maximum amount allowed for a tip credit.  In other words, for a tipped employee, even if defendants are entitled to take a tip credit, there is still a minimum cash wage they must pay the employee per hour.  I instruct you that the minimum cash wage in New York City for each year relevant to the case was as follows:

- For work performed during calendar year 2016, meaning from January 1, 2016 through December 31, 2016, instead of a $9 minimum wage, an employer could take a tip credit of up to $1.50 per hour.  The minimum cash wage for 2016 was therefore $7.50 per hour.

- For work performed during calendar year 2017, meaning from January 1, 2017 through December 31, 2017, instead of a $10.50 minimum wage, an employer could take a tip credit of up to $3 per hour.  The minimum cash wage for 2017 was therefore $7.50 per hour.

- For work performed during calendar year 2018, meaning from January 1, 2018 through December 31, 2018, instead of a $12 minimum wage, an employer could take a tip credit of up to $4 per hour.  The minimum cash wage for 2018 was therefore $8

18

per hour.

- For work performed during calendar year 2019, meaning from January 1, 2019 through December 31, 2019, instead of a $13.50 minimum wage, an employer could take a tip credit of up to $4.50 per hour.  The minimum cash wage for 2019 was therefore $9 per hour.

The first issue for you to resolve, in Question 4 under Issue III, is whether Sushi Sushi qualified to take "tip credit" for the plaintiff you are considering.

Under the New York Labor Law, an employer is entitled to take a "tip credit" against the required minimum wage if he or she establishes by a preponderance of the evidence the following four things:

*First*, that the employee receives sufficient tips to make up the difference between the regular minimum wage rate and the lower rate reflecting the "tip credit."

*Second*, that defendants gave written notice to the plaintiff, in English and any other language spoken by the employee as his primary language, stating the amount of the tip credit to be taken from the basic minimum hourly rate.

*Third*, that the employer did not retain for itself any portion of the tips received from customers, or require the employee to share tips with non-tipped employees.  It is undisputed that Sushi Sushi complied with this requirement.

*Fourth*, that the employer maintained sufficient records of the number of hours the plaintiff worked, daily and weekly, including the time of arrival and departure of each employee, and provided the plaintiff a statement listing hours worked, rates paid, gross wages, allowances claimed as part of the minimum wage, deductions, and net wages with every payment of wages.

If you find all of these elements by a preponderance of the evidence, then defendants may take advantage of the tip credit.

In Question 4 of Issue III of your verdict forms, you will be asked to record your determination whether Sushi Sushi was entitled to take a tip credit.

## 2.   The Hourly Wage Rate Paid to the Plaintiffs

The next step is to determine at what hourly rate the plaintiff was paid by Sushi Sushi.  I will refer to this as his "Regular Rate of Pay."

It is undisputed that each plaintiff at all times was paid at an hourly rate.  So, you don't have to do any math to determine their regular rates of pay.  You merely must determine what that rate of pay was.  Defendants contend that, each year, each plaintiff was paid at an hourly rate consistent with the rate that an employer who qualified to take the tip credit was required to pay.  Plaintiffs contend that they were paid at an hourly rate lower than the rate the law required.

You may consider all of the evidence received at trial when you determine a plaintiff's regular rate of pay, including the pay records that have been received in evidence.  However, if you find that the defendants did not maintain accurate records as to the regular rate of pay then the plaintiffs can meet their burden by presenting sufficient evidence to show the regular rate of pay as a matter of just and reasonable inference.  A plaintiff may rely on his own testimony regarding his recollection of the rate he was paid.  You may find he met his burden of proof if you find his testimony is credible.  If you find that a plaintiff has satisfied this burden, then the defendants, as I explained before in connection with determining the duration of the plaintiffs' employment have the burden to show that the inferences drawn from that plaintiff's testimony are unreasonable.

In Question 5 of Issue III, you are asked to enter your finding as to the plaintiff's regular rate of pay in each relevant year.

### 3. Conclusion

You now have all the information you need to determine whether each plaintiff was paid the required minimum wage. The final step is simply to compare (1) the hourly minimum wage that Sushi Sushi was required to pay the plaintiff, which turns on whether Sushi Sushi qualified to take the tip credit, with (2) the regular hourly rate of pay that you have found Sushi Sushi paid the plaintiff.

In Question 6 of Issue III, you will be asked whether Sushi Sushi paid the plaintiff the required minimum wage for each year in question.

### E.     Overtime Claims

I will next turn to plaintiffs' overtime claims.

To prevail on his overtime claims, a plaintiff must prove by a preponderance of the evidence that the defendants failed to pay the plaintiff overtime pay as required.

A plaintiff is entitled to overtime pay for the hours he worked in excess of 40 in any given workweek. Any hours that a plaintiff worked in excess of 40 in a single week are called "overtime hours."

### 1. Calculating A Plaintiff's Hours Worked and Whether the Plaintiff Ever Worked Overtime Hours

Because the parties dispute whether or to what extent the plaintiffs worked overtime hours, you must first determine how many hours each plaintiff worked per week. An employee is considered to be working for purposes of the claims whenever he exerts himself, mentally or physically, for tasks controlled or required by the employer and performs these tasks primarily for the benefit of the employer.

21

The number of hours an employee works in a day is determined under what is called the "continuous workday" rule.  Under that rule, the workday begins when the employee begins to engage in work and continues until the completion of his work.  It includes all of the time within that period whether or not the employee is engaged in work throughout the entire period.  If, however, as to a particular day, a plaintiff worked two distinct shifts, separated in time, the employee's hours worked do not include the time in between the two shifts.

With respect to this issue, as with the period of each plaintiff's employment, the plaintiffs may rely on all the evidence received at trial, regardless of which side presented it.  However, if you find that a defendant did not keep and maintain required employment records then a plaintiff can meet his burden by presenting sufficient evidence to show the hours he worked as a matter of just and reasonable inference.  He may meet his burden by relying on his recollection alone.  The law does not require him to recall exact dates or exact hours.  You should find that he met his burden of proof as to the length of shifts if you find his testimony to be credible and that it provides a basis for a reasonable approximation of the total number of hours he worked.

If you find that a plaintiff has met that burden, then the defendant at issue has the burden to show either the precise hours that plaintiff worked or that his approximation of hours worked is unreasonable.  If you find the defendants have met their burden of proving a plaintiff's approximation is unreasonable, then you may find that he worked the period the defendants claim.  If, however, you find the defendants did not meet their burden then you should approximate the period of time based on the applicable plaintiff's testimony alone.

Ultimately, it is up to you to draw a reasonable conclusion as to the number of hours each plaintiff worked per workday, how many days a week each plaintiff worked, and how many hours per week each plaintiff worked.

Question 7, under Issue IV, asks whether the plaintiff ever worked overtime hours.  If you find that the plaintiff never worked more than 40 hours in a given week for Sushi Sushi, then check the box "No" and skip Question 8.

If, however, you conclude that the plaintiff at least once worked more than 40 hours in a given week, then check the box "Yes" and proceed to Question 8, which asks whether the plaintiff ever worked overtime hours and was not properly compensated.

### 2. Calculating Whether the Plaintiff Was Not Properly Compensated for Overtime Work

As I mentioned, a plaintiff is entitled to overtime pay for the hours he worked in excess of 40 in any given workweek.  A workweek is defined as any period of 168 consecutive hours.

An employee must be paid at a rate of at least one and one-half (1.5) times either the statutory minimum wage or—if the employee's regular rate of pay was higher than the statutory minimum wage—the employee's regular rate of pay.  In this case, save for a short period in 2016 relating to Ricardo Cajero Torres, the defendants do not claim to have paid the plaintiffs at a rate higher than the statutory minimum wage, and the plaintiffs do not claim that their regular rate of pay was above the statutory minimum wage.  So, I instruct you that the issue on the overtime claims in this case is whether, for hours worked in excess of 40 in any given workweek, the plaintiff was paid at least one and one-half (1.5) times the statutory minimum wage.

In making this determination, the rate that Sushi Sushi was required to pay for overtime work is to be determined by first multiplying the statutory minimum wage rate by one and one-half (1.5), and only then deducting, if you have found it applicable, the tip credit.  The chart below sets out what the required rate of pay for overtime work was in each year relevant to this case, depending on whether you have found the tip credit to apply or not.

| Period | Required Overtime Wage Rate (no tip credit) | Required Overtime Wage Rate (with tip credit) |
|---|---|---|
| January 1, 2016 to December 31, 2016 | $13.50 per hour (1.5 times $9) | $12 per hour (1.5 times $9 minus $1.50 tip credit) |
| January 1, 2017 to December 31, 2017 | $15.75 per hour (1.5 times $10.50) | $12.75 per hour (1.5 times $10.50 minus $3 tip credit) |
| January 1, 2018 to December 31, 2018 | $18 per hour (1.5 times $12) | $14 per hour (1.5 times $12 minus $4 tip credit) |
| January 1, 2019 to December 31, 2019 | $20.25 per hour (1.5 times $13.50) | $15.75 per hour (1.5 times $13.50 minus $4.50 tip credit) |

On Issue IV, Question 8 asks you to determine for each year that the plaintiff worked for Sushi Sushi, whether there was at least one week in which plaintiff worked overtime hours and was not properly compensated for those hours.

I also want to direct your attention to a chart, following Issue V, on your verdict sheets. It is entitled "Calculations for Issues III, IV, and V." It instructs you to determine, for any year in which you have found that plaintiff was not paid either the required minimum wages or overtime wages, the number of regular and overtime hours that you find the plaintiff worked that year. It also instructs you to determine the total wages, not including tips, that the plaintiff received from Sushi Sushi that year.

You are not responsible for calculating the amount of damages, if any, for these claims. Rather, if you find the defendants failed to pay required minimum wages or overtime, I will calculate these damages based on these calculations you have recorded in the verdict form.

### F.   Spread of Hours Claims

The next set of issues concerns the Spread of Hours claims. Under the NYLL, an employee is entitled to an additional hour of pay, at the minimum hourly rate, on any day in which his "spread of hours" exceeds 10 hours.

To prevail on his "spread of hours" claim, a plaintiff must prove by a preponderance of the evidence each of the following elements:

**First**, that his spread of hours on a given day was greater than 10, and

**Second**, that he was not paid an additional hour's wages at the minimum wage rate for that day's work.

The NYLL defines the spread of hours as follows:  "The spread of hours is the length of the interval between the beginning and end of an employee's workday."  The spread of hours for any day includes compensable time plus, as I have previously defined it, any non-compensable break time.

To give an example, imagine an employee begins work at 7:00 a.m. and works until 10:00 a.m.  Then the employee is off work until 7:00 p.m. that evening and worked until 10:00 p.m.  The employee worked a total of six hours, but his spread of hours is 15, the number of hours between 7:00 a.m and 10:00 p.m.  In this scenario, the employee would be paid for seven hours: the six hours he actually worked, plus an additional hour—paid at the minimum wage rate—because he worked a "spread of hours" greater than 10.

The additional hour paid to an employee for spread of hours is not counted towards the total hours an employee works in a given week for purposes of computing overtime pay.

In Question 9 of Issue V on the verdict forms, you must indicate whether a plaintiff's spread of hours ever exceeded 10 hours.  If you find that it did exceed 10 hours, then you must answer Question 10 of Issue V, which asks whether for each year in which he worked for Sushi Sushi, plaintiff was properly compensated for his spread of hours.

In the chart that follows Issue V, entitled "Calculations for Issues III, IV, and V," for any year in which you answered "Yes," you must also indicate in section (4) the number of days a

25

plaintiff's spread of hours exceeded 10 hours, but as to which he did not receive spread of hour pay.

### G.     Wage Notice Claims

I will now turn to plaintiffs' Wage Notice claims.  Plaintiffs contend that the defendants failed to provide them with certain employment information required by New York law.  Under the NYLL at the time of plaintiffs' employment, every employer was required to provide certain information to an employee at the time of hiring, including:

- "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other";

- "allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances";

- the regular pay day designated by the employer;

- the name of the employer;

- any "doing business as" names used by the employer;

- the physical address of the employer's main office or principal place of business, and a mailing address if different;

- the telephone number of the employer, along with any other information as the commissioner deems material and necessary.

Notice must be given to the employee in both English and in the language identified by each employee as his primary language.

The employer bears the burden of proving compliance with the wage notice requirements.  You should find in favor of a plaintiff unless the defendants prove by a

preponderance of the evidence that they provided the plaintiff with the wage notice information required by the NYLL.

There is, however, an affirmative defense to this claim.  Specifically, defendants are not liable, and you must find in favor of defendants on this claim, if defendants establish, by a preponderance of the evidence, either (1) that they timely paid plaintiffs all wages due *or* (2) that they did not provide a wage notice in good faith—that is, that they reasonably believed in good faith that they were not required to provide the employee with the wage notice.

Questions 13 through 15 under Issue VI relate to this claim.

**H.      Wage Statement Claims**

Plaintiffs next contend that the defendants failed to provide them with wage statements, or pay stubs, as required by the NYLL.

The NYLL requires that "[e]very employer shall provide to each employee a statement, commonly referred to as a pay stub, with every payment of wages."

Every such statement must list:

- The dates of work covered by that payment of wages;

- The name of the employee;

- The name of the employer;

- The rate and frequency of pay;

- Gross wages;

- The numbers of regular and overtime hours worked;

- Any deductions or allowances claimed; and

- Net wages.

If you find that a plaintiff has proven by a preponderance of the evidence that the defendants failed to provide him this information on a statement that he could retain, then you must find that the defendants violated the NYLL pay stub requirement.

However, as with the wage notice claims, there is an affirmative defense to this claim. Specifically, defendants are not liable, and you must find in favor of defendants, if defendants establish, by a preponderance of the evidence, either (1) that they timely paid plaintiffs all wages due *or* (2) that they did not provide a wage statements in good faith—that is, that they reasonably believed in good faith that they were not required to provide the employee with the wage statements.

Questions 16 and 17 under Issue VII relate to this claim.

## I.     Tools of the Trade Claims

The plaintiffs, finally, contend that the defendants required them to spend their own money to purchase work-related equipment that was required for their jobs.  FLSA regulations state that, if it is a requirement of the employer that an employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the FLSA in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid to him.

Accordingly, an employer may not require an employee to spend his own money to purchase "tools of the trade" if doing so would lower the employee's pay below that required by the minimum wage or overtime requirements, which I have already described.  "Tools of the trade" means tools, including bicycles and any reasonably necessary safety equipment, "which

will be used in or are specifically required for the performance of the employer's particular work."

To establish this claim, the plaintiff must prove the following elements:

*First*, that Sushi Sushi required that the plaintiff possess and/or use the bicycle to carry out his duties as an employee;

*Second*, that the plaintiff incurred out-of-pocket expenses for purchasing, maintaining, or replacing the bicycle;

*Third*, that the reasonable value of these expenses, when incurred, reduced (or further reduced) the plaintiff's compensation below the required minimum wage; and

*Fourth*, that the plaintiff incurred these expenses in the two-year period before he brought the claims or, if the defendants willfully violated the FLSA in the three years before that date. The claims here were brought on March 21, 2019. An employer's violation is willful if the employer either (1) knew its conduct was prohibited by law or (2) showed reckless disregard as to whether its conduct was prohibited by law. Reckless disregard means that the employer was aware that its conduct was governed by law but failed to investigate the matter further in order to comply with the law. The burden is on the plaintiff to prove by a preponderance of the evidence that his employer acted willfully.

If you find by a preponderance of the evidence that a plaintiff was required to spend his own money to carry out the job duties assigned by the defendants in accordance with the foregoing instructions, you should find in favor of the plaintiff on this claim. That is true even if the plaintiff kept the equipment at issue after leaving his job.

If you find that a plaintiff has proven by a preponderance of the evidence that the defendants required him to pay for "tools of the trade" and repairs to those tools with his own

29

money, and that the employee's pay was thereby reduced below the minimum wage or the amount required by the overtime laws, then you must award the plaintiff the portion of his expenses that caused the employee to be paid less than the minimum wage and the required overtime.  To qualify as an expense chargeable to the defendants, the plaintiff must have incurred the expense while working for the defendants.

Questions 18 through 22 on Issue VIII relate to this claim. The last of these questions, number 22, asks if any violation was willful.  You should answer this question only if you have found a violation, and only if you have found the defendant in question to have been an employer of the plaintiff.

**J.    Good Faith**

If you found that Sushi Sushi failed to pay a plaintiff the applicable minimum wage, failed to pay a plaintiff overtime pay, failed to pay a plaintiff spread of hours pay, failed to provide an adequate wage notice to a plaintiff, or failed to provide wage statements to a plaintiff—according to the law as I have previously described it to you—you will then need to determine whether any defendant you have found to be an employer acted in good faith.  That is because the law may lessen a defendant's liability if he or she acted in good faith.  I will now instruct you on how to determine if a defendant acted in good faith.

To act in good faith is to act with objectively reasonable grounds for believing that the acts or omissions at issue did not violate the law.  It is the defendants' burden to establish good faith.  It is not enough for a defendant to claim that he or she did not know that his or her acts or omissions violated the law.  To establish good faith, a defendant must prove that he or she took active steps to ascertain the dictates of the law, and that he or she then took action to comply with the law, as he or she understood it.

30

Questions 23 to 27 in Issue IX on your verdict form ask you whether, to the extent you have determine that a defendant violated the law as I have described it to you, he or she nonetheless acted in good faith.  If you have not found a defendant to have been an employer of the plaintiff, *or* if you have not found the violation of law in question, you are not to answer the question.

## III.   DELIBERATIONS OF THE JURY

### A.    Right to See Exhibits and Hear Testimony

Members of the jury, now that you have heard the closing arguments of the parties, you are about to go into the jury room to begin your deliberations. Before you do that, I will give you a few final instructions.

The exhibits received in evidence will be accessible to you upon request.  If during those deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.  And please be patient— with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request.  If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you a list of the exhibits; a verdict form for each plaintiff, which I will discuss in a moment; and a copy of these instructions.  There is one of each of these for each juror.

### B.        Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court—should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

### C.        Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors' recollections are equal.  If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

### D.        Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the questions I have described to you.  For the plaintiff to prevail on the questions that you must answer, he must sustain his burden of proof as I have explained to you with respect to the questions you are considering.  Your verdict on each question must be unanimous.  Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors.  This is the very essence of jury deliberation.  It is your duty to discuss the evidence.  If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience.  You are not to give up a point of view,

32

however, that you conscientiously believe in simply because you are outnumbered or outweighed.  You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case. You are not to discuss the case until all jurors are present.  Five or six jurors together is only a gathering of individuals.  Only when eight jurors are present do you constitute a jury, and only then may you deliberate.

### E.    Verdict Form

I have prepared a verdict form for you to use in recording your decision as to each plaintiff's claims.  Please use those forms to report your verdict.

### F.    Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.    Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you.  All jurors must sign the form reflecting each juror's agreement with the verdict.  The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, members of the jury, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

## IV.   CONCLUSION

Members of the jury, that concludes my instructions to you.  I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like me to give to you or anything I may not have covered in my previous statement.

* * * * *

Members of the jury, you may now retire.  The marshal will be sworn before we retire.

(Marshal sworn)

**EXHIBIT 4**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICARDO CAJERO TORRES and MARIO BAUTISTA,<br><br>                                   Plaintiffs,<br><br>               - against -<br><br>IGOR GRINBERG and ANGIE HERRERA,<br><br>                                   Defendants. | 19 Civ. 2532 (PAE)<br><br>**VERDICT FORM AS TO**<br>**RICARDO CAJERO TORRES** |

Hon. Paul A. Engelmayer, United States District Judge:

## ISSUE I:  DURATION OF EMPLOYMENT

1.      On which dates was plaintiff employed by Sushi Sushi?

FROM _____          TO _____

## ISSUE II: EMPLOYER STATUS

2.      Was defendant Igor Grinberg an employer of plaintiff?

YES _____          NO _____

3.      Was defendant Angie Herrera an employer of plaintiff?

YES _____          NO _____

## <u>ISSUE III:  MINIMUM WAGES</u>

4.  Did Sushi Sushi qualify to take a tip credit with respect to plaintiff?

In 2016:   YES _____   NO _____

In 2017:   YES _____   NO _____

In 2018:   YES _____   NO _____

In 2019:   YES _____   NO _____

5.  What was plaintiff's regular hourly rate of pay at Sushi Sushi?

In 2016:   _____

In 2017:   _____

In 2018:   _____

In 2019:   _____

6.  Was plaintiff paid a regularly hourly rate by Sushi Sushi that was below the minimum wage?

In 2016:   YES _____   NO _____

In 2017:   YES _____   NO _____

In 2018:   YES _____   NO _____

In 2019:   YES _____   NO _____

**ISSUE IV:  OVERTIME WAGES**

7.  During the term of plaintiff's employment with Sushi Sushi, did plaintiff ever work overtime hours?

      YES _____          NO _____

8.  Was there at least one week in which plaintiff worked overtime hours and was not properly compensated for his overtime hours?

      In 2016:    YES _____       NO _____

      In 2017:    YES _____       NO _____

      In 2018:    YES _____       NO _____

      In 2019:    YES _____       NO _____


**ISSUE V:  SPREAD OF HOURS**

9.  Did plaintiff's "spread of hours" exceed 10 hours on any given day at any time during his employment at Sushi Sushi?

      YES _____          NO _____

10. Was plaintiff properly compensated for his "spread of hours" by Sushi Sushi?

      In 2016:    YES _____       NO _____

      In 2017:    YES _____       NO _____

      In 2018:    YES _____       NO _____

      In 2019:    YES _____       NO _____

## CALCULATIONS FOR ISSUES III, IV, AND V

11. Please fill in the chart according to the instructions.

12. You must fill in the sections (1), (2) and (3) for any year in which you answered "Yes" to *either* Question 6 *or* Question 8.

- In the section marked "(1)", please indicate the number of compensable regular hours that you find the plaintiff worked for that year.

- In the section marked "(2)", please indicate the number of compensable overtime hours that you find plaintiff worked for that year.

- In the section marked "(3)", please indicate the total amount of money plaintiff received for that year, not including tips.

You must fill in section (4) for any year in which you answered "No" to Question 10.

- In that section, please indicate the number of days, if any, that you find plaintiff worked more than 10 hours without receiving payment for an extra hour for spread of hours pay during the year listed.

| Year | (1) Number of regular hours worked by plaintiff | (2) Number of overtime hours worked by plaintiff | (3) Total wages (not including tips) that plaintiff was paid in this year | (4) Number of days in which plaintiff worked more than 10 hours without receiving spread of hours pay |
|------|------|------|------|------|
| 2016 | | | | |
| 2017 | | | | |
| 2018 | | | | |
| 2019 | | | | |

## ISSUE VI:  TIME-OF-HIRE WAGE NOTICE

13. Was plaintiff provided with an adequate wage notice within 10 days of the date he was hired by Sushi Sushi?

   YES _____          NO _____

14. If you answered "No" to the preceding question, was he ever provided with an adequate wage notice?

   YES _____          NO _____

15. If you answered "Yes" to the preceding question, on what date or date(s) was he provided with an adequate wage notice?

   _____


## ISSUE VII:  WAGE STATEMENTS

16. Was plaintiff provided with a full and accurate wage statement each payday during the term of his employment at Sushi Sushi?

   YES _____          NO _____

17. If you answered "No" to the preceding question, for how many weeks did Sushi Sushi fail to provide plaintiff with full and accurate wage statements?

   _____ weeks.

## ISSUE VIII:  TOOLS OF THE TRADE

18. Has plaintiff proven that he is entitled to reimbursement for the purchase of any electric bicycle?

YES _____          NO _____

19. If you answered "Yes" to Question 18, how much of his own money did he spend on the purchase that was not reimbursed?

AMOUNT:  $ _____

20. Has plaintiff proven that he is entitled to reimbursement for maintenance of any electric bicycle?

YES _____          NO _____

21. If you answered "Yes" to Question 20, how much of his own money did he spend on maintenance per month on average that was not reimbursed?

AMOUNT:  $ _____

22. If you answered "Yes" to Question 18 or 20, did the defendant willfully violate the FLSA in failing to reimburse the plaintiff?

Igor Grinberg          YES _____          NO _____

Angie Herrera          YES _____          NO _____

## ISSUE IX.  GOOD FAITH

23.  To the extent Sushi Sushi failed to compensate plaintiff the applicable minimum wage, did the defendants nonetheless act in good faith?

YES _____          NO _____

24.  To the extent that Sushi Sushi failed to compensate plaintiff adequate overtime wages, did the defendants nonetheless act in good faith?

YES_____          NO _____

25. To the extent that Sushi Sushi failed to compensate plaintiff for his spread of hours, did the defendants nonetheless act in good faith?

YES_____          NO _____

26. To the extent that Sushi Sushi failed to provide plaintiff with an adequate wage notification, did the defendants nonetheless act in good faith?

YES _____          NO _____

27. To the extent that Sushi Sushi failed to provide plaintiff with adequate wage statements, did the defendants nonetheless act in good faith?

YES _____          NO _____

## **VERDICT CERTIFICATION**

**PRINTED NAME**                            **SIGNATURE**

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

Dated:           _____

BY PRINTING AND SIGNING YOUR NAME ABOVE, EACH JUROR IS INDICATING THAT HE OR SHE AGREES WITH EACH AND EVERY ANSWER REPORTED ON THIS VERDICT FORM.  AFTER EACH MEMBER OF THE JURY HAS PRINTED AND SIGNED THE VERIFICATION, THE FOREPERSON SHOULD SUMMON THE MARSHAL AND ADVISE HIM OR HER THAT YOU ARE READY TO REPORT YOUR ANSWERS TO THE COURT.

**EXHIBIT 5**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RICARDO CAJERO TORRES and MARIO
BAUTISTA,

                                        Plaintiffs,

                - against -

IGOR GRINBERG and ANGIE HERRERA,

                                        Defendants.

19 Civ. 2532 (PAE)

**VERDICT FORM AS TO**
**MARIO BAUTISTA**

Hon. Paul A. Engelmayer, United States District Judge:

### ISSUE I:  DURATION OF EMPLOYMENT

1.      On which dates was plaintiff employed by Sushi Sushi?

        FROM _____        TO _____

### ISSUE II: EMPLOYER STATUS

2.      Was defendant Igor Grinberg an employer of plaintiff?

        YES _____        NO _____

3.      Was defendant Angie Herrera an employer of plaintiff?

        YES _____        NO _____

## ISSUE III:  MINIMUM WAGES

4.  Did Sushi Sushi qualify to take a tip credit with respect to plaintiff?

    In 2017:    YES _____         NO _____

    In 2018:    YES _____         NO _____

    In 2019:    YES _____         NO _____

5.  What was plaintiff's regular hourly rate of pay at Sushi Sushi?

    In 2017:    _____

    In 2018:    _____

    In 2019:    _____

6.  Was plaintiff paid at a regularly hourly rate by Sushi Sushi that was below the minimum wage?

    In 2017:    YES _____         NO _____

    In 2018:    YES _____         NO _____

    In 2019:    YES _____         NO _____

**<ins>ISSUE IV:  OVERTIME WAGES</ins>**

7. During the term of plaintiff's employment with Sushi Sushi, did plaintiff ever work overtime hours?

    YES _____          NO _____

8. Was there at least one week in which plaintiff worked overtime hours and was not properly compensated for his overtime hours?

    In 2017:    YES _____          NO _____

    In 2018:    YES _____          NO _____

    In 2019:    YES _____          NO _____

**<ins>ISSUE V:  SPREAD OF HOURS</ins>**

9. Did plaintiff's "spread of hours" exceed 10 hours on any given day at any time during his employment at Sushi Sushi?

    YES _____          NO _____

10. Was plaintiff properly compensated for his "spread of hours" by Sushi Sushi?

    In 2017:    YES _____          NO _____

    In 2018:    YES _____          NO _____

    In 2019:    YES _____          NO _____

## CALCULATIONS FOR ISSUES III, IV, AND V

11. Please fill in the chart according to the instructions.

12. You must fill in the sections (1), (2) and (3) for any year in which you answered "Yes" to *either* Question 6 *or* Question 8.

- In the section marked "(1)", please indicate the number of compensable regular hours that you find the plaintiff worked for that year.

- In the section marked "(2)", please indicate the number of compensable overtime hours that you find plaintiff worked for that year.

- In the section marked "(3)", please indicate the total amount of money plaintiff received for that year, not including tips.

You must fill in section (4) for any year in which you answered "No" to Question 10.

- In that section, please indicate the number of days, if any, that you find plaintiff worked more than 10 hours without receiving payment for an extra hour for spread of hours pay during the year listed.

| Year | (1) Number of regular hours worked by plaintiff | (2) Number of overtime hours worked by plaintiff | (3) Total wages (not including tips) that plaintiff was paid in this year | (4) Number of days in which plaintiff worked more than 10 hours without receiving spread of hours pay |
|------|------|------|------|------|
| 2017 | | | | |
| 2018 | | | | |
| 2019 | | | | |

## ISSUE VI:  TIME-OF-HIRE WAGE NOTICE

13. Was plaintiff provided with an adequate wage notice within 10 days of the date he was hired by Sushi Sushi?

    YES _____          NO _____

14. If you answered "No" to the preceding question, was he ever provided with an adequate wage notice?

    YES _____          NO _____

15. If you answered "Yes" to the preceding question, on what date or date(s) was he provided with an adequate wage notice?

    _____


## ISSUE VII:  WAGE STATEMENTS

16. Was plaintiff provided with a full and accurate wage statement each payday during the term of his employment at Sushi Sushi?

    YES _____          NO _____

17. If you answered "No" to the preceding question, for how many weeks did Sushi Sushi fail to provide plaintiff with full and accurate wage statements?

    _____ weeks.

## ISSUE VIII:  TOOLS OF THE TRADE

18. Has plaintiff proven that he is entitled to reimbursement for the purchase of any electric bicycle?

    YES _____          NO _____

19. If you answered "Yes" to Question 18, how much of his own money did he spend on the purchase that was not reimbursed?

    AMOUNT:  $ _____

20. Has plaintiff proven that he is entitled to reimbursement for maintenance of any electric bicycle?

    YES _____          NO _____

21. If you answered "Yes" to Question 20, how much of his own money did he spend on maintenance per month on average that was not reimbursed?

    AMOUNT:  $ _____

22. If you answered "Yes" to Question 18 or 20, did the defendant willfully violate the FLSA in failing to reimburse the plaintiff?

    Igor Grinberg          YES _____          NO _____

    Angie Herrera          YES _____          NO _____

## ISSUE IX.  GOOD FAITH

23.  To the extent Sushi Sushi failed to compensate plaintiff the applicable minimum wage, did the defendants nonetheless act in good faith?

   YES _____          NO _____

24.  To the extent that Sushi Sushi failed to compensate plaintiff adequate overtime wages, did the defendants nonetheless act in good faith?

   YES_____          NO _____

25. To the extent that Sushi Sushi failed to compensate plaintiff for his spread of hours, did the defendants nonetheless act in good faith?

   YES_____          NO _____

26. To the extent that Sushi Sushi failed to provide plaintiff with an adequate wage notification, did the defendants nonetheless act in good faith?

   YES _____          NO _____

27. To the extent that Sushi Sushi failed to provide plaintiff with adequate wage statements, did the defendants nonetheless act in good faith?

   YES _____          NO _____

## VERDICT CERTIFICATION

**PRINTED NAME**                    **SIGNATURE**

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

Dated: _____

BY PRINTING AND SIGNING YOUR NAME ABOVE, EACH JUROR IS INDICATING THAT HE OR SHE AGREES WITH EACH AND EVERY ANSWER REPORTED ON THIS VERDICT FORM.  AFTER EACH MEMBER OF THE JURY HAS PRINTED AND SIGNED THE VERIFICATION, THE FOREPERSON SHOULD SUMMON THE MARSHAL AND ADVISE HIM OR HER THAT YOU ARE READY TO REPORT YOUR ANSWERS TO THE COURT.

**EXHIBIT 6**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICARDO CAJERO TORRES and MARIO
BAUTISTA,

                    Plaintiffs,                              19 Civ. 2532 (PAE)

            -v-                                             Jury Charge

IGOR GRINBERG and ANGIE HERRERA,

                    Defendants.

---

**Jury Charge**
**May 19, 2022**

TABLE OF CONTENTS

I.   GENERAL INSTRUCTIONS ............................................................................. 1

   A.   Introductory Remarks ..................................................................... 1

   B.   Role of the Court ............................................................................. 2

   C.   Role of the Jury ............................................................................... 2

   D.   Role of Counsel / Objections and Sidebars ................................... 2

   E.   Sympathy or Bias ............................................................................ 3

   F.   Burden of Proof .............................................................................. 4

   G.   What Is and Is Not Evidence .......................................................... 5

   H.   Direct and Circumstantial Evidence .............................................. 6

   I.   Witness Credibility ......................................................................... 7

   J.   Interested Witnesses ....................................................................... 9

   K.   Multiple Parties ............................................................................ 10

   L.   Preparation of Witnesses .............................................................. 10

   M.   All Available Evidence Need Not Be Produced ........................... 10

   N.   Summaries and Charts .................................................................. 11

   O.   Foreign Language Testimony ....................................................... 11

II.   SUBSTANTIVE CHARGES ........................................................................... 11

   A.   Overview of Statutes and Claims ................................................. 12

   B.   Duration of Employment .............................................................. 13

   C.   Employer Status ............................................................................ 14

   D.   Minimum Wage Claims ................................................................ 16

   E.   Overtime Claims ........................................................................... 21

   F.   Spread of Hours Claims ............................................................... 24

   G.   Wage Notice Claims ..................................................................... 26

   H.   Wage Statement Claims ................................................................ 27

   I.   Tools of the Trade Claims ............................................................ 28

   J.   Good Faith .................................................................................... 30

III.   DELIBERATIONS OF THE JURY ................................................................. 31

   A.   Right to See Exhibits and Hear Testimony .................................. 31

   B.   Communication with the Court ..................................................... 31

    **C.**   **Notes** ........................................................................................................ **32**

    **D.**   **Duty to Deliberate; Unanimous Verdict** ........................................ **32**

    **E.**   **Verdict Form** ........................................................................................ **33**

    **F.**   **Duties of Foreperson** .......................................................................... **33**

    **G.**   **Return of Verdict** ................................................................................ **33**

**IV.**    **CONCLUSION** ................................................................................................ **34**

I.    **GENERAL INSTRUCTIONS**

A.    **Introductory Remarks**

Members of the jury, you have now heard all of the evidence in the case, and you will soon hear the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in the case.

Now it is time for me to instruct you as to the law that governs the case. There are three parts to these instructions.  First, I'm going to give you some general instructions about your role, and about how you are to decide the facts of the case.  These instructions really would apply to just about any trial.  Second, I'll give you some specific instructions about the legal rules applicable to this particular case.  Third, after counsel's closing arguments, I'll give you some final instructions about procedure.

Listening to these instructions may not be easy.  It is important, however, that you listen carefully and concentrate.  I ask you for patient cooperation and attention.  You'll notice that I'm reading these instructions from a prepared text.  It would be more lively, no doubt, if I just improvised.  But it's important that I not do that.  The law is made up of words, and those words are very carefully chosen.  So when I tell you the law, it's critical that I use exactly the right words.

You'll have copies of what I'm reading in the jury room to consult, so don't worry if you miss a word or two.  But for now, listen carefully and try to concentrate on what I'm saying.  I will be distributing to you a verdict form, one for each of the two plaintiffs, in which to record your verdict.  It will list the questions that you must consider, in the order that you should consider them.

1

### B.     Role of the Court

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and to apply them to the facts as you determine them.  With respect to legal matters, you must take the law as I give it to you.  If any attorney has stated, or states, a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.  You must not substitute your own notions or opinions of what the law is or ought to be.

### C.     Role of the Jury

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal or professional expertise you might have or other facts not in evidence to the other jurors during deliberations.  You must base your discussions and decisions solely on the evidence presented to you during the trial and that evidence alone.  You may not consider or speculate on matters not in evidence or matters outside the case.

### D.     Role of Counsel / Objections and Sidebars

It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  It is my job to rule on those objections.  Therefore, why an objection was made or why I ruled on it the way I did is not your concern.  You should draw no inference from the fact that an attorney objected to any evidence.

2

Nor should you draw any inference from the fact that I might have sustained or overruled an objection. Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its significance. That is for you to decide.

From time to time, the lawyers and I had conferences out of your hearing. These conferences involved procedural and other matters, and none of the events relating to these conferences should enter into your deliberations at all.

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way at issue. If you formed reactions of any kind to any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

### E.      Sympathy or Bias

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between parties of equal standing in the community, and of equal worth. All parties are entitled to the same fair trial at your hands. All parties stand equal before the law, and are to be dealt with as equals in this Court.

F.      **Burden of Proof**

The plaintiffs, Ricardo Cajero Torres and Mario Bautista, have the burden of proving all the elements of their claims by a preponderance of the evidence.

What does a "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents.  In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If, after considering all of the testimony, you are satisfied that the plaintiff, the party with the burden of proof, has carried his burden on each essential point of a claim, then you must find in the plaintiff's favor.  If, after such consideration, you find that the evidence produced by the plaintiff is outweighed by the evidence against the plaintiff's position, or that the credible evidence on a given issue is evenly divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then you must decide that issue against the plaintiff.  That is because the plaintiff, because he bears the burden of proof, must prove more than simple equality of evidence—he must prove the element by a preponderance of the evidence.  On the other hand, the plaintiff need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the plaintiff—that what he claims is more likely true than not—then that element will have been proven by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof only in a *criminal* trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind.

### G.    What Is and Is Not Evidence

I want to take a moment to describe to you what is and is not evidence in this case.  As I have said, you may rely only on the evidence in your deliberations.  The evidence in this case is the sworn testimony of the witnesses, and the exhibits received in evidence.  On the other hand, certain things are not evidence.

First, I will describe a list of examples of things that are not evidence:

1.    A question by a lawyer is not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true.  If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

2.    Similarly, arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they have said in their opening statements was intended, and what they will say to you in their closing statements will be intended, to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

3.    Statements that I may have made concerning the evidence do not constitute evidence. Similarly, at times, I may have admonished a witness or directed a witness to be responsive to questions or to keep his or her voice up.  At times, I may have asked a question myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify the presentation of evidence and to bring out something that I thought might be unclear.  You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

4.     Testimony that has been stricken or excluded is not evidence, and it may not be considered by you in rendering your verdict.

5.     Anything you may have seen or heard outside the courtroom is not evidence.

Now, I will provide you with some things that you may consider as evidence. As I have said, evidence may come in several forms:

1.     The sworn testimony of witnesses, regardless of who called them, is evidence. This is true of the witnesses' answers on both direct and cross examination. However, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

2.     The exhibits that were admitted during the trial are evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

3.     Prior testimony is evidence. Such testimony, known as depositions, is produced through a procedure where, prior to trial, the attorneys for one side may question a witness or an adversary under oath. This is part of what is called pretrial discovery, and each side is entitled to take depositions. To the extent I admitted excerpts of prior testimony at trial, you may consider the prior testimony of a witness according to the same standards you would use to evaluate the testimony of a witness given at trial.

## H.     Direct and Circumstantial Evidence

Generally, as I told you in my initial instructions, there are two types of evidence that you may consider in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something she knows by virtue of her own senses—something she has seen, felt, touched, or heard. For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. To use the same example I gave you at the start of trial: Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day. Assume that the

courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella, which was dripping wet.  Then a few minutes later another person entered with a wet raincoat.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining, and no one has testified that it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.  Many facts, such as a person's state of mind or intentions, are rarely susceptible of proof by direct evidence.  Usually, such facts are established by circumstantial evidence.  Where circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

## I.      Witness Credibility

You have had the opportunity to observe the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judge of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he or she appear to be frank, forthright, and candid?  Or was the

witness evasive and edgy, as if hiding something?  How did the witness appear?  What was his or her demeanor—that is, his or her carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact—that is, as to an important matter—the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything.  However, you are not required to consider such a witness as totally "unbelievable."  You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.  By the processes which I have just described, you, as the sole judges of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness.  It is for you to determine whether a prior statement was inconsistent, and if so, how much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at trial.

### J.      Interested Witnesses

In deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit in some way from the outcome of the case, such as a financial interest.  Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties.  You should also consider any other interest or motive that the witness may have in cooperating with a particular party.

In this case, the plaintiffs, Ricardo Cajero Torres and Mario Bautista, and the defendants, Igor Grinberg and Angie Herrera, testified before you.  As parties to this action, they are, by definition, interested witnesses.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness.  The mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth.  It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has intentionally or otherwise colored or distorted his or her testimony.

You are not required to believe an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### K.      Multiple Parties

In reaching a verdict you must bear in mind that each plaintiff's claims are to be considered separately solely on the evidence, or lack of evidence, presented in support of that plaintiff's claims.  Similarly, you must bear in mind that each defendant is to be considered separately based solely on the evidence, or lack of evidence, presented against that defendant without regard to the liability of the other defendant.

### L.      Preparation of Witnesses

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.  Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

### M.      All Available Evidence Need Not Be Produced

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of

the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in this case.

Each party has had an equal opportunity or lack of opportunity to call any witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what any uncalled witnesses would have testified to had they been called.  The absence of any witnesses should not affect your judgment in any way.

### N. Summaries and Charts

During the trial, certain summary charts were admitted into evidence as exhibits in order to save time and avoid unnecessary inconvenience.  You may ask for these exhibits during your deliberations in the same way that you may ask for any other exhibit in evidence, and consider them as you would any other evidence.  These charts constitute evidence that you should consider where finding facts in accordance with the weight of all the evidence in the case.

### O.  Foreign Language Testimony

During the trial, two of the witnesses testified in Spanish.  The evidence you are to consider is only that provided through the official court translators.  That is, you must base your decision on the evidence presented in the English translation of the witnesses' testimony, as stated in open court and memorialized in the trial transcript.  You must disregard any different meaning.

## II.   SUBSTANTIVE CHARGES

I am now going to instruct you on the substantive law to be applied to Mr. Cajero Torres and Mr. Bautista's claims in this lawsuit, which they bring against Mr. Grinberg and Ms. Herrera.

A.      **Overview of Statutes and Claims**

Plaintiffs bring this action under the federal Fair Labor Standards Act, which I will refer to as the "FLSA," and the New York State Labor Law, which I will refer to as the "NYLL." These statutes provide for minimum wages and overtime pay, among other things.  The parties agree that both the FLSA and the NYLL apply to this case.  The FLSA and the NYLL are similar in many respects, so I will discuss these laws separately only when the differences between them are relevant to the findings you must make.

Plaintiffs have brought six categories of claims arising from their work at the restaurant at issue in this case, which I will refer to for short as "Sushi Sushi."  I will now briefly summarize each category.  Later, I will explain the law as to each claim in depth.

First, the plaintiffs contend that the defendants violated the FLSA and the NYLL by failing to pay them the applicable minimum wage for each hour they worked for the first 40 hours of work per week.  I will refer to these claims as the "Minimum Wage" claims.

Second, the plaintiffs contend that the defendants violated the FLSA and the NYLL by failing to pay them overtime at one and one-half (1.5) times their regular hourly pay for hours worked in excess of 40 in a single week.  I will refer to those claims as the "Overtime" claims.

Third, the plaintiffs contend that the defendants violated the NYLL by failing to pay them the so-called "spread of hours," which is an extra hour of pay at the minimum wage rate for days that a plaintiff's work spanned more than 10 hours.  I will refer to those claims as the "Spread of Hours" claims.

Fourth, the plaintiffs contend that the defendants did not provide them with accurate wage notices as required by the NYLL.  I will refer to those claims as the "Wage Notice" claims.

12

Fifth, the plaintiffs contend that the defendants failed to provide the plaintiffs with accurate wage statements as required by the NYLL.  I will refer to those claims as the "Wage Statement" claims.

Sixth and finally, the plaintiffs contend that the defendants failed to reimburse them for the reasonable value of work-related equipment, specifically, electric bicycles, that they purchased and paid to maintain.  They claim that having to pay and not be reimbursed for these expenses put plaintiffs' compensation below the required minimum wage, in violation of an FLSA provision known as the "tools of the trade" requirement.  I will refer to these as the "Tools of the Trade" claims.

You will each be given a verdict form, one for each plaintiff, with the questions you must answer regarding that plaintiff's claims.  I will review these questions with you as I read this charge to you.  Mr. Smallman will distribute one of them now to help you follow along.  You will also need to do a little arithmetic in connection with some of these questions.  I will send a calculator into the jury room with you to help.

### B.    Duration of Employment

As an initial matter, you will need to determine the time period, if any, that each plaintiff was employed by Sushi Sushi.

The parties have agreed that each plaintiff was employed at some time as a delivery worker at the restaurant.  They also agree that Ricardo Cajero Torres's employment at Sushi Sushi ended on January 27, 2019, and that Mario Bautista's employment there ended on January 20, 2019.

However, the parties dispute when each plaintiff *began* his employment.  It is each plaintiff's burden to prove by a preponderance of the evidence when he was employed, and it is up to you to decide this factual issue.

To meet that burden, a plaintiff may rely on all of the evidence received at trial, regardless of which side presented it.  However, if you find that Sushi Sushi did not keep or maintain accurate employment records, as to this issue, a plaintiff can each meet his burden by presenting sufficient evidence to show his dates of employment as a matter of just and reasonable inference.  He may meet his burden by relying on his recollection alone.  The law does not require him to recall exact dates.  You should find that he met his burden of proof as to the period of his employment if you find his testimony is credible and provides a basis for a reasonable approximation of the period during which he was employed.

If you find that a plaintiff has met that burden, then the defendants have the burden to show either the precise period that the plaintiff worked or that his approximation of the period he worked is unreasonable.  If you find the defendants met their burden of proving that either plaintiff's approximation is unreasonable, then you may find he worked the period the defendants claim.  If, however, you find the defendants did not meet their burden, then you should approximate the period of time based on the plaintiff's testimony alone.

Ultimately, it is up to you to draw a reasonable conclusion as to the period during which each plaintiff was employed.  Question 1 in Issue I of the verdict form for each plaintiff asks you to state the dates of plaintiff's employment at Sushi Sushi.

### C.    Employer Status

The next issue for you to determine involves whether the defendants were employers.  To determine whether a defendant is liable to a plaintiff on any of the claims in this case, you must

first determine whether he or she employed the plaintiff.  If a defendant you are considering was not a plaintiff's employer, that defendant cannot be liable to the plaintiff on any claim.

The parties agree that the corporate owner of Sushi Sushi, which is not a defendant in this matter, was an employer of both plaintiffs.  They also agree that Igor Grinberg was an employer of both plaintiffs.  And so as to the Question 2 listed under Issue II on each verdict form, relating to whether Igor Grinberg was an employer of the plaintiff, you must check the "Yes" answer.

However, Angie Herrera contends that she was not an employer of either plaintiff.  It is possible that a worker can have more than one employer at the same job.  If a plaintiff is found to have more than one employer at the same job, he is "jointly employed."  And note that while I will sometimes refer to "the defendants," that is not intended to indicate a view that both defendants are employers.

Under the FLSA and NYLL, an individual is an "employer" if he or she possesses the power to control, in whole or in part, a company's operations in a manner that relates to the employment of the company's employees.  In making this determination as to Ms. Herrera, you should consider the totality of the circumstances that constitute the economic reality of the employee/employer relationship.  Ownership, or a stake in the company, is insufficient to establish that an individual is an employer unless the owner also has some involvement in the company's relationship with its employees.  Whether an individual defendant was an employer depends on whether that individual possessed the power to control the plaintiff's work.  The focus is on the economic reality of the situation rather than technical concepts or job titles. Factors that bear on the economic realities of the employer/employee relationship include, but are not limited to, whether the individual has the authority to:

- hire and fire employees;

15

- supervise and control employees' work schedules or conditions of employment;

- determine the rate and method of payment for employees; and

- maintain employment records for employees.

No one of these factors standing alone is dispositive.  You may consider these factors and any others that you find pertinent to the economic reality of the employer/employee relationship in deciding whether a plaintiff has proven by a preponderance of the evidence that Angie Herrera was an employer of his.

If after consideration of all the evidence you determine that a plaintiff has proven, by a preponderance of the evidence, that Ms. Herrera was, at some point during his work, his employer, then you must answer "Yes" to Question 3 in Issue II.  Otherwise, answer "No."

### D.      Minimum Wage Claims

I will next turn to the Minimum Wage claims, which on the verdict form is Issue III.  In these claims, the plaintiffs claim that they were not paid the minimum wage for each hour of work required under the FLSA and the NYLL.  To sustain his burden of proof with respect to these claims, a plaintiff must prove by a preponderance of the evidence that the defendants paid him less than the required minimum wage for hours that he worked.

The applicable minimum wage rates under the FLSA and the NYLL at the time are not the same.  However, because the applicable minimum wage under the New York Labor Law is higher than the federal minimum wage, and because a plaintiff cannot recover twice for the same minimum wage violations under both federal and state law, I will address, and you will be applying, the applicable minimum wage rate under the NYLL only.

To establish a minimum wage claim, the plaintiff must establish by a preponderance of the evidence that during all or part of the time that he was employed, he was paid less than he was legally due in minimum wages.

I will instruct you now on how to determine whether the plaintiff was paid less than he was legally due in minimum wages.  There are several steps in making this determination.

### 1.   The Minimum Wage Rates Applicable to Plaintiffs

The first issue is to decide the minimum wage rate that applied to each plaintiff under the NYLL.

### a.   The Minimum Hourly Rate Before a Tip Credit

The minimum hourly wage rate set by the NYLL has changed over time.  The rate applicable to Sushi Sushi is that for what the law calls a "Small Employer."  That is because, as the parties agree, Sushi Sushi had 10 or fewer employees at all relevant times.  The following rates are the required minimum hourly wage in the years in which one or both of plaintiffs worked for Sushi Sushi.

- For any work performed during calendar year 2016, meaning from January 1, 2016 through December 31, 2016, the minimum hourly wage was $9.

- For any work performed during calendar year 2017, meaning from January 1, 2017 through December 31, 2017, the minimum hourly wage was $10.50.

- For any work performed during calendar year 2018, meaning from January 1, 2018 through December 31, 2018, the minimum hourly wage was $12.

- For any work performed during calendar year 2019, meaning from January 1, 2019 through December 31, 2019, the minimum hourly wage was $13.50.

### b. Tip Credit

There is one other determination you must make in determining the hourly rate that Sushi Sushi was required to pay the plaintiffs.  Under the NYLL, an employer is allowed to pay certain "tipped employees" an hourly rate that is less than the prevailing minimum wage by crediting the tips received by the employee against part of the required hourly wage.  This is known as a "tip credit."  Service employees, such as restaurant delivery workers, are among those to whom an employer can pay a reduced cash wage on account of the employee's receipt of tips.  If you find that defendants were entitled to take a "tip credit" under the NYLL for a particular plaintiff, the wage that defendants were required to pay the plaintiff must be reduced accordingly.

The NYLL sets the maximum amount allowed for a tip credit.  In other words, for a tipped employee, even if defendants are entitled to take a tip credit, there is still a minimum cash wage they must pay the employee per hour.  I instruct you that the minimum cash wage in New York City for each year relevant to the case was as follows:

- For work performed during calendar year 2016, meaning from January 1, 2016 through December 31, 2016, instead of a $9 minimum wage, an employer could take a tip credit of up to $1.50 per hour.  The minimum cash wage for 2016 was therefore $7.50 per hour.

- For work performed during calendar year 2017, meaning from January 1, 2017 through December 31, 2017, instead of a $10.50 minimum wage, an employer could take a tip credit of up to $3 per hour.  The minimum cash wage for 2017 was therefore $7.50 per hour.

- For work performed during calendar year 2018, meaning from January 1, 2018 through December 31, 2018, instead of a $12 minimum wage, an employer could take a tip credit of up to $4 per hour.  The minimum cash wage for 2018 was therefore $8

18

per hour.

- For work performed during calendar year 2019, meaning from January 1, 2019 through December 31, 2019, instead of a $13.50 minimum wage, an employer could take a tip credit of up to $4.50 per hour.  The minimum cash wage for 2019 was therefore $9 per hour.

The first issue for you to resolve, in Question 4 under Issue III, is whether Sushi Sushi qualified to take "tip credit" for the plaintiff you are considering.

Under the New York Labor Law, an employer is entitled to take a "tip credit" against the required minimum wage if he or she establishes by a preponderance of the evidence the following four things:

*First*, that the employee receives sufficient tips to make up the difference between the regular minimum wage rate and the lower rate reflecting the "tip credit."

*Second*, that defendants gave written notice to the plaintiff, in English and any other language spoken by the employee as his primary language, stating the amount of the tip credit to be taken from the basic minimum hourly rate.

*Third*, that the employer did not retain for itself any portion of the tips received from customers, or require the employee to share tips with non-tipped employees.  It is undisputed that Sushi Sushi complied with this requirement.

*Fourth*, that the employer maintained sufficient records of the number of hours the plaintiff worked, daily and weekly, including the time of arrival and departure of each employee, and provided the plaintiff a statement listing hours worked, rates paid, gross wages, allowances claimed as part of the minimum wage, deductions, and net wages with every payment of wages.

If you find all of these elements by a preponderance of the evidence, then defendants may take advantage of the tip credit.

In Question 4 of Issue III of your verdict forms, you will be asked to record your determination whether Sushi Sushi was entitled to take a tip credit.

### 2. The Hourly Wage Rate Paid to the Plaintiffs

The next step is to determine at what hourly rate the plaintiff was paid by Sushi Sushi.  I will refer to this as his "Regular Rate of Pay."

It is undisputed that each plaintiff at all times was paid at an hourly rate.  So, you don't have to do any math to determine their regular rates of pay.  You merely must determine what that rate of pay was.  Defendants contend that, each year, each plaintiff was paid at an hourly rate consistent with the rate that an employer who qualified to take the tip credit was required to pay.  Plaintiffs contend that they were paid at an hourly rate lower than the rate the law required.

You may consider all of the evidence received at trial when you determine a plaintiff's regular rate of pay, including the pay records that have been received in evidence.  However, if you find that the defendants did not maintain accurate records as to the regular rate of pay then the plaintiffs can meet their burden by presenting sufficient evidence to show the regular rate of pay as a matter of just and reasonable inference.  A plaintiff may rely on his own testimony regarding his recollection of the rate he was paid.  You may find he met his burden of proof if you find his testimony is credible.  If you find that a plaintiff has satisfied this burden, then the defendants, as I explained before in connection with determining the duration of the plaintiffs' employment have the burden to show that the inferences drawn from that plaintiff's testimony are unreasonable.

In Question 5 of Issue III, you are asked to enter your finding as to the plaintiff's regular rate of pay in each relevant year.

### 3.   Conclusion

You now have all the information you need to determine whether each plaintiff was paid the required minimum wage.  The final step is simply to compare (1) the hourly minimum wage that Sushi Sushi was required to pay the plaintiff, which turns on whether Sushi Sushi qualified to take the tip credit, with (2) the regular hourly rate of pay that you have found Sushi Sushi paid the plaintiff.

In Question 6 of Issue III, you will be asked whether Sushi Sushi paid the plaintiff the required minimum wage for each year in question.

### E.   Overtime Claims

I will next turn to plaintiffs' overtime claims.

To prevail on his overtime claims, a plaintiff must prove by a preponderance of the evidence that the defendants failed to pay the plaintiff overtime pay as required.

A plaintiff is entitled to overtime pay for the hours he worked in excess of 40 in any given workweek.  Any hours that a plaintiff worked in excess of 40 in a single week are called "overtime hours."

### 1.   Calculating A Plaintiff's Hours Worked and Whether the Plaintiff Ever Worked Overtime Hours

Because the parties dispute whether or to what extent the plaintiffs worked overtime hours, you must first determine how many hours each plaintiff worked per week.  An employee is considered to be working for purposes of the claims whenever he exerts himself, mentally or physically, for tasks controlled or required by the employer and performs these tasks primarily for the benefit of the employer.

The number of hours an employee works in a day is determined under what is called the "continuous workday" rule. Under that rule, the workday begins when the employee begins to engage in work and continues until the completion of his work. It includes all of the time within that period whether or not the employee is engaged in work throughout the entire period. If, however, as to a particular day, a plaintiff worked two distinct shifts, separated in time, the employee's hours worked do not include the time in between the two shifts.

With respect to this issue, as with the period of each plaintiff's employment, the plaintiffs may rely on all the evidence received at trial, regardless of which side presented it. However, if you find that a defendant did not keep and maintain required employment records then a plaintiff can meet his burden by presenting sufficient evidence to show the hours he worked as a matter of just and reasonable inference. He may meet his burden by relying on his recollection alone. The law does not require him to recall exact dates or exact hours. You should find that he met his burden of proof as to the length of shifts if you find his testimony to be credible and that it provides a basis for a reasonable approximation of the total number of hours he worked.

If you find that a plaintiff has met that burden, then the defendant at issue has the burden to show either the precise hours that plaintiff worked or that his approximation of hours worked is unreasonable. If you find the defendants have met their burden of proving a plaintiff's approximation is unreasonable, then you may find that he worked the period the defendants claim. If, however, you find the defendants did not meet their burden then you should approximate the period of time based on the applicable plaintiff's testimony alone.

Ultimately, it is up to you to draw a reasonable conclusion as to the number of hours each plaintiff worked per workday, how many days a week each plaintiff worked, and how many hours per week each plaintiff worked.

Question 7, under Issue IV, asks whether the plaintiff ever worked overtime hours.  If you find that the plaintiff never worked more than 40 hours in a given week for Sushi Sushi, then check the box "No" and skip Question 8.

If, however, you conclude that the plaintiff at least once worked more than 40 hours in a given week, then check the box "Yes" and proceed to Question 8, which asks whether the plaintiff ever worked overtime hours and was not properly compensated.

### 2. Calculating Whether the Plaintiff Was Not Properly Compensated for Overtime Work

As I mentioned, a plaintiff is entitled to overtime pay for the hours he worked in excess of 40 in any given workweek.  A workweek is defined as any period of 168 consecutive hours.

An employee must be paid at a rate of at least one and one-half (1.5) times either the statutory minimum wage or—if the employee's regular rate of pay was higher than the statutory minimum wage—the employee's regular rate of pay.  In this case, save for a short period in 2016 relating to Ricardo Cajero Torres, the defendants do not claim to have paid the plaintiffs at a rate higher than the statutory minimum wage, and the plaintiffs do not claim that their regular rate of pay was above the statutory minimum wage.  So, I instruct you that the issue on the overtime claims in this case is whether, for hours worked in excess of 40 in any given workweek, the plaintiff was paid at least one and one-half (1.5) times the statutory minimum wage.

In making this determination, the rate that Sushi Sushi was required to pay for overtime work is to be determined by first multiplying the statutory minimum wage rate by one and one-half (1.5), and only then deducting, if you have found it applicable, the tip credit.  The chart below sets out what the required rate of pay for overtime work was in each year relevant to this case, depending on whether you have found the tip credit to apply or not.

23

| Period | Required Overtime Wage Rate (no tip credit) | Required Overtime Wage Rate (with tip credit) |
|---|---|---|
| January 1, 2016 to December 31, 2016 | $13.50 per hour (1.5 times $9) | $12 per hour (1.5 times $9 minus $1.50 tip credit) |
| January 1, 2017 to December 31, 2017 | $15.75 per hour (1.5 times $10.50) | $12.75 per hour (1.5 times $10.50 minus $3 tip credit) |
| January 1, 2018 to December 31, 2018 | $18 per hour (1.5 times $12) | $14 per hour (1.5 times $12 minus $4 tip credit) |
| January 1, 2019 to December 31, 2019 | $20.25 per hour (1.5 times $13.50) | $15.75 per hour (1.5 times $13.50 minus $4.50 tip credit) |

On Issue IV, Question 8 asks you to determine for each year that the plaintiff worked for Sushi Sushi, whether there was at least one week in which plaintiff worked overtime hours and was not properly compensated for those hours.

I also want to direct your attention to a chart, following Issue V, on your verdict sheets. It is entitled "Calculations for Issues III, IV, and V." It instructs you to determine, for any year in which you have found that plaintiff was not paid either the required minimum wages or overtime wages, the number of regular and overtime hours that you find the plaintiff worked that year. It also instructs you to determine the total wages, not including tips, that the plaintiff received from Sushi Sushi that year.

You are not responsible for calculating the amount of damages, if any, for these claims. Rather, if you find the defendants failed to pay required minimum wages or overtime, I will calculate these damages based on these calculations you have recorded in the verdict form.

**F.      Spread of Hours Claims**

The next set of issues concerns the Spread of Hours claims. Under the NYLL, an employee is entitled to an additional hour of pay, at the minimum hourly rate, on any day in which his "spread of hours" exceeds 10 hours.

24

To prevail on his "spread of hours" claim, a plaintiff must prove by a preponderance of the evidence each of the following elements:

*First*, that his spread of hours on a given day was greater than 10, and

*Second*, that he was not paid an additional hour's wages at the minimum wage rate for that day's work.

The NYLL defines the spread of hours as follows:  "The spread of hours is the length of the interval between the beginning and end of an employee's workday."

To give an example, imagine an employee begins work at 7:00 a.m. and works until 10:00 a.m.  Then the employee is off work until 7:00 p.m. that evening and worked until 10:00 p.m.  The employee worked a total of six hours, but his spread of hours is 15, the number of hours between 7:00 a.m and 10:00 p.m.  In this scenario, the employee would be paid for seven hours: the six hours he actually worked, plus an additional hour—paid at the minimum wage rate—because he worked a "spread of hours" greater than 10.

The additional hour paid to an employee for spread of hours is not counted towards the total hours an employee works in a given week for purposes of computing overtime pay.

In Question 9 of Issue V on the verdict forms, you must indicate whether a plaintiff's spread of hours ever exceeded 10 hours.  If you find that it did exceed 10 hours, then you must answer Question 10 of Issue V, which asks whether for each year in which he worked for Sushi Sushi, plaintiff was properly compensated for his spread of hours.

In the chart that follows Issue V, entitled "Calculations for Issues III, IV, and V," for any year in which you answered "Yes," you must also indicate in section (4) the number of days a plaintiff's spread of hours exceeded 10 hours, but as to which he did not receive spread of hour pay.

### G.      Wage Notice Claims

I will now turn to plaintiffs' Wage Notice claims.  Plaintiffs contend that the defendants failed to provide them with certain employment information required by New York law.  Under the NYLL at the time of plaintiffs' employment, every employer was required to provide certain information to an employee at the time of hiring, including:

- "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other";

- "allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances";

- the regular pay day designated by the employer;

- the name of the employer;

- any "doing business as" names used by the employer;

- the physical address of the employer's main office or principal place of business, and a mailing address if different;

- the telephone number of the employer.

Notice must be given to the employee in both English and in the language identified by each employee as his primary language.

The employer bears the burden of proving compliance with the wage notice requirements.  You should find in favor of a plaintiff unless the defendants prove by a preponderance of the evidence that they provided the plaintiff with the wage notice information required by the NYLL.

There is, however, an affirmative defense to this claim.  Specifically, defendants are not liable, and you must find in favor of defendants on this claim, if defendants establish, by a

preponderance of the evidence, either (1) that they timely paid plaintiffs all wages due *or* (2) that

they did not provide a wage notice in good faith—that is, that they reasonably believed in good

faith that they were not required to provide the employee with the wage notice.

Questions 13 through 15 under Issue VI relate to this claim.

### H.    Wage Statement Claims

Plaintiffs next contend that the defendants failed to provide them with wage statements,

or pay stubs, as required by the NYLL.

The NYLL requires that "[e]very employer shall provide to each employee a statement,

commonly referred to as a pay stub, with every payment of wages."

Every such statement must list:

- The dates of work covered by that payment of wages;

- The name of the employee;

- The name of the employer;

- The rate and frequency of pay;

- Gross wages;

- The numbers of regular and overtime hours worked;

- Any deductions or allowances claimed; and

- Net wages.

If you find that a plaintiff has proven by a preponderance of the evidence that the

defendants failed to provide him this information on a statement that he could retain, then you

must find that the defendants violated the NYLL pay stub requirement.

However, as with the wage notice claims, there is an affirmative defense to this claim.

Specifically, defendants are not liable, and you must find in favor of defendants, if defendants

establish, by a preponderance of the evidence, either (1) that they timely paid plaintiffs all wages due *or* (2) that they did not provide a wage statements in good faith—that is, that they reasonably believed in good faith that they were not required to provide the employee with the wage statements.

Questions 16 and 17 under Issue VII relate to this claim.

## I.     Tools of the Trade Claims

The plaintiffs, finally, contend that the defendants required them to spend their own money to purchase work-related equipment that was required for their jobs.  FLSA regulations state that, if it is a requirement of the employer that an employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the FLSA in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid to him.

Accordingly, an employer may not require an employee to spend his own money to purchase "tools of the trade" if doing so would lower the employee's pay below that required by the minimum wage or overtime requirements, which I have already described.  "Tools of the trade" means tools, including bicycles and any reasonably necessary safety equipment, "which will be used in or are specifically required for the performance of the employer's particular work."

To establish this claim, the plaintiff must prove the following elements:

*First*, that Sushi Sushi required that the plaintiff possess and/or use the bicycle to carry out his duties as an employee;

**Second**, that the plaintiff incurred out-of-pocket expenses for purchasing, maintaining, or replacing the bicycle;

**Third**, that the reasonable value of these expenses, when incurred, reduced (or further reduced) the plaintiff's compensation below the required minimum wage; and

**Fourth**, that the plaintiff incurred these expenses in the two-year period before he brought the claims or, if the defendants willfully violated the FLSA in the three years before that date. The claims here were brought on March 21, 2019. An employer's violation is willful if the employer either (1) knew its conduct was prohibited by law or (2) showed reckless disregard as to whether its conduct was prohibited by law. Reckless disregard means that the employer was aware that its conduct was governed by law but failed to investigate the matter further in order to comply with the law. The burden is on the plaintiff to prove by a preponderance of the evidence that his employer acted willfully.

If you find by a preponderance of the evidence that a plaintiff was required to spend his own money to carry out the job duties assigned by the defendants in accordance with the foregoing instructions, you should find in favor of the plaintiff on this claim. That is true even if the plaintiff kept the equipment at issue after leaving his job.

If you find that a plaintiff has proven by a preponderance of the evidence that the defendants required him to pay for "tools of the trade" and repairs to those tools with his own money, and that the employee's pay was thereby reduced below the minimum wage or the amount required by the overtime laws, then you must award the plaintiff the portion of his expenses that caused the employee to be paid less than the minimum wage and the required overtime. To qualify as an expense chargeable to the defendants, the plaintiff must have incurred the expense while working for the defendants.

Questions 18 through 22 on Issue VIII relate to this claim. The last of these questions, number 22, asks if any violation was willful.  You should answer this question only if you have found a violation, and only if you have found the defendant in question to have been an employer of the plaintiff.

**J.      Good Faith**

If you found that Sushi Sushi failed to pay a plaintiff the applicable minimum wage, failed to pay a plaintiff overtime pay, failed to pay a plaintiff spread of hours pay, failed to provide an adequate wage notice to a plaintiff, or failed to provide wage statements to a plaintiff—according to the law as I have previously described it to you—you will then need to determine whether any defendant you have found to be an employer acted in good faith.  That is because the law may lessen a defendant's liability if he or she acted in good faith.  I will now instruct you on how to determine if a defendant acted in good faith.

To act in good faith is to act with objectively reasonable grounds for believing that the acts or omissions at issue did not violate the law.  It is the defendants' burden to establish good faith.  It is not enough for a defendant to claim that he or she did not know that his or her acts or omissions violated the law.  To establish good faith, a defendant must prove that he or she took active steps to ascertain the dictates of the law, and that he or she then took action to comply with the law, as he or she understood it.

Questions 23 to 27 in Issue IX on your verdict form ask you whether, to the extent you have determine that a defendant violated the law as I have described it to you, he or she nonetheless acted in good faith.  If you have not found a defendant to have been an employer of the plaintiff, *or* if you have not found the violation of law in question, you are not to answer the question.

30

### III.    DELIBERATIONS OF THE JURY

#### A.    Right to See Exhibits and Hear Testimony

Members of the jury, now that you have heard the closing arguments of the parties, you are about to go into the jury room to begin your deliberations. Before you do that, I will give you a few final instructions.

The exhibits received in evidence will be accessible to you upon request.  If during those deliberations you want to see a hard copy of any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.  And please be patient— with respect to requests for testimony, it can sometimes take counsel and the Court some time to identify the portions that are responsive to your request.  If you want any further explanation of the law as I have explained it to you, you may also request that.

To assist you in your deliberations, I am providing you a list of the exhibits; a verdict form for each plaintiff, which I will discuss in a moment; and a copy of these instructions.  There is one of each of these for each juror.

#### B.    Communication with the Court

Your requests for exhibits or testimony—in fact any communications with the Court— should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

C.      Notes

Some of you have taken notes periodically throughout this trial.  I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory.  Notes that any of you may have made may not be given any greater weight or influence than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  All jurors' recollections are equal.  If you can't agree on what you remember the testimony was, you can ask to have the transcript read back.

D.      Duty to Deliberate; Unanimous Verdict

You will shortly retire to decide the questions I have described to you.  For the plaintiff to prevail on the questions that you must answer, he must sustain his burden of proof as I have explained to you with respect to the questions you are considering.  Your verdict on each question must be unanimous.  Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors.  This is the very essence of jury deliberation.  It is your duty to discuss the evidence.  If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience.  You are not to give up a point of view, however, that you conscientiously believe in simply because you are outnumbered or outweighed.  You should vote with the others only if you are convinced on the evidence, the facts, and the law that it is the correct way to decide the case. You are not to discuss the case until all jurors are present.  Five or six jurors together is only a gathering of individuals.  Only when eight jurors are present do you constitute a jury, and only then may you deliberate.

### E.      Verdict Form

I have prepared a verdict form for you to use in recording your decision as to each plaintiff's claims.  Please use those forms to report your verdict.

### F.      Duties of Foreperson

Finally, I referred a moment ago to a foreperson.  The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.

The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

### G.      Return of Verdict

After you have reached a verdict, your foreperson will fill in and date the form that has been given to you.  All jurors must sign the form reflecting each juror's agreement with the verdict.  The foreperson should then advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

In conclusion, members of the jury, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense, you will reach a fair verdict here.

**IV.**    **CONCLUSION**

Members of the jury, that concludes my instructions to you.  I will ask you to remain

seated while I confer with the attorneys to see if there are any additional instructions that they

would like me to give to you or anything I may not have covered in my previous statement.

* * * * *

Members of the jury, you may now retire.  The marshal will be sworn before we retire.

(Marshal sworn)

34

**EXHIBIT 7**

**COURT EXHIBIT 7**

# Defendants' Closing Argument

**May 19, 2022**

# Burden of Proof

"The plaintiffs, Ricardo Cajero Torres and Mario Bautista, have the burden of proving all the elements of their claims by a **preponderance of the evidence**."

"If . . . you find that the evidence produced by the plaintiff is outweighed by the evidence against the plaintiff's position, or that the credible evidence on a given issue is equally divided between the parties—that it is as equally probable that one side is right as it is that the other side is right—then **you must decide that issue against the plaintiff**."

Jury Charge

# Key Questions

**1** Did Mr. Torres and Mr. Bautista each receive a wage notice when they were hired?

**2** Did Plaintiffs receive paystubs with each payment of wages?

**3** Were Plaintiffs paid proper wages?

**4** Are Plaintiffs entitled to reimbursement for their electric bicycles?

# 1. Did Plaintiffs Receive a Wage Notice?

## ISSUE VI:  TIME-OF-HIRE WAGE NOTICE

13. Was plaintiff provided with an adequate wage notice within 10 days of the date he was hired by Sushi Sushi?

YES _____        NO _____

14. If you answered "No" to the preceding question, was he ever provided with an adequate wage notice?

YES _____        NO _____

15. If you answered "Yes" to the preceding question, on what date or date(s) was he provided with an adequate wage notice?

_____

# 1. Did Plaintiffs Receive a Wage Notice?



Ex. D-8, at p.2

# 1. Did Plaintiffs Receive a Wage Notice?

**Ricardo Torres:**

> **Q:**   Mr. Torres, so despite the fact that the version we're all looking at here has the information filled out and has a date of July 1st, 2016, with a signature you testified was yours, you want the jury to believe, and take your word for the fact, that you didn't sign a version with any of this information; is that correct?
>
> **A:**   I'm not wanting the jury to believe it.  All I'm saying is that **I signed this paper**, and there was no date.

Trial Tr. 72:10-17 (Torres)

# 1. Did Plaintiffs Receive a Wage Notice?

**Mario Bautista:**

> Q:  Did you give Mr. Bautista a similar wage notice when he was hired?
>
> A:  Yes, I did.  He got the same exact packet as every other employee, just obviously with his information but same exact, both in English and in Spanish.

Trial Tr. 294:23-295:2 (Grinberg)

> Q:  Did Mr. Bautista sign that wage notice?
>
> A:  Yes, he did.

Trial Tr. 295:7-8 (Grinberg)

# 1. Did Plaintiffs Receive a Wage Notice?

**Mario Bautista:**

Q:  Can you tell us what documents you have received in the time you first joined Sushi Sushi.

A:  Some papers.  Some papers that the owner presented to me.  He told me to review them, and then I could sign them and give them back to him.

Q:  And did you sign?

A:  I did sign the papers.

Trial Tr. 167:19-25 (Bautista)

Q:  You don't remember one way or the other whether one of those papers was a wage notice, correct?

A:  Yes.

Trial Tr. 185:13-16 (Bautista)

# 1. Did Plaintiffs Receive a Wage Notice?

## ISSUE VI:  TIME-OF-HIRE WAGE NOTICE

13. Was plaintiff provided with an adequate wage notice within 10 days of the date he was hired by Sushi Sushi?

YES __✓_____          NO _____

14. If you answered "No" to the preceding question, was he ever provided with an adequate wage notice?

YES _____          NO _____

15. If you answered "Yes" to the preceding question, on what date or date(s) was he provided with an adequate wage notice?

_____

# 2. Did Plaintiffs Receive Pay Stubs?

## ISSUE VII:  WAGE STATEMENTS

16. Was plaintiff provided with a full and accurate wage statement each payday during the term of his employment at Sushi Sushi?

   YES _____          NO _____

17. If you answered "No" to the preceding question, for how many weeks did Sushi Sushi fail to provide plaintiff with full and accurate wage statements?

   _____ weeks.

# 2. Did Plaintiffs Receive Pay Stubs?

**Ricardo Torres:**



Exhibit D-14, at p.18

Q:  I asked whether this is your signature in the right-hand column.  And the answer is yes, correct?

A:  That's correct.

Trial Tr. 74:25-75:3 (Torres)

# 2. Did Plaintiffs Receive Pay Stubs?

**Mario Bautista:**



Exhibit D-11, at p.3

Q:  Do you recall that you testified that you received a document each time you were paid at Sushi Sushi?

A:  Yes.

Trial Tr. 187:23-188:5 (Bautista)

Q:  [ . . .] **My question is whether, at the time that you were paid at Sushi Sushi, did you receive a document that stated the total amount that you were paid for that week?**

A:  **Yes.**

Trial Tr. 189:14-18 (Bautista)

# 2. Did Plaintiffs Receive Pay Stubs?

### ISSUE VII:  WAGE STATEMENTS

16. Was plaintiff provided with a full and accurate wage statement each payday during the term of his employment at Sushi Sushi?

YES _____✓_____        NO _____

17. If you answered "No" to the preceding question, for how many weeks did Sushi Sushi fail to provide plaintiff with full and accurate wage statements?

_____ weeks.

# 3. Were Plaintiffs Paid Proper Wages?

4. Did Sushi Sushi qualify to take a tip credit with respect to plaintiff?

In 2016:     YES _____          NO _____

In 2017:     YES _____          NO _____

In 2018:     YES _____          NO _____

In 2019:     YES _____          NO _____

# Tip Credit

➢ **Did Plaintiffs receive sufficient tips to bring them up to minimum wage?**

| Ricardo Torres | | | |
|---|---|---|---|
| **Year** | **Cash Wage (Per Hour)** | **Tip Credit (Per Hour)** | **Average Tips (Per Hour)** |
| 2016 | $7.50 | $1.50 | **$7.50** |
| 2017 | $7.50 | $3.00 | **$7.87** |
| 2018 | $8.00 | $4.00 | **$7.67** |
| 2019 | $9.00 | $4.50 | **$8.00** |

Exhibit D-28

# Tip Credit

➢ **Did Plaintiffs receive sufficient tips to bring them up to minimum wage?**

| Mario Bautista | | | |
|---|---|---|---|
| **Year** | **Cash Wage (Per Hour)** | **Tip Credit (Per Hour)** | **Average Tips (Per Hour)** |
| 2018 | $8.00 | $4.00 | $8.00 |
| 2019 | $9.00 | $4.50 | $9.00 |

Exhibit D-32

# Tip Credit

➢ **Did Plaintiffs receive written notice of the tip credit?**

**Ricardo Torres:**

# Tip Credit

➢ **Did Plaintiffs receive written notice of the tip credit?**

**Mario Bautista:**

> Q:  And did you explain to Mr. Bautista, when he was hired, that you would be taking a tip credit towards the minimum wage?
>
> A:  Yes, I did.

Trial Tr. 295:9-11 (Grinberg)

> Q:  Do you recall specifically what you told Mr. Bautista about that tip credit?
>
> A:  Pretty much the same thing – that he gets a base rate, minus the tip credit, and if he doesn't make enough tips per hour to match the tip credit, the restaurant would make up the rest.
>
> Q:  **And did you provide him with that information in writing?**
>
> A:  **Yes, I did.**  It was part of the packet.

Trial Tr. 295:12-19 (Grinberg)

# Tip Credit

➢ **Did Sushi Sushi keep sufficient time and pay records?**

### Summary of Defendants' Time Records for Ricardo Torres

| Start of Week | End of Week | M | Tu | W | Th | F | Sa | Su | Regular Hours Worked | Overtime Hours Worked | Total Hours Worked |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/6/2016 | 6/12/2016 | – | – | 5.00 | 11.00 | 10.00 | 11.00 | 11.00 | 40.0 | 8.0 | 48.0 |
| 6/13/2016 | 6/19/2016 | – | – | 3.0 | 11.0 | 11.0 | 11.0 | 11.0 | 40.0 | 7.0 | 47.0 |
| 6/20/2016 | 6/26/2016 | – | – | 11.0 | 12.0 | 11.0 | 11.0 | 11.0 | 40.0 | 16.0 | 56.0 |

### Summary of Defendants' Pay Records for Ricardo Torres

| Start of Week | End of Week | Regular Hours Worked | Overtime Hours Worked | Total Hours Worked | Regular Wage | Overtime Wage | Total Regular Pay | Total Overtime Pay | Total Tips | Total Pay | Cash and Check Payments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/6/2016 | 6/12/2016 | 40.0 | 8.0 | 48.0 | $7.50 | $11.25 | $300.00 | $90.00 | $298.74 | $688.74 | $688.74 |
| 6/13/2016 | 6/19/2016 | 40.0 | 7.0 | 47.0 | $7.50 | $11.25 | $300.00 | $78.75 | $252.98 | $631.73 | $631.73 |
| 6/20/2016 | 6/26/2016 | 40.0 | 16.0 | 56.0 | $7.50 | $11.25 | $300.00 | $180.00 | $318.69 | $798.69 | $798.69 |

### Summary of Defendants' Time Records for Mario Bautista

| Start of Week | End of Week | M | Tu | W | Th | F | Sa | Su | Regular Hours Worked | Overtime Hours Worked | Total Hours Worked |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/8/2018 | 1/14/2018 | – | – | – | – | – | 5.0 | 5.0 | 10.0 | 0.0 | 10.0 |
| 1/15/2018 | 1/21/2018 | – | 10.0 | 10.0 | 5.0 | 5.0 | – | 10.0 | 40.0 | 0.0 | 40.0 |

### Summary of Defendants' Pay Records for Mario Bautista

| Start of Week | End of Week | Regular Hours Worked | Overtime Hours Worked | Total Hours Worked | Regular Wage | Overtime Wage | Total Regular Pay | Total Overtime Pay | Total Tips | Total Pay | Cash Payments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/8/2018 | 1/14/2018 | 10.0 | 0.0 | 10.0 | $8.00 | $12.00 | $80.00 | $0.00 | $102.42 | $182.42 | $182.42 |
| 1/15/2018 | 1/21/2018 | 40.0 | 0.0 | 40.0 | $8.00 | $12.00 | $320.00 | $0.00 | $357.62 | $677.62 | $677.62 |
| 1/22/2018 | 1/28/2018 | 25.0 | 0.0 | 25.0 | $8.00 | $12.00 | $200.00 | $0.00 | $199.94 | $399.94 | $399.94 |
| 1/29/2018 | 2/4/2018 | 40.0 | 0.0 | 40.0 | $8.00 | $12.00 | $320.00 | $0.00 | $370.03 | $690.03 | $690.03 |
| 2/5/2018 | 2/11/2018 | 40.0 | 0.0 | 40.0 | $8.00 | $12.00 | $320.00 | $0.00 | $295.25 | $615.25 | $615.25 |

Exhibits D-29, D-30, D-31, D-32

# Tip Credit

4. Did Sushi Sushi qualify to take a tip credit with respect to plaintiff?

In 2016:   YES _____   NO _____

In 2017:   YES _____   NO _____

In 2018:   YES _____   NO _____

In 2019:   YES _____   NO _____

# **Minimum Wage**

6. Was plaintiff paid at least the minimum wage by Sushi Sushi?

In 2016:   YES _____        NO _____

In 2017:   YES _____        NO _____

In 2018:   YES _____        NO _____

In 2019:   YES _____        NO _____

# Minimum Wage

| Ricardo Torres | | |
|---|---|---|
| Year | Minimum Wage (No Tip Credit) | Average Pay Per Hour with Tips |
| 2016 | $9.00 | **$15.50** |
| 2017 | $10.50 | **$15.77** |
| 2018 | $12.00 | **$15.98** |
| 2019 | $13.50 | **$17.00** |

Exhibit D-30

# Minimum Wage

| Mario Bautista | | |
|---|---|---|
| **Year** | **Minimum Wage (No Tip Credit)** | **Average Pay Per Hour with Tips** |
| 2018 | $12.00 | **$16.55** |
| 2019 | $13.50 | **$18.00** |

Exhibit D-32

# Minimum Wage

6. Was plaintiff paid at least the minimum wage by Sushi Sushi?

In 2016:    YES _____ ✓    NO _____

In 2017:    YES _____ ✓    NO _____

In 2018:    YES _____ ✓    NO _____

In 2019:    YES _____ ✓    NO _____

# Overtime

8. Was there at least one week in which plaintiff worked overtime hours and was not properly compensated for his overtime hours?

In 2016:    YES _____        NO _____

In 2017:    YES _____        NO _____

In 2018:    YES _____        NO _____

In 2019:    YES _____        NO _____

# Overtime

**Ricardo Torres:**

Q:  Mr. Torres, sitting here today, you do not have any idea of the total amount that you were paid from Sushi Sushi from 2016 to 2019, correct?

A:  No, I don't.

Trial Tr. 116:6-9 (Torres)

**Mario Bautista:**

Q:  Now, you don't have any proof that you weren't paid overtime, correct?

A:  Right.

Trial Tr. 204:17-19 (Bautista)

# Overtime

**Ricardo Torres:**



Exhibit D-14, at p. 2



Exhibit D-14, at p. 18



Exhibit D-14, at p. 7

| Employee: | Ricardo Torres |
| Pay Period: | 12/31/18 – 1/6/19 |
| Hourly Rate: | 9.00 |
| Overtime Rate: | 13.50 |

Exhibit D-14, at p. 28

# Overtime

**Mario Bautista:**



Exhibit D-11, at p.1



Exhibit D-11, at p.12

# 4. Are Plaintiffs Entitled to Reimbursement for Tools of the Trade?

## ISSUE VIII:  TOOLS OF THE TRADE

18. Has plaintiff proven that he is entitled to reimbursement for the purchase of any electric bicycle?

    YES _____          NO _____

19. If you answered "Yes" to Question 18, how much of his own money did he spend on the purchase that was not reimbursed?

    AMOUNT:  $ _____

20. Has plaintiff proven that he is entitled to reimbursement for maintenance of any electric bicycle?

    YES _____          NO _____

21. If you answered "Yes" to Question 20, how much of his own money did he spend on maintenance per month on average that was not reimbursed?

    AMOUNT:  $ _____

22. If you answered "Yes" to Question 18 or 20, did the defendant willfully violate the FLSA in failing to reimburse the plaintiff?

    Igor Grinberg          YES _____          NO _____

    Angie Herrera          YES _____          NO _____

# 4. Are Plaintiffs Entitled to Reimbursement for Tools of the Trade?

**Ricardo Torres:**

Only seeking reimbursement for Electric Bicycle #2



Regular Bicycle



Electric Bicycle #1

Purchased new
for $1,300
(or $1,500)



Electric Bicycle #2

Purchased used
for $1,800

Sold for $1,500

# 4. Are Plaintiffs Entitled to Reimbursement for Tools of the Trade?

**Ricardo Torres:**

Q:  Mr. Torres, no one at Sushi Sushi ever told you that you needed to have a second bike as a backup, correct?

A:  Yes, that's correct.

Q:  You just made that decision on your own; is that correct?

A:  That's correct.

Trial Tr. 86:21-25 (Torres)

# 4. Are Plaintiffs Entitled to Reimbursement for Tools of the Trade?

**Ricardo Torres:**

Only seeking reimbursement for Electric Bicycle #2



Electric Bicycle #2

Purchased used for $1,800

Sold for $1,500

## NET LOSS:  $300

## SEEKING:  $1,800

# 4. Are Plaintiffs Entitled to Reimbursement for Tools of the Trade?

**Ricardo Torres:**

Q:  Mr. Torres, did you ask Mr. Grinberg to reimburse you for any of the bike maintenance costs while you were employed at Sushi Sushi; yes or no?

A:  No, I didn't ask him.

Trial Tr. 91:23-92:1 (Torres)

Q:  Mr. Torres, in addition to the bike, you're also seeking reimbursement for certain maintenance costs for your bike; is that correct?

A:  Right.

Q:  Mr. Torres, you do not have any receipts for those maintenance purchases that you claim you made while employed at Sushi Sushi, correct?

A:  That's right.

Trial Tr. 91:6-13 (Torres)

# 4. Are Plaintiffs Entitled to Reimbursement for Tools of the Trade?

**Mario Bautista:**

> Q:   You agree that you owned that bicycle prior to starting at Sushi Sushi, correct?
>
> A:   Right.
>
> Q:   And, in fact, that bicycle was purchased for you by your previous employer, Ocean Restaurant, correct?
>
> A:   He bought it, but I paid for it.

Trial Tr. 205:1-6 (Bautista)

> Q:   And in your lawsuit against Ocean Restaurant, you claim that they did not reimburse you for the purchase and maintenance of your electric bicycle, correct?
>
> A:   Correct.

Trial Tr. 206:5-8 (Bautista)

# 4. Are Plaintiffs Entitled to Reimbursement for Tools of the Trade?

**Mario Bautista:**

Q:   And, to be clear, you don't have any receipts for those repairs, correct?

A:   No.

Q:   And you never asked Mr. Grinberg to reimburse you for those costs while you were working at Sushi Sushi, correct?

A:   No.

Trial Tr. 209:16-21 (Bautista)

# 4. Are Plaintiffs Entitled to Reimbursement for Tools of the Trade?

**ISSUE VIII: TOOLS OF THE TRADE**

18. Has plaintiff proven that he is entitled to reimbursement for the purchase of any electric bicycle?

YES _____          NO ✔ _____

19. If you answered "Yes" to Question 18, how much of his own money did he spend on the purchase that was not reimbursed?

AMOUNT: $ _____

20. Has plaintiff proven that he is entitled to reimbursement for maintenance of any electric bicycle?

YES _____          NO ✔ _____

21. If you answered "Yes" to Question 20, how much of his own money did he spend on maintenance <u>per month</u> on average that was not reimbursed?

AMOUNT: $ _____

22. If you answered "Yes" to Question 18 or 20, did the defendant willfully violate the FLSA in failing to reimburse the plaintiff?

Igor Grinberg          YES _____          NO _____

Angie Herrera          YES _____          NO _____

# Plaintiffs Are Not Credible

**Torres Has Given Inconsistent Testimony Under Oath**

Q:  Mr. Torres, so despite the fact that the version we're all looking at here has the information filled out and has a date of July 1st, 2016, with a signature you testified was yours, you want the jury to believe, and take your word for the fact, that you didn't sign a version with any of this information; is that correct?

A:  I'm not wanting the jury to believe it.  All I'm saying is that **I signed this paper**, and there was no date.

Trial Tr. 72:7-10 (Torres)

Q:  Then earlier you were being showed a document which is called – which is the wage notice.  Do you recall?

A:  Yes.

Q:  So did you sign that document?

A:  No, I just printed my name.

Trial Tr. 138:23-139:2 (Torres)

# Plaintiffs Are Not Credible

**Torres Has No Proof**

➢ No proof of when he started working

➢ No proof that his signed paystubs were blank when he signed them

➢ No receipts for alleged repairs on electric bicycle

➢ No idea of how much he was paid

# Plaintiffs Are Not Credible

**Torres Gave Contradictory Testimony Regarding His Pay Rate**

| Year | Second Am. Compl. | Affirmation | Deposition | Trial Testimony |
|------|-------------------|-------------|------------|-----------------|
| 2016 | $7.50 | $5.50 | $5.50 | $5.50 |
| 2017 | $8.00 | $6.00 | $6.50 | $6.00 or $6.25 |
| 2018 | $9.00 | $7.00 | $7.50 | $7.50 |
| 2019 | N/A | $7.50 | $8.00 | $8.00 |

# Plaintiffs Are Not Credible

**Bautista Has No Proof**

➢ No proof of when he started working

➢ No records of how much money he made at Sushi Sushi

➢ No proof he wasn't paid overtime

➢ No receipts for alleged repairs on electric bicycle

# Plaintiffs Are Not Credible

## Bautista Cannot Recall Details of His Employment

Q:  And you agree with me that you sometimes have difficulty remembering what you were paid at what time, correct?

A:  Right.

Trial Tr. 197:2-4 (Bautista)

Q:  And you agree with me, Mr. Bautista, that you sometimes have difficulty remembering the schedule that you worked at Sushi Sushi, correct?

A:  Of course.

Trial Tr. 186:2-5 (Bautista)

Q:  So Mr. Bautista, earlier you said you have received this piece of paper whenever you pick up your pay; is that correct statement?

A:  I hardly remember very much.

Trial Tr. 213:17-20 (Bautista)

# Plaintiffs Are Not Credible

**Bautista Has Given Incorrect Testimony Under Penalty of Perjury**

Q:  And you swore to tell the truth in that affirmation, just like you swore to tell the truth here today, correct?

A:  Of course.

Q:  And in that affirmation, you claimed that you worked seven days a week at Sushi Sushi, correct?

A:  Of course.

Q:  And you agree now that's incorrect, right?

A:  Of course.

Trial Tr. 210:3-10

# Mr. Grinberg Acted In Good Faith

### ISSUE IX.  GOOD FAITH

23.  To the extent Sushi Sushi failed to compensate plaintiff the applicable minimum wage, did the defendants nonetheless act in good faith?

YES _____          NO _____

24.  To the extent that Sushi Sushi failed to compensate plaintiff adequate overtime wages, did the defendants nonetheless act in good faith?

YES_____          NO _____

25.  To the extent that Sushi Sushi failed to compensate plaintiff for his spread of hours, did the defendants nonetheless act in good faith?

YES_____          NO _____

26.  To the extent that Sushi Sushi failed to provide plaintiff with an adequate wage notification, did the defendants nonetheless act in good faith?

YES _____          NO _____

27.  To the extent that Sushi Sushi failed to provide plaintiff with adequate wage statements, did the defendants nonetheless act in good faith?

YES _____          NO _____

# Mr. Grinberg Acted In Good Faith

**Igor Grinberg:**

Q:  Now, prior to opening the restaurant at 54 Tiemann Place, did you do anything to familiarize yourself with federal and state employment laws?

A:  Yes.  Since it was my first business, I went to the federal SBA at One Federal Plaza, I went to New York State SBA, and I went to the New York City business administration office.

Q:  Why did you visit those offices?

A:  **So, since it was my first business, I wanted to get some guidance on the technical and legal things I needed for the business** aside from just renting space and opening a restaurant.

Trial Tr. 252:10-20 (Grinberg)

# Mr. Grinberg Acted In Good Faith

## ISSUE IX.  GOOD FAITH

23.  To the extent Sushi Sushi failed to compensate plaintiff the applicable minimum wage, did the defendants nonetheless act in good faith?

YES ____✓____          NO _____

24.  To the extent that Sushi Sushi failed to compensate plaintiff adequate overtime wages, did the defendants nonetheless act in good faith?

YES ____✓____          NO _____

25. To the extent that Sushi Sushi failed to compensate plaintiff for his spread of hours, did the defendants nonetheless act in good faith?

YES ____✓____          NO _____

26. To the extent that Sushi Sushi failed to provide plaintiff with an adequate wage notification, did the defendants nonetheless act in good faith?

YES ____✓____          NO _____

27. To the extent that Sushi Sushi failed to provide plaintiff with adequate wage statements, did the defendants nonetheless act in good faith?

YES ____✓____          NO _____

# Is Angie Herrera Plaintiffs' Employer?

3. Was defendant Angie Herrera an employer of plaintiff?

YES _____       NO _____

# Is Angie Herrera Plaintiffs' Employer?

"If a defendant you are considering was not a plaintiff's employer, **that defendant cannot be liable to the plaintiff on any claim**."

Jury Charge

# Is Angie Herrera Plaintiffs' Employer?

**<u>Definition of "employer"</u>:**

Whether the individual has authority to:

➢ hire and fire employees;

➢ supervise and control employees' work schedules or conditions of employment;

➢ determine the rate and method of payment for employees; and

➢ maintain employment records for employees.

# Is Angie Herrera Plaintiffs' Employer?

**Mr. Grinberg testified that Ms. Herrera:**

➢ Did not have input into who to hire or fire

➢ Did not have input into employee work schedules

➢ Did not have input into employee pay rates

➢ Has not owned any part of his restaurants

Q:  Now, when talking to any of your employees, have you ever referred to Ms. Herrera as their boss, manager, or supervisor?

**A:  No.  They all knew specifically that she was not.**

Q:  Have you ever told Ms. Herrera that she was any employee's boss, manager, or supervisor?

A:  No, never.  If anything, it was more emphasized that she can't ever be a manager just because of our relationship.

Trial Tr. 257:25-258:6 (Grinberg)

# Is Angie Herrera Plaintiffs' Employer?

## Plaintiffs Do Not Dispute This

**Ricardo Torres:**

Q:  It was Mr. Igor Grinberg who hired you, correct?

A:  Yes.

Q:  Mr. Torres, Mr. Grinberg is also the individual who fired you from Sushi Sushi, correct?

A.  That's right.

Trial Tr. 129:25-130:4 (Torres)

Q:  Mr. Torres, Mr. Grinberg signed each of the paychecks that you cashed, correct?

A:  That's correct.

Trial Tr. 130:5-7 (Torres)

Q:  Mr. Grinberg also set your hourly pay rate each year that you worked at Sushi Sushi, correct?

A:  That's correct.

Trial Tr. 130:11-13 (Torres)

# Is Angie Herrera Plaintiffs' Employer?

## Plaintiffs Do Not Dispute This

**Mario Bautista:**

Q:  Is there anyone else other than Igor who notified you concerning when you should come to work or not?

A:  No.

Trial Tr. 170:19-21 (Bautista)

Q:  Can you describe the job duty of Ms. Angie Herrera?

A:  So she was like a cashier, she waited tables.  That's all I saw her doing.

Trial Tr. 171:14-16 (Bautista)

Page 51

# Is Angie Herrera Plaintiffs' Employer?

3.     Was defendant Angie Herrera an employer of plaintiff?

YES _____      NO ✔_____

# Defendants' Closing Argument

**May 19, 2022**

**EXHIBIT 8**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

RICARDO CAJERO TORRES and MARIO
BAUTISTA,

Plaintiffs,

- against -

IGOR GRINBERG and ANGIE HERRERA,

Defendants.

19 Civ. 2532 (PAE)

**VERDICT FORM AS TO
RICARDO CAJERO TORRES**

Hon. Paul A. Engelmayer, United States District Judge:

### ISSUE I:  DURATION OF EMPLOYMENT

1.    On which dates was plaintiff employed by Sushi Sushi?

FROM _6/8/16_    TO _1/27/19_

### ISSUE II: EMPLOYER STATUS

2.    Was defendant Igor Grinberg an employer of plaintiff?

YES __✓__        NO _____

3.    Was defendant Angie Herrera an employer of plaintiff?

YES _____        NO __✓__

## ISSUE III:  MINIMUM WAGES

4.   Did Sushi Sushi qualify to take a tip credit with respect to plaintiff?

In 2016:   YES ___✓___        NO _____

In 2017:   YES ___✓___        NO _____

In 2018:   YES ___✓___        NO _____

In 2019:   YES ___✓___        NO _____

5.   What was plaintiff's regular hourly rate of pay at Sushi Sushi?

In 2016:   $7.50

In 2017:   $7.50

In 2018:   $8.00

In 2019:   $9.00

6.   Was plaintiff paid a regularly hourly rate by Sushi Sushi that was below the minimum wage?

In 2016:   YES _____        NO ___✓___

In 2017:   YES _____        NO ___✓___

In 2018:   YES _____        NO ___✓___

In 2019:   YES _____        NO ___✓___

## ISSUE IV: OVERTIME WAGES

7. During the term of plaintiff's employment with Sushi Sushi, did plaintiff ever work overtime hours?

    YES ____✓____          NO _____

8. Was there at least one week in which plaintiff worked overtime hours and was not properly compensated for his overtime hours?

    In 2016:   YES ____✓____          NO _____

    In 2017:   YES ____✓____          NO _____

    In 2018:   YES ____✓____          NO _____

    In 2019:   YES ____✓____          NO _____

## ISSUE V: SPREAD OF HOURS

9. Did plaintiff's "spread of hours" exceed 10 hours on any given day at any time during his employment at Sushi Sushi?

    YES ____✓____          NO _____

10. Was plaintiff properly compensated for his "spread of hours" by Sushi Sushi?

    In 2016:   YES _____          NO ____✓____

    In 2017:   YES _____          NO ____✓____

    In 2018:   YES _____          NO ____✓____

    In 2019:   YES _____          NO ____✓____

3

## CALCULATIONS FOR ISSUES III, IV, AND V

11. Please fill in the chart according to the instructions.

12. You must fill in the sections (1), (2) and (3) for any year in which you answered "Yes" to *either* Question 6 *or* Question 8.

- In the section marked "(1)", please indicate the number of compensable regular hours that you find the plaintiff worked for that year.

- In the section marked "(2)", please indicate the number of compensable overtime hours that you find plaintiff worked for that year.

- In the section marked "(3)", please indicate the total amount of money plaintiff received for that year, not including tips.

You must fill in section (4) for any year in which you answered "No" to Question 10.

- In that section, please indicate the number of days, if any, that you find plaintiff worked more than 10 hours without receiving payment for an extra hour for spread of hours pay during the year listed.

| Year | (1) Number of regular hours worked by plaintiff | (2) Number of overtime hours worked by plaintiff | (3) Total wages (not including tips) that plaintiff was paid in this year | (4) Number of days in which plaintiff worked more than 10 hours without receiving spread of hours pay |
|------|------|------|------|------|
| 2016 | 1156 | 293 | $ 11,975.26 | 82 |
| 2017 | 2034 | 292.5 | $ 18,545.71 | 74 |
| 2018 | 1788 | 226 | $ 16,986.64 | 62 |
| 2019 | 143 | 2 | $ 1,314.00 | 2 |

4

## **ISSUE VI: TIME-OF-HIRE WAGE NOTICE**

13. Was plaintiff provided with an adequate wage notice within 10 days of the date he was
hired by Sushi Sushi?

    YES __✓__          NO _____

14. If you answered "No" to the preceding question, was he ever provided with an adequate
wage notice?

    YES _____          NO _____

15. If you answered "Yes" to the preceding question, on what date or date(s) was he
provided with an adequate wage notice?

    _____


## **ISSUE VII: WAGE STATEMENTS**

16. Was plaintiff provided with a full and accurate wage statement each payday during the
term of his employment at Sushi Sushi?

    YES __✓__          NO _____

17. If you answered "No" to the preceding question, for how many weeks did Sushi Sushi
fail to provide plaintiff with full and accurate wage statements?

    _____ weeks.

## ISSUE VIII:  TOOLS OF THE TRADE

18. Has plaintiff proven that he is entitled to reimbursement for the purchase of any electric bicycle?

   YES _____        NO __✓____

19. If you answered "Yes" to Question 18, how much of his own money did he spend on the purchase that was not reimbursed?

   AMOUNT:  $ _____

20. Has plaintiff proven that he is entitled to reimbursement for maintenance of any electric bicycle?

   YES _____        NO __✓____

21. If you answered "Yes" to Question 20, how much of his own money did he spend on maintenance per month on average that was not reimbursed?

   AMOUNT:  $ _____

22. If you answered "Yes" to Question 18 or 20, did the defendant willfully violate the FLSA in failing to reimburse the plaintiff?

   Igor Grinberg          YES _____          NO _____

   Angie Herrera          YES _____          NO _____

## ISSUE IX.  GOOD FAITH

23.  To the extent Sushi Sushi failed to compensate plaintiff the applicable minimum wage, did the defendants nonetheless act in good faith?

YES _____          NO _____

24.  To the extent that Sushi Sushi failed to compensate plaintiff adequate overtime wages, did the defendants nonetheless act in good faith?

YES __✓_____          NO _____

25.  To the extent that Sushi Sushi failed to compensate plaintiff for his spread of hours, did the defendants nonetheless act in good faith?

YES __✓_____          NO _____

26.  To the extent that Sushi Sushi failed to provide plaintiff with an adequate wage notification, did the defendants nonetheless act in good faith?

YES _____          NO _____

27.  To the extent that Sushi Sushi failed to provide plaintiff with adequate wage statements, did the defendants nonetheless act in good faith?

YES _____          NO _____

## VERDICT CERTIFICATION

**PRINTED NAME**                          **SIGNATURE**

John P. Klett

Matthew Coleman

Daniel Nathan

Theresa Criscione

Ryan M Kernan

Frank Torres

Elliot Rosa

Joshua Brazed

Dated: _____20 MAY 2022_____


BY PRINTING AND SIGNING YOUR NAME ABOVE, EACH JUROR IS INDICATING THAT HE OR SHE AGREES WITH EACH AND EVERY ANSWER REPORTED ON THIS VERDICT FORM.  AFTER EACH MEMBER OF THE JURY HAS PRINTED AND SIGNED THE VERIFICATION, THE FOREPERSON SHOULD SUMMON THE MARSHAL AND ADVISE HIM OR HER THAT YOU ARE READY TO REPORT YOUR ANSWERS TO THE COURT.

8

**EXHIBIT 9**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RICARDO CAJERO TORRES and MARIO
BAUTISTA,

Plaintiffs,

- against -

IGOR GRINBERG and ANGIE HERRERA,

Defendants.

19 Civ. 2532 (PAE)

**VERDICT FORM AS TO
MARIO BAUTISTA**

Hon. Paul A. Engelmayer, United States District Judge:

## ISSUE I:  DURATION OF EMPLOYMENT

1.  On which dates was plaintiff employed by Sushi Sushi?

FROM __1/13/18__   TO __1/20/19__

## ISSUE II: EMPLOYER STATUS

2.  Was defendant Igor Grinberg an employer of plaintiff?

YES __✓__        NO _____

3.  Was defendant Angie Herrera an employer of plaintiff?

YES _____        NO __✓__

## ISSUE III:  MINIMUM WAGES

4.  Did Sushi Sushi qualify to take a tip credit with respect to plaintiff?

In 2017:    YES _____    NO _____

In 2018:    YES _____✓_____    NO _____

In 2019:    YES _____✓_____    NO _____

5.  What was plaintiff's regular hourly rate of pay at Sushi Sushi?

In 2017:    _____  NOT APPLICABLE

In 2018:    __8.00__

In 2019:    __9.00__

6.  Was plaintiff paid at a regularly hourly rate by Sushi Sushi that was below the minimum wage?

In 2017:    YES _____    NO _____

In 2018:    YES _____    NO _____✓_____

In 2019:    YES _____    NO _____✓_____

## ISSUE IV:  OVERTIME WAGES

7. During the term of plaintiff's employment with Sushi Sushi, did plaintiff ever work overtime hours?

    YES ____✓____       NO _____

8. Was there at least one week in which plaintiff worked overtime hours and was not properly compensated for his overtime hours?

    In 2017:   YES _____       NO ____✓____

    In 2018:   YES ____✓____       NO _____

    In 2019:   YES ____✓____       NO _____

## ISSUE V:  SPREAD OF HOURS

9. Did plaintiff's "spread of hours" exceed 10 hours on any given day at any time during his employment at Sushi Sushi?

    YES ____✓____       NO _____

10. Was plaintiff properly compensated for his "spread of hours" by Sushi Sushi?

    In 2017:   YES _____       NO _____  NOT APPLICABLE

    In 2018:   YES _____       NO ____✓____

    In 2019:   YES _____       NO ____✓____

## CALCULATIONS FOR ISSUES III, IV, AND V

11. Please fill in the chart according to the instructions.

12. You must fill in the sections (1), (2) and (3) for any year in which you answered "Yes" to *either* Question 6 *or* Question 8.

- In the section marked "(1)", please indicate the number of compensable regular hours that you find the plaintiff worked for that year.

- In the section marked "(2)", please indicate the number of compensable overtime hours that you find plaintiff worked for that year.

- In the section marked "(3)", please indicate the total amount of money plaintiff received for that year, not including tips.

You must fill in section (4) for any year in which you answered "No" to Question 10.

- In that section, please indicate the number of days, if any, that you find plaintiff worked more than 10 hours without receiving payment for an extra hour for spread of hours pay during the year listed.

| Year | (1) Number of regular hours worked by plaintiff | (2) Number of overtime hours worked by plaintiff | (3) Total wages (not including tips) that plaintiff was paid in this year | (4) Number of days in which plaintiff worked more than 10 hours without receiving spread of hours pay |
|------|------|------|------|------|
| 2017 | ∅ | ∅ | ∅ | ∅ |
| 2018 | 1,710.5 | 293 | 17,192.00 | 117 |
| 2019 | 116 (116) | 3.5 | 2,091.25 | 8 |

4

## ISSUE VI:  TIME-OF-HIRE WAGE NOTICE

13. Was plaintiff provided with an adequate wage notice within 10 days of the date he was hired by Sushi Sushi?

    YES ____✓____        NO _____

14. If you answered "No" to the preceding question, was he ever provided with an adequate wage notice?

    YES _____        NO _____

15. If you answered "Yes" to the preceding question, on what date or date(s) was he provided with an adequate wage notice?

    _____

## ISSUE VII:  WAGE STATEMENTS

16. Was plaintiff provided with a full and accurate wage statement each payday during the term of his employment at Sushi Sushi?

    YES ___✓____        NO _____

17. If you answered "No" to the preceding question, for how many weeks did Sushi Sushi fail to provide plaintiff with full and accurate wage statements?

    _____ weeks.

## ISSUE VIII:  TOOLS OF THE TRADE

18. Has plaintiff proven that he is entitled to reimbursement for the purchase of any electric bicycle?

    YES _____        NO ___✓_____

19. If you answered "Yes" to Question 18, how much of his own money did he spend on the purchase that was not reimbursed?

    AMOUNT:  $ _____

20. Has plaintiff proven that he is entitled to reimbursement for maintenance of any electric bicycle?

    YES _____        NO ___✓_____

21. If you answered "Yes" to Question 20, how much of his own money did he spend on maintenance per month on average that was not reimbursed?

    AMOUNT:  $ _____

22. If you answered "Yes" to Question 18 or 20, did the defendant willfully violate the FLSA in failing to reimburse the plaintiff?

    Igor Grinberg          YES _____        NO _____

    Angie Herrera          YES _____        NO _____

6

## ISSUE IX.  GOOD FAITH

23. To the extent Sushi Sushi failed to compensate plaintiff the applicable minimum wage, did the defendants nonetheless act in good faith?

      YES _____         NO _____

24. To the extent that Sushi Sushi failed to compensate plaintiff adequate overtime wages, did the defendants nonetheless act in good faith?

      YES___✓___         NO _____

25. To the extent that Sushi Sushi failed to compensate plaintiff for his spread of hours, did the defendants nonetheless act in good faith?

      YES___✓___         NO _____

26. To the extent that Sushi Sushi failed to provide plaintiff with an adequate wage notification, did the defendants nonetheless act in good faith?

      YES __~~✗~~__         NO _____      NOT APPLICABLE

27. To the extent that Sushi Sushi failed to provide plaintiff with adequate wage statements, did the defendants nonetheless act in good faith?

      YES _____         NO _____

## VERDICT CERTIFICATION

| PRINTED NAME | SIGNATURE |
|---|---|
| John D. Klett (KLETT) | |
| Matthew Glenn | |
| Daniel Nathan | |
| THERESA CRISCIONE | |
| RYAN M KERNAN | |
| Frank Torres | |
| ELLIOT ROSA | |
| Joshua Brazeel | |

Dated: 20 MAY 2022

BY PRINTING AND SIGNING YOUR NAME ABOVE, EACH JUROR IS INDICATING
THAT HE OR SHE AGREES WITH EACH AND EVERY ANSWER REPORTED ON THIS
VERDICT FORM.  AFTER EACH MEMBER OF THE JURY HAS PRINTED AND SIGNED
THE VERIFICATION, THE FOREPERSON SHOULD SUMMON THE MARSHAL AND
ADVISE HIM OR HER THAT YOU ARE READY TO REPORT YOUR ANSWERS TO THE
COURT.

**EXHIBIT 10**

## Cajero Torres. et al. v. Sushi Sushi Holdings Inc. et al.

*Trial Exhibit List*

| EXHIBIT NUMBER | DOCUMENT |
|---|---|
| D-1 | Minimum wage poster 2019 |
| D-6 | Text messages from Plaintiff Ricardo Cajero Torres |
| D-7 | Defendant Angie Herrera's paystub records |
| D-8 | Wage notice for Plaintiff Ricardo Cajero Torres |
| D-11 | Pay records for Plaintiff Mario Bautista |
| D-12 | Time records for Plaintiff Mario Bautista |
| D-13 | Tip statement for Plaintiff Mario Bautista |
| D-14 | Pay records for Plaintiff Ricardo Cajero Torres |
| D-15 | Time records for Plaintiff Ricardo Cajero Torres |
| D-16 | Tip statement for Plaintiff Ricardo Cajero Torres |
| D-21 | Paystubs for Plaintiff Ricardo Cajero Torres |
| D-23 | Cash payments for Plaintiff Mario Bautista |
| D-24 | Cash payments for Plaintiff Ricardo Cajero Torres |
| D-29 | Summary of Defendants' time records for Plaintiff Ricardo Torres |
| D-30 | Summary of Defendants' pay records for Plaintiff Ricardo Torres |
| D-31 | Summary of Defendants' time records for Plaintiff Mario Bautista |
| D-32 | Summary of Defendants' pay records for Plaintiff Mario Bautista |