UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICARDO CAJERO TORRES, et al., | |
| Plaintiffs, | 19 Civ. 2532 (PAE) (RWL) |
| -v- | OPINION & ORDER |
| SUSHI SUSHI HOLDINGS INC., et al., | |
| Defendants. | |

PAUL A. ENGELMAYER, District Judge:

This decision resolves motions of plaintiffs Ricardo Cajero Torres and Mario Bautista for damages and attorneys' fees and costs incurred in this case, brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and New York Labor Law ("NYLL") §§ 190 *et seq.*, 650 *et seq.* Cajero Torres (in 2016–2019) and Bautista (in 2018–2019) were delivery workers at an upper Manhattan restaurant known as "Sushi Sushi" that was opened and run by defendant Igor Grinberg under corporate names. In May 2022, the Court held a four-day jury trial of plaintiffs' claims against Grinberg and his fiancée Angie Herrera, a former cashier at the restaurant; the corporate defendants, Sushi Sushi Holdings, Inc. ("Sushi Sushi") and Harlem Sushi, Inc. ("Harlem Sushi") had earlier defaulted. The result was a split decision: the jury found Herrera not to have been an employer and thereby ruled for her on all of plaintiffs' claims, and found for Grinberg on the vast majority of plaintiffs' claims, although plaintiffs prevailed on a small subset. *See* Dkts. 176, 177.

Plaintiffs now move against Grinberg for damages awards of $4,625.19 for Cajero Torres and $2,613.66 for Bautista, and an award of attorneys' fees of $154,847.50 and costs totaling $10,125.55. For the reasons that follow, the Court grants plaintiffs' motion as to damages, and

awards $4,625.19 to Cajero Torres and $2,613.66 to Bautista.  However, as to fees and costs, the Court grants plaintiffs' motion only to a limited extent.  The Court awards plaintiffs' counsel $5,145 in fees and $1,285.63 in costs.

## I.    Background

The following is the background pertinent to the instant motions.

### A.    Early Procedural History (March 2019 to November 2019)

On March 21, 2019, Cajero Torres and Bautista filed a Complaint against Sushi Sushi; Grinberg; and Angie "Doe," later identified as Angie Herrera.  Dkt. 1.  On March 22, 2019, the Court referred the case for general pretrial management to the Hon. Robert W. Lehrburger, United States Magistrate Judge.  Dkt. 5.  On May 10, 2019, Cajero Torres and Bautista filed the first amended complaint, which added Harlem Sushi Inc. as a corporate defendant.  Dkt. 14 ("FAC").

On June 7, 2019, defendants answered the FAC.  Dkt. 18.  On July 8, 2019, Judge Lehrburger entered a case management plan, which set the close of fact discovery for December 20, 2019, a deadline later extended through January 2020.  Dkts. 27, 32.  On October 9, 2019, plaintiffs filed the second amended complaint; it added a new plaintiff—Manuel Diaz Cortes. Dkt. 37 ("SAC").  The SAC made sweeping claims.  It alleged that, throughout plaintiffs' employment, defendants had failed to pay plaintiffs the minimum wage, overtime wages, "spread of hours" pay under the NYLL, "tools of the trade" reimbursements under the FLSA, and tips and gratuities; and had failed to provide plaintiffs with wage statements and notices.  *See id.*  On November 12, 2019, defendants answered the SAC.  Dkt. 38.

B.      **Plaintiffs' Failure to Conduct Discovery and Defendants' Withdrawal of Counsel (May 2020 to January 2021)**

On May 19, 2020, after six months of inactivity on the docket, plaintiffs moved to reopen discovery, until July 31, 2020, to conduct depositions.  Dkt. 40.  The next day, Judge Lehrburger denied that request as untimely.  He noted that discovery had closed in January 2020 and that "making that request now is far beyond the pale."  Dkt. 41.  On June 12, 2020, at the parties' request, Dkt. 42, Judge Lehrburger referred the case to the District's mediation program, Dkt. 43.

In October 2020, the Court received notice that the parties' efforts at mediation had failed.  As such, and with discovery having closed, the Court scheduled a case-management conference for December 23, 2020.  Dkt. 47.  At that conference, the Court learned that not only had plaintiffs' counsel failed to take depositions during the discovery window—plaintiffs' counsel had not made *any* discovery requests, or pursued discovery, at all.  *See* Dkt. 50.  In an effort to reach an early resolution of the case, however, defendants had voluntarily and informally produced documents to plaintiffs' counsel.  *See* Dkt. 40 at 1 (describing time records and pay records for Cajero Torres and Bautista).[1]  At the same conference, the Court set deadlines for pretrial filings, as required by its Individual Rules.  Dkt. 49.  The Court also issued an order indicating its dismay at plaintiffs' failure to take any discovery, and directed each partner at plaintiffs' law firm—Hang & Associates, PLLC (the "Hang firm")—who had appeared in the case, or the lead partner(s) at the firm, to file a sworn declaration "explaining in detail why the firm's conduct in discovery (*i.e.*, the failure to pursue documentary discovery or

---

[1] The plaintiffs did not seek or receive any records relevant to Cortes's claims, which defendants contended were untimely.

depositions) complied with its professional obligations to each of its three clients."[2]  Dkt. 50.

The same day, the Court referred the case to Judge Lehrburger for purposes of settlement

discussions.  Dkt. 51.

On January 14 and 19, 2021, defense counsel moved to withdraw, citing a breakdown in

communications and lack of payment.  Dkts. 59, 63.  On February 5, 2021, the Court, after

giving defendants several weeks to retain new counsel during which no such counsel appeared,

granted those motions.[3]  Dkt. 71.

### C.    Initial Pretrial Filings and Decisions (March 2021 to May 2021)

On March 12, 2021, after several extensions—some sought only after deadlines had

passed—the parties filed a joint proposed pretrial order, and plaintiffs filed proposed *voir dire*

and jury charges.  Dkts. 84–86.  In the pretrial order, defendants argued that Cortes's claims were

untimely under the FLSA.  Dkt. 84 at 2.  On March 15, 2021, a day after the deadline to do so,

plaintiffs filed a motion *in limine*, seeking to exclude (1) certain exhibits based on defendants'

purported failure to produce them during discovery; and (2) the testimony of two witnesses

whom defendants had not disclosed.  Dkts. 90–91.  On March 23, 2021, defendant Grinberg, at

that time proceeding *pro se*, opposed that motion.  He represented that he had provided all

relevant documents to his then-counsel during discovery, and had believed his counsel had

---

[2] On December 30, 2020, Jian Hang, Esq., filed such a document.  Dkt. 53.  He attested that the firm "decided not to pursue further discovery in that less discovery might work in Plaintiffs' favor."  *Id.* ¶ 9.  Hang explained that Cortes, the defendant with respect to whom no discovery had been informally procured, "will benefit from a lack of employer-produced records in a FLSA case in terms of meeting his burden of proof."  *Id.* ¶ 10.

[3] The order granting those motions noted that, because corporate entities such as Sushi Sushi and Harlem Sushi cannot proceed *pro se*, the Court would entertain a motion from plaintiffs seeking a default judgment against those defendants.  Dkt. 71 at 1–2 (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)).  On February 16 and March 2, 2021, the Court reminded plaintiffs that they were at liberty to move for a default judgment against the now-unrepresented corporate defendants.  Dkts. 75, 83.

4

informally furnished these to plaintiffs' counsel notwithstanding plaintiffs not having pursued discovery.  Dkt. 95.

On April 6, 2021, the Court held a pretrial conference.  *See* Dkt. 99.  The Court confirmed with plaintiffs' counsel that they had not sought any discovery.  The Court also noted that plaintiffs had not moved for a default judgment against the corporate defendants, which had been unrepresented since early February 2021.  Given that delay, and "the inattention that has more broadly characterized plaintiffs' counsel's litigation of this action," the Court directed plaintiffs to move for a default judgment no later than April 20, 2021.  *See* Dkt. 108 at 1–2.  The Court also encouraged the parties to pursue settlement anew.

On April 16, 2021, after learning that the parties' renewed settlement efforts had again fallen through, the Court issued an order addressing, *inter alia*, the timeliness of Cortes's claims. Dkt. 101.  The Court directed plaintiffs, by April 23, 2021, "to identify the basis in admissible evidence, if any, for finding Cortes's FLSA claims to be timely and, in any event, the basis, if any, for exercising supplemental jurisdiction over any timely New York Labor Law claims asserted by Cortes.  If plaintiffs cannot do so," the Court warned, it "intend[ed] to dismiss all of Cortes's claims."  *Id.* at 1.

On April 20, 2021, the day passed without plaintiffs filing a motion for default judgment as to the unrepresented corporate defendants.  The next day, plaintiffs did so.  Dkt. 102; *see* Dkts. 103–07.  In those filings, plaintiffs requested $591,945.78 in damages.  This figure spanned the three plaintiffs: Cajero Torres, Bautista, and Cortes.  Dkt. 104 ¶ 63.

On April 22, 2021, the Court issued an order to show cause, which described plaintiffs' repeated lapses and directed them to explain why they had again failed to timely comply with a court order, and why the Court should not, as a result, deny their default motion and dismiss the

claims against the corporate defendants.  Dkt. 108.  On April 23, 2021, plaintiffs' counsel filed a declaration explaining that the delay in filing the motion for default was the result of his entry of the wrong date on his calendar, and opposing dismissal.  Dkt. 109.

Also on April 23, 2021, plaintiffs filed a letter in response to the April 16 order.  Dkt. 110.  Plaintiffs did not attempt to defend Cortes's FLSA claims as timely.  Instead, they stated that his NYLL claims were timely, and that the Court should exercise supplemental jurisdiction over them.  *Id.* at 1–3.

On May 27, 2022, the Court denied in part and granted in part plaintiffs' motion *in limine*; dismissed Cortes's claims under the FLSA as untimely; declined to exercise supplemental jurisdiction over Cortes's NYLL claims; and granted Cajero Torres's and Bautista's motion for default judgment as to liability as against the unrepresented corporate defendants.  Dkt. 114.

### D.    Appearance of Pro Bono Counsel, Amended Pretrial Filings, and Re-Opening of Discovery (July 2021 to January 2022)

On July 9, 2021, the Court directed the Clerk of the Court to try to locate pro bono counsel to represent Grinberg and Herrera.  Dkt. 125.  On August 3, 2021, the Court informed the parties that the jury trial, which had been conditionally scheduled for September 7, 2021 pursuant to the District's pandemic scheduling protocols, would be adjourned.  Dkt. 126.  On August 10, 2021, pro bono counsel—Katherine DuBois, Esq., and Madalyn G. Vaughn, Esq.—appeared on behalf of Grinberg and Herrera.[4]  Dkts. 128–29.  On November 17, 2021, the parties filed amended proposed *voir dire* questions and an amended joint pretrial order.  Dkts. 137–138.

---

[4] On May 5, 2022, Brian Golger, Esq., appeared on behalf of defendants, pro bono.  Dkt. 166.

The Court also granted plaintiffs' request for an extension of the request to charge deadline.[5] Dkt. 140.  On November 24, 2021, the parties filed a joint request to charge.  Dkt. 142.

On December 2, 2021, the Court held a pretrial conference.  Dkts. 134, 150.  There, on defendants' unopposed request, the Court, *inter alia*, authorized the depositions of the four parties—plaintiffs Cajero Torres and Bautista, and defendants Grinberg and Herrera—and set a briefing schedule for the evidentiary objections raised in the parties' amended joint pretrial order. Dkt. 143.  The Court also directed counsel for plaintiffs, Shan Zhu, Esq., to secure a court-certified Spanish translator well in advance of any scheduled trial date, which was then to be in the first quarter of 2022.  Dkt. 150 at 5–6.  The parties were deposed in January 2022.  *See* Dkt. 144.

### E.      Trial and Post-Trial Filings (May to June 2022)

On May 3, 2022, the Court held a final pretrial conference.  *See* Dkts. 165, 173.  The Court, *inter alia*, resolved plaintiffs' remaining evidentiary objections to the amended joint pretrial order; directed the parties to submit a proposed verdict form and (for purposes of *voir dire*) a list of all persons and entities they anticipated being mentioned in testimony; and reminded plaintiffs' counsel of its directive to secure a court-certified Spanish interpreter.  *See* Dkts. 168, 171.  Defendants timely submitted such filings; plaintiffs' counsel did not make any of them.  On May 11 and 12, 2022, the Court issued orders directing plaintiffs to submit the required documents, Dkt. 168, and retain an interpreter, and to file a sworn declaration upon the retention of such an interpreter, Dkt. 171.  Plaintiffs' counsel eventually did so.  Dkts. 170, 172.

On May 17, 2022, trial began.  *See* Dkt. 180.  It lasted four days.  The witnesses were Cajero Torres and Bautista, who each testified with the assistance of a translator, and Grinberg

---

[5] Defendants had timely filed their own request to charge.  Dkt. 139.

and Herrera.  The documentary evidence included detailed and unimpeached wage and hour records authenticated by Grinberg as to Cajero Torres and Bautista.  Those chronicled each plaintiff's weekly pay; his daily and weekly hours; the wage rate that the restaurant had used to calculate his regular and overtime pay; and the manner in which the restaurant had tabulated each plaintiff's weekly pay, including the tip credit that the restaurant had utilized and how it had done so.

Two aspects of Grinberg's testimony are relevant insofar as they account for the limited portion of the ensuing jury verdict in plaintiffs' favor.  First, Grinberg testified that, in good faith and consistent with the written pay records, he had calculated plaintiffs' wage rate for overtime hours by first subtracting the statutory tip credit from the regular wage rate and then multiplying that rate by 150%.  Dkt. 184 ("Tr.") at 369; *see also id.* at 416 (testifying that he calculated overtime pay in a manner he believed lawful).[6]  In fact, the proper means to calculate an overtime wage rate is to multiply a worker's regular wage rate by 150% and only then to subtract the statutory tip credit.  Second, he testified, he had not paid Cajero Torres or Bautista spread-of-hours pay.  *Id.* at 397; *see also id.* at 395–96 (testifying he was not aware of the concept).  The NYLL, however, requires such pay for any day in which an employee's work day spans at least 10 hours, including working and non-working time.

On May 20, 2022, the jury rendered its verdict, which was heavily in defendants' favor. *See* Dkts. 176–77.  As to defendants' employer status, the jury found that Grinberg (as was not disputed) had been plaintiffs' employer at Sushi Sushi, but that Herrera, whose testimony that she had served solely as a cashier and largely on a part-time basis was unimpeached, had not been.  As to the bulk of plaintiffs' claims of liability, the jury found in Grinberg's favor.  It found

---

[6] Transcripts of each trial day are available at docket entries 180, 182, 184, and 186.

that (1) Sushi Sushi at all times had met the qualifications to take a tip credit; (2) Sushi Sushi, at all times, had paid plaintiffs a regular hourly rate consistent with the minimum wage; (3) Sushi Sushi had provided each plaintiff with an adequate wage notice at the time of hire and a full and accurate wage statement each payday; (4) neither plaintiff was entitled to reimbursement for the purchase or maintenance of their electric bicycles; and (5) Grinberg had acted in good faith to the extent of the two violations it found.  These were that (1) Sushi Sushi had inaccurately calculated plaintiffs' overtime pay rate, and thereby inadequately compensated them for overtime hours; and (2) had not paid them for a spread of hours on days when their hours qualified them for such pay.  The jury's verdict forms set out its findings as to plaintiffs' hours, wages, and spread of hours, which, the Court had instructed the jury, it would use following trial to tabulate any damages.  Dkts. 176, 177.  The jury's findings, which tracked Grinberg's pay records as summarized in charts offered by the defense, were as follows:

**Findings as to Cajero Torres (employed June 8, 2016 – January 27, 2019)**

| Year | Regular hourly rate of pay | Number of regular hours worked by plaintiff | Number of overtime hours worked by plaintiff | Total wages (not including tips) that plaintiff was paid in this year | Number of days in which plaintiff worked more than 10 hours without receiving spread of hours pay |
|---|---|---|---|---|---|
| 2016 | $7.50 | 1156 | 293 | $11,975.26 | 82 |
| 2017 | $7.50 | 2034 | 292.5 | $18,545.71 | 74 |
| 2018 | $8.00 | 1788 | 226 | $16,986.64 | 62 |
| 2019 | $9.00 | 143 | 2 | $1,314.00 | 2 |

**Findings as to Bautista (employed January 13, 2018 – January 20, 2019)**

| Year | Regular hourly rate of pay | Number of regular hours worked by plaintiff | Number of overtime hours worked by plaintiff | Total wages (not including tips) that plaintiff was paid in this year | Number of days in which plaintiff worked more than 10 hours without receiving spread of hours pay |
|------|------|------|------|------|------|
| **2018** | $8.00 | 1710.5 | 293 | $17,192.00 | 113 |
| **2019** | $9.00 | 116 | 3.5 | $2,091.25 | 8 |

On May 20, 2022, the Court set a schedule for the post-trial briefs on (1) the tabulation of damages based on these findings; and (2) plaintiffs' application for an award, from Grinberg, of attorneys' fees and costs. The Court directed plaintiffs' counsel to furnish defendants' counsel with billing records within one week.[7]  Dkt. 175.  On June 3, 2022, plaintiffs' counsel filed a motion for attorneys' fees, Dkt. 189, a memorandum of law in support, Dkt. 190 ("Mot."), and the declaration of Guofeng Li, Dkt. 191 ("Li Decl."); *see* Dkt. 191-1 ("Billing Records"). Strikingly, however, plaintiffs' counsel failed to file a brief as to the damages due to their clients. Accordingly, on June 6, 2022, the Court issued an order reminding plaintiffs' counsel, "not for the first time, of their fiduciary obligations to their clients," and directing them to file, by the following day, a memorandum as to the damages due to their clients.  Dkt. 192.  On June 7, 2022, plaintiffs did so, Dkt. 195, with a memorandum and declaration in support, Dkts. 196–97. On June 17, 2022, Grinberg filed a memorandum in opposition to the motion for attorneys' fees, Dkt. 198 ("Opp."), and the declaration of Ms. Vaughn, Dkt. 199.

On July 12, 2022, the Court directed plaintiffs' counsel to file, on the docket of this case, their retainer agreement(s) for Cajero Torres and Bautista, and set a deadline for emailing the

---

[7] The billing records were thus due to opposing counsel by May 27, 2022.  According to a letter Grinberg filed as part of his opposition to plaintiffs' motion for fees, plaintiffs' counsel missed this deadline, too.  *See* Dkt. 199, Ex. 3 at 1 ("On May 30, 2022, at 10:36 p.m., ET, Plaintiffs sent an attorney bill . . . .").

Court native versions of the Billing Records and the appendices to the Vaughn Declaration, along with the total hours plaintiffs were seeking for each timekeeper, which the Court had requested via email.  Dkt. 200.  The same day, plaintiffs' counsel filed the retainer agreements. Dkt. 201.  Plaintiffs' counsel also emailed to the Court a spreadsheet reflecting the total number of hours billed per timekeeper.  The Court uses such totals for its calculations, below.[8]

## II.    Damages

The Court begins with the damages due to plaintiffs.  Based on the jury's findings, Cajero Torres and Bautista are each entitled to damages to compensate them for unpaid overtime wages and for spread-of-hours wages.

As to overtime wages, under both the FLSA and the NYLL, an employee must be paid at a time-and-a-half rate for any hour over 40 hours that he works in a week.  29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.4.  Because the jury found that Sushi Sushi was entitled to take a statutory tip credit, the overtime rate is calculated by subtracting the tip credit from 1.5 times the minimum wage rate.  *See Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 498 (S.D.N.Y. 2015) ("For tipped employees, the minimum overtime cash wage is the employee's regular rate of pay before subtracting any tip credit, multiplied by one and one-half, minus the tip credit.").  As to spread-of-hours wages, under the NYLL, an employee who has worked more than 10 hours in a day—counted from the time he began his work until he finishes, "including both work time and non-working time"—is entitled to an additional hour's pay at the minimum wage.  *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 319 (S.D.N.Y. 2014); N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6.  On these sums, plaintiffs

---

[8] On July 13, 2022, plaintiffs' counsel sent the Court a spreadsheet with the total hours billed by timekeeper.  Counsel noted that there was a $25 discrepancy between the spreadsheet and their billing records: "We haven't figured out the reason."  That discrepancy is of no moment here. The spreadsheet is attached as an appendix to this decision.

are also entitled to pre-judgment interest.  *See Brito v. Lucky Seven Rest. & Bar, LLC*, No. 19

Civ. 3876 (PAE) (KHP), 2021 WL 1131506, at *14 (S.D.N.Y. Mar. 24, 2021).

Here, plaintiffs seek $4,625.19 in damages for Cajero Torres, and $2,613.66 for Bautista,

inclusive of pre-judgment interest, as reflected in the table below.  *See* Dkt. 197 at 2, 5–6; Dkt.

196-1.

| Plaintiff | Overtime wages | Spread of hours | Pre-judgment interest | Total |
|-----------|----------------|-----------------|-----------------------|-------|
| Cajero Torres | $1,135.27 | $2,286.00 | $1,203.92 | $4,625.19 |
| Bautista | $594.00 | $1,464.00 | $555.66 | $2,613.66 |

Grinberg does not contest the accuracy of these calculations, Opp. at 1 n.1, which the

Court has confirmed are well-founded.[9]

Accordingly, the Court grants plaintiffs' unopposed motion as to damages.

## III.   Attorneys' Fees

The Court turns next to the motion for attorneys' fees.  Under the FLSA and the NYLL, a

prevailing plaintiff may recover reasonable attorneys' fees and costs.  *See* 29 U.S.C. § 216(b);

N.Y. Lab. L. § 198.  "District courts enjoy broad discretion when setting a fee award, but they

must clearly and concisely state reasons supporting the award."  *Tackie v. Keff Enters. LLC*, No.

14 Civ. 2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (citing *Hensley v.

Eckerhart*, 461 U.S. 424, 437 (1983)); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d

Cir. 2014) ("We afford a district court considerable discretion in determining what constitutes

reasonable attorney's fees in a given case, mindful of the court's 'superior understanding of the

litigation and . . . what essentially are factual matters.'") (quoting *Hensley*, 461 U.S. at 437).

---

[9] Plaintiffs' memorandum of law concludes by listing both of these damages awards as due to
Cajero Torres.  Dkt. 197 at 6.  Elsewhere, the memorandum appropriately recognizes that
Bautista is due a damages award.  *Id.* at 2.  The memorandum also describes the pre-judgment
interest for Cajero Torres as "$1,203,92." *Id.* at 5.  The second comma is a typographical error.

"[T]rial courts need not, and indeed should not, become green-eyeshade accountants"; rather,

"[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."

*Fox v. Vice*, 563 U.S. 826, 838 (2011).

The Second Circuit has directed district courts to follow the "presumptively reasonable"

fee approach.  This "essentially boils down to a four-step process":

> (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.

*Humane Soc. of U.S. v. HVFG, LLC*, No. 06 Civ. 6829 (HB), 2010 WL 3322512, at *5

(S.D.N.Y. Aug. 19, 2010).  Under this approach, the presumptively reasonable fee award is the

"lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number

of hours required by the case."  *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, No. 11 Civ.

3186 (TPG), 2014 WL 3955178, at *1 (S.D.N.Y. Aug. 13, 2014) (quoting *Millea v. Metro-N.*

*R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).  Courts may then "make adjustments to the

presumptively reasonable fee based on equitable factors such as the degree of success obtained

by the prevailing party."  *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415,

428 (S.D.N.Y. 2012).

The Court begins with determining the reasonable hourly rates; then determines the

number of hours reasonably expended; multiplies the two to find the presumptively reasonable

rate; and finally makes an appropriate downward adjustment, based on the motion papers, its

review of the record, and its familiarity with the case, to arrive at the final fee award.

### A.    Reasonable Hourly Rates

The Court's analysis of the reasonable hourly rate is guided by the market rate

"prevailing in the community for similar services by lawyers of reasonably comparable skill,

experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  The relevant

community is this District.  *Arbor Hill*, 522 F.3d at 190; *see also Castellanos v. Mid Bronx Cmty.*

*Hous. Mgmt. Corp.*, No. 13 Civ. 3061 (JGK), 2014 WL 2624759, at *7 (S.D.N.Y. June 10,

2014).  The Second Circuit has directed that, in determining "what rate a paying client would be

willing to pay," a court should consider the *Johnson* factors, which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the level of skill required to perform the legal service properly; (4) the preclusion
> of employment by the attorney due to acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the amount involved in
> the case and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 187 n.3.  The court "should also bear in mind that a reasonable, paying

client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190.

   ***Jian Hang***.  Plaintiffs' counsel seeks a $350 hourly billing rate for Hang.  According to

plaintiffs' counsel, Hang "has over ten years of experience litigating and trying cases in this

area." Li Decl. ¶ 3.  He graduated from the law school of the University of Arkansas at Little

Rock, and practiced at the law firm Epstein, Becker & Green, P.C., for nine years. *Id.*  However,

a review of the tasks Hang sparsely claims to have performed do not warrant a $350 billing rate,

or close.  No reasonable client would pay $350 an hour for tasks such as "reivwe [*sic*] court

filing," *see* Billing Records at 16, or even "review court filing," *see id.* at 12–15, 17–25, 28–29;

"address phone call issue," *id.* at 17; or "review email from OC," *id.* at 20–27, 29–33, 35–38, 41.

Tellingly, plaintiffs do not represent that Hang has paying clients who pay his firm a rate of $350

for his services. *See* Li Decl. ¶ 3.  And Hang did not appear at trial or, in any way visible to the

Court, perform any substantive work in this matter.  Accordingly, despite Hang's relative

seniority, the Court will reduce his hourly rate to $150, to reflect the non-substantive nature of the tasks he claims to have performed in the case.

**Shan Zhu**.  Plaintiffs' counsel seeks a $300 hourly billing rate for associate Shan Zhu, who served, effectively solo, as plaintiffs' counsel at trial and before.  Zhu joined the firm in 2019, after litigating in New Jersey and receiving his law degree in 2018.  Li Decl. ¶ 4.  Zhu thus had less than two years' legal experience before taking over this case.  Although Zhu's good nature and humility were commendable, his extreme inexperience with litigation and with trial work was repeatedly on display during this trial, and the record reflects little effectiveness and numerous lapses that are inconsistent with a billing rate of a lawyer of any experience.  Given that, and the non-complex nature of this case, the Court finds an hourly rate of $150 for Zhu the most that can possibly be justified.

**Ge Qu**.  Plaintiffs' counsel also seeks a $300 hourly billing rate for associate Ge Qu.  He received his law degree in 2015 from Fordham University School of Law and is claimed to have had "substantial experience litigating FLSA matters," among others.  Li Decl. ¶ 5.  The Court, however, will also reduce Qu's rate to $150, because of the general, unsophisticated nature of the tasks for which he claims to have worked in this litigation, and because the record—including plaintiffs' abysmal quality filings and repeated slip-ups—is not consistent with a lawyer's claim of substantial experience, or at least of learning from that experience.  The Court notes that other courts in this District and the Eastern District of New York have discounted Qu's claimed rate based on such factors. *See, e.g., Mei Chun Poon v. Apple NYC Corp.*, No. 17 Civ. 9647 (RA) (GWG), 2019 WL 75674, at *13 (S.D.N.Y. Jan. 2, 2019) (awarding fee of $200 per hour to Qu, where he requested $300 fee); *Duchitanga v. 43 Ave Top N' Quality Corp.*, No. 17 Civ. 1145 (LDH) (RLM), 2021 WL 7906539, at *19 (E.D.N.Y. Sept. 13, 2021) (recommending award of

$200 hourly rate even though Qu requested $300 hourly rate and "ha[d] spent significant time on this litigation, particularly in comparison to his colleagues," because of "the lack of care and diligence with which he has litigated plaintiffs' case").[10]

**Oscar Alvarado**.  Plaintiffs' counsel seeks a $300 billing rate for associate Oscar Alvarado.  Alvarado graduated in 2018 from New York University School of Law and "has worked with several firms and non-profit organizations and has experience representing workers in several aspects of employment law."  Li Decl. ¶ 6.  Counsel's declaration, however, fails to state that paying clients actually pay $300 for Alvarado's services.  The Court notes, too, that Alvarado physically appeared in court during portions of the trial but did not visibly do any work or meaningfully consult with Zhu, even at points when a colleague's guidance was plainly needed.  Given Alvarado's relative lack of experience, the general nature of the tasks he claims to have performed, the overall shoddy quality of plaintiffs' counsel's work in this case, and Alvarado's lack of engagement during trial, the Court will reduce his fee, too, to $150 an hour.

**Other associates and paralegals**.  Plaintiffs' counsel fails to provide any information about the 10 other timekeepers whom it claims billed time to this case.[11]  Regrettably, reported decisions show such lapses to have been characteristic of Hang & Associates, despite repeated admonitions of courts in this Circuit in recent years.  As Magistrate Judge Mann of the Eastern

---

[10] This Court may consider fee awards in the Eastern District as a relevant comparison.  *See, e.g.*, *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009) (describing the forum rule presumption for fees); *Entral Grp. Int'l v. Sun Sports Bar Inc.*, No. 05 Civ. 4836, 2007 WL 2891419, at *10 (E.D.N.Y. Sept. 28, 2007).

[11] Plaintiffs seek a $300 hourly rate for Lorena Duarte (5 hours), Qinyu Fan (0.8 hours), Jiajing Fan (0.4 hours), Yuezhu Liu (25.4 hours), and Zindzi Baugh Corbett (0.3 hours), and a $150 hourly rate for Ge Yan (5.8 hours), Leticia Ochoa (2.9 hours), Maritza Yanes (90 hours), and Suelen Chimanski (3.1 hours).  Mot. at 7–8; *see also* Appendix (listing 7.9 hours for Yu Anqi, who is not addressed in plaintiffs' memorandum of law).

District put the point in a report and recommendation rendered 15 months before the trial in this

case, which Judge Donnelly adopted soon thereafter: "Because expertise is a critical factor in

evaluating the reasonableness of a billing rate, a number of judges in this District have slashed

fee awards involving the Hang law firm, on account of recurring deficiencies such as missing

background information on each individual who worked on the case."[12]  *Luk v. ABNS NY Inc.*,

No. 18 Civ. 5170 (AMD) (RLM), 2021 WL 829417, at *4 (E.D.N.Y. Feb. 9, 2021) (citation

omitted) (collecting cases), *report and recommendation adopted sub nom. Ying Ying Dai v.*

*ABNS NY Inc.*, 2021 WL 826014 (E.D.N.Y. Mar. 3, 2021).  Numerous courts have reduced fees

on this basis.[13]  Yet, "despite [this] series of judicial opinions slashing fee requests relating to the

---

[12] Magistrate Judge Mann further noted: "Despite these judicial rebukes, plaintiffs' counsel's initial fee application provided *no* information about seven of the ten individuals who worked on this case.  In response to the Court's request for additional information about the personnel who worked on this case, plaintiffs' counsel cured only some omissions.  The failure to include information in the initial motion papers about the reputation, ability, and experience of many of the individuals for whom plaintiffs' counsel requested fees speaks to the quality of plaintiffs' submissions, an important factor in determining appropriate fees."  *Luk*, 2021 WL 829417, at *4 (emphasis in original) (citations omitted).

[13] *See e.g.*, *Duchitanga*, 2021 WL 7906539, at *20; *Liu v. Millenium Motors Sports, LLC*, No. 17 Civ. 6438 (RPK) (RER), 2021 WL 3463193, at *3 (E.D.N.Y. Aug. 6, 2021) (rejecting objections to report and recommendation where plaintiffs asked for reconsideration of fees after not having submitted biographical information because they offered no "compelling justification—or any justification at all—for their failure to submit biographical information for these attorneys with their original motion" and "counsel had every reason to understand that this information would be required to sustain their fee request, because judges in this district have previously slashed fee awards involving the Hang law firm, on account of recurring deficiencies such as missing background information on each individual who worked on the case") (cleaned up) (collecting cases); *Gao v. Jian Song Shi*, No. 18 Civ. 2708 (ARR) (LB), 2021 WL 1949275, at *18 (E.D.N.Y. Apr. 30, 2021), *report and recommendation adopted sub nom. Bin Gao v. ABC Corp.*, 2021 WL 1946322 (E.D.N.Y. May 15, 2021); *Wing Chan v. Xifu Food, Inc.*, No. 18 Civ. 5445 (ARR) (RML), 2020 WL 5027861, at *11 (E.D.N.Y. Aug. 5, 2020), *report and recommendation adopted*, 2020 WL 5027147 (E.D.N.Y. Aug. 25, 2020); *Kewei Chen v. Anzai Asian Inc.*, No. 18 Civ. 6659 (JMA) (ARL), 2020 WL 8620021, at *3 (E.D.N.Y. Nov. 30, 2020); *Lu v. Nisen Sushi of Commack, LLC*, No. 18 Civ. 7177 (RJD) (ST), 2020 WL 9814084, at *12 (E.D.N.Y. Mar. 14, 2020); *Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17 Civ. 6963 (WFK) (RLM), 2019 WL

same law firm, Hang & Associates, PLLC . . . for recurring deficiencies in their applications, plaintiff[s] ha[ve] provided no information about" these timekeepers. *See Kim v. Fam. Bob Inc.*, No. 20 Civ. 906 (ENV) (RLM), 2021 WL 7906544, at *14 (E.D.N.Y. Jan. 26, 2021).

This Court will not indulge this abusive practice. The thoughtful and careful opinions above put the Hang firm on ample notice as to the need to include timekeeper qualifications and experience in any fee application. Accordingly, the Court will not award any fees whatsoever to the Hang firm based on the reported work done by timekeepers as to whom no qualifications are reported. The firm's inadequate filings prevent the Court from making any reliable assessment about the fee award, if any, that is warranted for the reported work of such persons. And the Hang firm's disregard of the repeated admonitions of courts as to its fee-seeking practices tracks the firm's broader *modus operandi* in this litigation. The firm was repeatedly disrespectful of orders, unresponsive to repeated directives, insensitive to its clients' interests, ineffective in court, and uninterested in the orderly and just administration of the case.[14] Accordingly, the

---

1549033, at *14 (E.D.N.Y. Feb. 22, 2019), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019); *Ming Hui v. Shorty's Seafood Corp.*, No. 15 Civ. 7295 (RJD) (ST), 2017 WL 5054401, at *12 (E.D.N.Y. Sept. 6, 2017), *report and recommendation adopted*, 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017).

[14] Other judges have expressed serious, similar concerns about the Hang firm's professionalism, judgment, and commitment. *See, e.g.*, *Del Rio v. 257 SG Pizza Corp.*, No. 19 Civ. 3426 (OTW), 2022 WL 1044261, at *2 (S.D.N.Y. Apr. 6, 2022) (citing "lacking" submission with "significant deficiencies," including, *inter alia*, plaintiff's counsel's failure to submit qualifications of timekeepers, failure to calculate maximum damages possible, and blatant typos); *Saavedra v. Twin Kitty Bakery Corp.*, No. 18 Civ. 932 (PKC) (PK), 2021 WL 1394487, at *18–19 (E.D.N.Y. Feb. 16, 2021) ("Plaintiffs' counsel repeatedly submitted subpar materials to the Court. The Motion and the materials submitted in support thereof were virtually unusable. Each Plaintiffs' declaration was internally inconsistent and inconsistent with the allegations in the Complaint. The Excel spreadsheet that counsel submitted in support of the Motion was also flawed. . . . Plaintiffs' counsel was afforded ample opportunities to rectify these errors. . . . Counsel could have taken any of those opportunities to address these problems. They did not. . . . Because of these serious deficiencies, the Court was compelled to do counsel's work for them. . . . Counsel

Court will treat the work claimed by the Hang firm on behalf of such timekeepers as if billed at $0 an hour, so as effectively to disregard such work.

### B.      Reasonable Hours Expended

A party seeking attorneys' fees must provide the Court with contemporaneous time records showing the date, hours expended, and the nature of the work.  *Castellanos*, 2014 WL 2624759, at *6.  That is the starting point for the Court's inquiry.

The Court "then must determine how much of that time was reasonably expended." *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015) (internal quotation marks omitted).  The Court will "look[] to its own familiarity with the case and its experience with the case and . . . generally as well as to the evidentiary submissions and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (internal quotation marks omitted).  Courts in this District often consider whether the work is straightforward and "the relative simplicity of the issues involved."  *Palacios v. Z & G Distribs., Inc.*, No. 11 Civ. 2538 (AT) (FM), 2013 WL 4007590, at *6 (S.D.N.Y. Aug. 6, 2013).  They also consider "overstaffing, the skill and

---

also ignored an explicit Court order when filing the Motion."), *report and recommendation adopted*, 2021 WL 1169321 (E.D.N.Y. Mar. 29, 2021); *Kim*, 2021 WL 7906544, at *14 ("plaintiff's submissions contained many careless mistakes"); *Duchitanga*, 2021 WL 7906539, at *19 ("Despite Mr. Qu's considerable experience, plaintiffs' pleadings are rife with errors and inconsistencies, and, notably, Mr. Qu failed to apprise the Court that two of the named plaintiffs are no longer pursuing the claims at issue" and describing "the lack of care and diligence with which he has litigated plaintiffs' case") (citation omitted); *Calle v. Yoneles Enters., Inc.*, No. 16 Civ. 1008 (NGG) (RLM), 2017 WL 6942652, at *20 (E.D.N.Y. Oct. 24, 2017) ("[T]he Court believes that the performance exhibited by counsel warrants a significant reduction in Hang's hourly rate," including discrepancies and failure to corroborate claims), *report and recommendation adopted*, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018); *Chen v. JP Standard Constr. Corp.*, No. 14 Civ. 1086 (MKB) (RLM), 2016 WL 2909966, at *16 (E.D.N.Y. Mar. 18, 2016) (describing range of errors made by Hang from "minor drafting mistakes" to several more substantial ones, and that "counsel proceeded to file documents with the Court concerning plaintiff Chen's work schedule that clearly contradicted Chen's own recollection"), *report and recommendation adopted*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016).

experience of the attorneys, as well as redundant, excessive, or unnecessary hours." *Gonzalez*, 112 F. Supp. 3d at 29 (citing *Clarke*, 960 F.2d at 1153).

Here, plaintiffs' counsel—despite having gone to ground during the entire discovery process—has submitted records reflecting a breathtaking total of 548.6 hours purportedly across all timekeepers, with the bulk of these worked by Zhu (285.2 hours), Qu (68.4 hours), Alvarado (56.8 hours), and Hang (14.1 hours).[15]  *See* Billing Records at 1 (intermediate total of 119.1 hours), 41 (447 hours); Appendix.  This total—even if one subtracts from it the hours worked by the 10 timekeepers whose claimed work the Court has disregarded—is grossly out of line, based on the Court's familiarity with the case and its review of the billing records, for several reasons.

### 1.    Losing and Unrelated Claims

The Court begins by disregarding entries covering work on unrelated or demonstrably deficient claims.[16]  These include fees billed pursuing claims brought by Cortes, who was dismissed from this action before trial; against Herrera, whom the jury found to be not liable and as to whom no competent evidence of employer status was ever adduced; against the defaulting corporate defendants, which plaintiffs are separately pursuing in a default judgment proceeding; and for claims by a potential new plaintiff, whom the Hang firm never brought into the case.

---

[15] Maritza Yanes also billed hours on par with these timekeepers (71.7 hours).

[16] As Grinberg rightly notes, some of the Hang firm's time entries embody multiple areas of work including non-compensable ones, but do not enable the Court to ascertain the time spent on the non-compensable work.  *See, e.g.*, Billing Records at 2 (time entry for August 26, 2019, in which Qu billed 1.5 hours for "Review/analyze Second Amended Complaint & Research defendant corporate entities status," which pertains to Cortes's claims and claims against the defaulting corporate defendants), 17 (time entry for April 23, 2021, in which Zhu billed 2.8 hours for "Drafted aff. in response to Court April 22 order.", which pertains to the defaulting defendants and was a Court-ordered declaration).  The Court takes account of these billing deficiencies *infra*, as a reason for its across-the-board reduction of fees.

a.       *Requested fees*

***Work on behalf of dismissed plaintiff Cortes***. Plaintiffs seek to recover for about 24 hours of time spent exclusively on Cortes's case.  On May 27, 2021, the Court dismissed Cortes's claims because his FLSA claims were undisputedly untimely, and declined to exercise supplemental jurisdiction over his NYLL claims.  Dkt. 114.  Plaintiffs' counsel nevertheless seeks to recover for time working on Cortes's claims.

First, plaintiffs' counsel seeks to recover for time spent representing Cortes in an unrelated *state court* lawsuit.  *See* Billing Records at 17 (time entry for June 4, 2021, in which Zhu billed 3.7 hours for "Drafting State Court Complaint for Cortes"), 18 (time entry for June 5, 2021, in which Zhu billed 3.2 hours for "Cont. drafting state complaint.").  Second, plaintiffs' counsel seeks to recover for time spent drafting and filing the SAC, which modified the FAC only by adding Cortes as a plaintiff.  *See id.* at 2 (time entry for September 24, 2019, in which Qu billed 0.7 hours for "Draft/revise Second Amendmed [*sic*] Complaint"; time entry for September 30, 2019, in which Qu billed 2.2 hours for "Other Written Motions and Submissions : move to amend complaint"), 3 (time entry for October 9, 2019, in which Qu billed 0.2 hours for "Other Written Motions and Submissions file second amended complaint").  Third, plaintiffs' counsel seeks to recover for time spent representing Cortes in, apparently, his desire to sue another purported employer.  *See id.* at 10 (time entry for March 29, 2021, in which Yanes billed 0.2 hours for "Phone call from Manuel [Cortes] will come during the next week to sue another company and explain about Settlement Conference date").  Fourth, plaintiffs seek to recover for several other assorted time entries associated with Cortes.  *See, e.g.*, *id.* at 13 (time entry from April 1, 2021, in which Zhu billed 0.8 hours for "draft Manuel's affidavit 01044").

***Work on baseless case against Herrera***.  Plaintiffs' counsel also seeks to recover for time associated with their claims against Herrera.  It is unclear how much such time was devoted

to this, because Herrera's name, curiously, does not appear in plaintiffs' time records.
Nonetheless, Zhu billed 2.9 hours on January 11, 2022, on which Herrera alone was deposed, for
"Conducting deposition." And plaintiffs presumably spent other time formulating their claims
against her, preparing to depose her, and preparing for and taking her trial testimony. The jury,
however, found that Herrera never employed either plaintiff, so that she cannot be liable under
either the FLSA or the NYLL. And ultimately, plaintiffs did not adduce any competent evidence
on which a reasonable jury could have found Herrera to have been an employer, or even
seriously argue such in summation, such that the Court would have been obliged to set aside a
verdict finding Herrera to have been an employer. Grinberg notes that, although plaintiffs'
counsel represented that they would exclude all time and costs related to Herrera from their fee
application, they have demonstrably not done so, as reflected in their bid for an award reflecting
Zhu's time on January 12, 2022. Opp. at 5–6. Grinberg thus seeks to exclude the hours billed
for Herrera's deposition and an across-the-board reduction reflecting plaintiffs' pursuit of this
baseless claim.

     ***Defaulting corporate defendants***. Plaintiffs' counsel also seeks to recover from
Grinberg for about 62 hours of work on claims against the defaulting corporate defendants.
These include preparing the motion for default judgment against them and related filings, and
correspondence with clients about these filings.[17]

---

[17] *See, e.g.*, Billing Records at 9 (time entry for February 12, 2021 in which Zhu billed 0.6 hours
for "Drafted Pre-motion letter & status report re: motion to strike and default."), 12–13 (time
entries for March 31, 2021, in which Zhu and Yanes each billed 1.2 hours for discussing with
each other "regarding Mario and Ricardo's affirmation" (Yanes) or "re: factual information for
default motion" (Zhu)), 14 (time entries for April 10, 2021, in which Zhu billed 4.6 hours for
"Drafting & finalizing Default motion re: damage cal. base on time card," 3.4 hours for
"Drafting and finalizing att. aff. for default motion," and 3.6 hours for "Drafting & finalizing
default motion re: MOL"), 15 (time entry for April 17, 2021, in which Zhu billed 6.9 hours for

***New plaintiff***.  Plaintiffs' counsel also seeks to recover at least 0.4 hours for their efforts to recruit a new plaintiff.  *See* Billing Records at 10 (time entry for March 12, 2021, in which Zhu billed 0.1 hours for "In-firm disc. with MY re: new plaintiff and time entries for March 15, 2021, in which Yanes billed 0.2 hours for "email to SZ and HJ regarding potential plaintiff (Ricardo's friend)" and 0.1 hours for "phone call with Ricardo regarding potential plaintiff").

       *b.*     *Analysis*

Grinberg argues that plaintiffs' counsel's fee requests, to the extent based on the above workstreams, are out-of-bounds.  The Court agrees.  The Court will not base a fee award for any time entries to the extent that they do not relate to this lawsuit—including Cortes's state-court lawsuit and plaintiffs' potential suit against another entity.  *See Hensley*, 461 U.S. at 435.  Nor will the Court order Grinberg to compensate plaintiffs' counsel for entries that pertain to the litigation of Cortes's claims, or claims against Herrera.  Even putting aside technical deficiencies in these billing entries—which are woefully unspecific and apparently duplicative, as reviewed *infra*—plaintiffs' counsel failed to achieve success on such claims, and did not come remotely close.  Finally, as to the time entries reflecting counsels' work against the defaulting corporate defendants, any fee award encompassing such work would run against those entities, not Grinberg, and is to be sought, if at all, in connection with the future inquest on plaintiffs' default judgment motion against those entities.

Plaintiffs do not argue otherwise.  Indeed, they do not make any argument why a fee award *against Grinberg* for any of the above categories of work could be justified.  *See* Mot. at

---

"Revised default motion & finalized default motion & Client affs."), 16 (time entry for April 20, 2021, in which Hang billed 1.1 hours for "review and revise default judgment motion"), 17 (time entry for April 23, 2021, in which Zhu billed 1.9 hours for "research re: rule 41(b) standard" and time entries for June 3, 2021, in which Zhu billed 2.6 hours for "Research re: inquest by aff." and 3.9 hours for "Drafted ltr. response to Court order re: inquest by aff.").

4.  Accordingly, the Court will disregard here any hours that plaintiffs' counsel incurred on Cortes's claims, on claims against Herrera, on claims as against the defaulting corporate defendants, or on pursuing a potential additional plaintiff. *See, e.g.*, *Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 516–17 (S.D.N.Y. 2010) (declining to award fees and costs for five of seven plaintiffs who did not prevail and making a "substantial reduction . . . for lack of success": "Plaintiffs have not cited any authority for the proposition that in a multi-plaintiff case, where some plaintiffs succeed and some fail, counsel may be compensated for the time spent prosecuting the unsuccessful plaintiffs' claims"), *on reconsideration in part*, No. 06 Civ. 593 (DC), 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010); *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 390 (S.D.N.Y. 2000) ("unfair" to require City defendants to pay fees for work performed solely in relation to plaintiffs' claims against State defendants, and considering such in reducing fee request).

### 2.    Unsuccessful or Unfiled Motions and Court-Ordered Filings

Next, the Court considers plaintiffs' counsel's time spent on an unfiled motion, on an unsuccessful motion, and in responding to Court orders directing plaintiffs to make filings accounting for, or attempting to rectify, their earlier deficiencies.

### a.    *Requested fees*

***Unfiled motion***.  Plaintiffs' counsel seeks to recover for 8.8 hours spent on a motion to compel they never filed.  Grinberg explains that it was never filed because, as defense counsel explained to plaintiffs' counsel, the material that would have been sought was privileged.  Opp.

at 8.  Plaintiffs' counsel seeks to recover for time spent discussing, researching, and drafting that motion.[18]

   ***Unsuccessful motion***.  Plaintiffs' counsel also seeks to recover for 1.4 hours spent on an unsuccessful motion to reopen discovery.  On May 19, 2020, plaintiffs filed a motion before Judge Lehrburger to extend the time to complete discovery.  Dkt. 40.  On May 20, 2020, Judge Lehrburger denied it, noting that discovery had ended in January 2020 and describing the request to do so four months later as "far beyond the pale."  Dkt. 41.  Plaintiffs' counsel seeks to recover for time spent preparing the letter motion.  Billing Records at 3 (time entries for May 18, 2020, in which Zhu billed 0.3 hours for "Reviewed disc. extension history" and May 19, 2020, in which Zhu billed 1.1 hours for "Drafting ltr motion reopen [*sic*] disc.").

   ***Court-ordered declarations***.  As noted above, the Court on several occasions found it necessary to order plaintiffs' counsel to file declarations explaining their dilatory, neglectful, and careless approach to this case.  *See* Dkts. 50 (ordering partner(s) to file declaration explaining how failure to pursue discovery complied with professional obligations), 108 (ordering plaintiffs to file declaration explaining their failure to timely comply, "yet again," with a Court order, and explain "why the Court should not deny their motion for a default judgment based on untimeliness and dismiss the corporate defendants for failure to prosecute under Rule 41(b)"),

---

[18] *See, e.g.*, Billing Records at 30 (time entries for January 14, 2022, in which Qu billed 0.7 hours for "Discussions with SZ re discovery dispute at depositions," Zhu billed 0.7 hours for the same discussion and 0.8 hours for "Drafted ltr. re: discovery dispute & emailed to RQ," time entries for January 31, 2022, in which Zhu billed 0.3 hours for "R/R email2 [*sic*] from OC re: disc. issue," 0.6 hours for "Reviewed deposition transcripts re: dispute during deposition," and 0.4 hours for "Drafted ltr re: prep discovery discussion with OC"), 31 (time entries for February 3, 2022, in which Zhu billed 0.3 hours for "Reviewed email from OC re: privileged communication.  Forwarded the email to OA" and Alvarado billed 0.5 hours for "reviewed OC case law" and 0.8 hours for "research into 'underlying facts'"), 32 (time entry for February 8, 2022, in which Alvarado billed 2.3 hours for "research on privelege" [*sic*]).

171 (ordering counsel to file declaration explaining failure to secure interpreter a few days before trial, despite multiple directives to do so).  Plaintiffs' counsel unjustifiably seeks to have Grinberg compensate them for their work on such submissions, including 9.4 hours for their declaration related to the failure to take any discovery and 3.9 hours for declarations explaining late court submissions.  *See, e.g.*, Billing Records at 5 (time entry for December 23, 2020, in which Qu billed 3.4 hours for "Draft/revise affirmation pursuant to Court order"), 6 (time entry for December 24, 2020, in which Zhu billed 0.8 hours for "Emailed GQ re: more facts regarding efforts made by us.  Check email correspondence with OC re: disc. efforts"), 7 (time entry for December 29, 2020, in which Qu billed 2.4 hours for "Draft/revise affidavit" and time entry for December 30, 2020, in which Zhu billed 0.6 hours for "Drafted & filed motion to amend Exh. A. of JH aff."), 17 (time entries for April 23, 2021, in which Zhu billed 2.8 hours for "Drafted aff. in respose [*sic*] to Court April 22 order" and 101 hours for "Finalized Aff. in response to Court April 22 order & filed with Court ECF"), 38 (time entry for May 12, 2022, in which Zhu billed 0.4 hours for "Drafted decl. re: response to court order re: interpreter").

> b.    *Analysis*

As to plaintiffs' unfiled and unsuccessful motions, Grinberg argues that an award should not encompass plaintiffs' work on these workstreams.  Courts do not, as a matter of course, decline to award fees based on unsuccessful or unfiled motions.  *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) ("[A] court should not disallow fees for every motion that a prevailing party did not win."); *HomeAway.com, Inc. v. City of New York*, No. 18 Civ. 7742 (PAE), 2021 WL 791232 (S.D.N.Y. Mar. 1, 2021) (finding it proper to award reasonable fees "preparing a non-frivolous motion that was not ultimately filed where its adversary should have been . . . aware that the party was working on the motion").

Here, however, plaintiffs have not shown that the unfiled or unsuccessful motions were non-frivolous or served to productively advance the litigation. Nor, in fact, do they defend an award based on such work. *See* Mot. at 4. The Court, therefore, will not require Grinberg to bear such costs. *See, e.g.*, *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 427 (2d Cir. 1999) (no abuse of discretion in court's denial of fees for "time spent on Quaratino's unsuccessful motion for a new trial"); *Rozell*, 576 F. Supp. 2d at 538 (declining to award fees for "unjustified" tasks, including motions that were filed and then withdrawn); *Alvarez v. Haywood*, No. 06 Civ. 745 (FJS) (DRH), 2011 WL 13130851, at *11 (N.D.N.Y. Aug. 29, 2011) (no evidence "to support the proposition that Plaintiff's unfiled motion . . . advanced the instant litigation," and declining to award fees for such time).

As to the submissions the Court required plaintiffs' counsel to make to explain or rectify their repeated missteps, the Court will not shift these costs of plaintiffs' shoddy legal practices onto their adversary. No reasonable client would pay for such fees, which are the product of plaintiffs' counsels' indolence, sloppiness, and/or unprofessionalism. Grinberg should not bear them, either. *See, e.g.*, *Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (emphasis in original) (citation omitted); *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to *the value of the work product of the specific expenditures to the client's case*.") (emphasis added).

### 3.    Compensable Hours—Prior to an Across-the-Board Reduction

In light of the discussion above, the Court has reduced plaintiffs' claimed hours by striking the hours (1) worked by timekeepers other than Hang, Zhu, Qu, or Alvarado, or (2) demonstrably incurred in the service of projects or with workstreams for which the Court has

found a fee award payable by Grinberg inappropriate.  These reduce the Hang firm's overall reasonably claimed hours from 566.1 to 343, as reflected in the following chart.

| Timekeeper | Reasonable Total Hours | Reasonable Hourly Rate | Presumptively Reasonable Fee |
|---|---|---|---|
| Jian Hang | 13 | $150 | $1,950 |
| Shan Zhu | 222.6 | $150 | $33,390 |
| Ge Qu | 55.7 | $150 | $8,355 |
| Oscar Alvarado | 51.7 | $150 | $7,755 |
| **Totals** | 343 | | **$51,450** |

However, as noted, because plaintiffs' counsels' time entries generally are unspecific and unrevealing, the reductions the Court has made, in its assessment, do not reduce (or come close to reducing) the hours claimed so as to eliminate work attributable to such projects.  The Court considers the need for a further reduction in the course of the next stage in its analysis—the amount of an appropriate across-the-board reduction in plaintiffs' proposed fee award.

### C.    Assessing the Overall Reasonable Fee Award

Having determined the presumptively reasonable fee, the Court now determines whether—and to what extent—across-the-board reductions are necessary to the claimed fee award.  As noted, "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (citing *Kassim*, 415 F.3d at 254; *Pino v. Locascio*, 101 F.3d 235, 237–38 (2d Cir. 1996)).  But, where "there are problems with billing records," including vague entries and block-billing, *Ortiz v. City of New York*, 843 F. App'x 355, 360 (2d Cir. 2021) (summary order), the Second Circuit has determined that "an across-the-board percentage cut[] in hours [is] a practical means of trimming fat from a fee application," *see In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (cleaned up); *New York State Ass'n for*

*Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) ("it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application" where there are "voluminous fee applications").

For multiple reasons, the Court finds a sizable across-the-board reduction warranted here, at the upper end of the reductions reported in the case law. Some reasons are covered above, to wit, for work on non-compensable projects to the extent that work thereon cannot be identified via examination of specific time entries. Beyond that, plaintiffs' counsels' advocacy was so consistently wanting, counsels' success relative to their sweeping claims so paltry, counsels' inattention to basic obligations to the Court and their clients so stark and disappointing, and counsels' billing records so difficult to parse and so rife with abuse and deficiencies that the Court finds a quite substantial across-the-board reduction necessary.

### 1.    Plaintiffs' Limited and Lack of Success

On the most important factor determining the reasonableness of a fee award, plaintiffs' success, counsel fell far short.

Before trial, Cortes's federal claims were dismissed as time barred—a conclusion plaintiffs did not and could not resist.

As to Cajero Torres and Bautista, plaintiffs pursued through trial a grab-bag of claims, despite the lack of support for almost all of them. At trial, plaintiffs lost on their most sweeping claim—of a failure to pay the minimum wage throughout plaintiffs' employment (spanning 2016–2019 for Cajero Torres and 2018–2019 for Bautista). As defendants' detailed time records, which the jury fully credited but which plaintiffs' counsel baselessly pooh-poohed demonstrated, plaintiffs had been paid the minimum wage. Plaintiffs did not adduce any serious evidence to the contrary.

At trial, plaintiffs also failed to prove, or adduce competent evidence, that Herrera was their employer.  There was, in fact, no evidence of that.  Yet plaintiffs persisted in that claim, before and during trial, even after defendants called them on the absence of evidence.  The jury also rejected plaintiffs' baseless claims of records violations, and of having made uncompensated expenditures for tools of the trade.  And as to the two claims on which plaintiffs prevailed, involving a technical miscalculation of the overtime pay rate and failure to pay spread of hours pay, plaintiffs failed to prove that they were entitled to liquidated damages, because the jury found that Grinberg had acted in good faith.

Before trial, plaintiffs' counsel had sought a total of $591,945.78 in damages on their claims, including Cortes's, dominantly based on the assertion of minimum wage violations.[19] Following trial, plaintiffs now seek—although it took a Court reminder that they had a duty on their clients' behalf to seek a damages award, and not merely a fee award for themselves—a total of $7,238.85 in damages, including an award of pre-judgment interest.  Dkt. 196 ¶ 4.  Plaintiffs' counsel thus have garnered 1.2% of the damages they sought.  *See* Opp. at 17.  Even eliminating the claims against Cortes, the timely NYLL-based subset of claims which plaintiffs remain at liberty to pursue in state court, plaintiffs have succeeded in attaining only 1.5% of the damages they sought on behalf of Cajero Torres and Bautista.[20]

Plaintiffs' claim to have succeeded on the two narrow claims on which they prevailed is rightly further discounted because liability on these claims was effectively undisputed.  It was

---

[19] This demand appears in plaintiffs' application for a default judgment against the corporate defendants, based on the same claims pursued against the individual defendants.  Dkt. 104 ¶ 63.

[20] Although plaintiffs' damages calculations submitted in support of the damages inquest for the defaulting corporate clients are not pellucid, on the Court's review, approximately $475,592.80 is the total damages plaintiffs sought for Cajero Torres and Bautista.  *See* Dkt. 104, Ex. 6.

dictated mathematically by Sushi Sushi's business records, to whose accuracy Grinberg testified

in his deposition and at trial, which were detailed and demonstrably comprehensive, and which

plaintiffs' counsel did not make a serious attempt to undermine.  And at trial, Grinberg conceded,

in his direct testimony, that he had errantly calculated overtime wages by subtracting the tip

credit from the regular hourly wage *before* multiplying the regular hourly wage by 1.5.  He also

acknowledged failing to pay Cajero Torres and Bautista spread-of-hours pay.  Tr. at 369, 397.

The detailed time records did not reflect that Grinberg paid Cajero Torres and Bautista spread of

hours.  And it was *defendants*' summary charts of the business records—not evidence adduced or

prepared by plaintiffs' counsel—that made it easy for the jury to calculate the extent of

defendants' underpayment of overtime to Cajero Torres and Bautista and the number of days on

which each had been entitled to spread of hours pay.  *See* DX-29–32.  Plaintiffs' counsel's

success in establishing these discrete violations—as to both of which the jury found Grinberg to

have acted in good faith—thus was not achieved in the face of a high degree of difficulty.  Quite

the contrary, any jury, applying the Court's clear instructions as to the overtime pay rate and the

duty to pay spread of hours wages, to Sushi Sushi's business records, would have had to find

these violations and consequent damages.

     Plaintiffs' counsel's success here should thus be viewed as uncommonly limited.[21]

Measured by their own sweeping claims and audacious demands, counsel fell far, far short of

---

[21] Trial was also unnecessary to achieve relief on these claims.  Defendants repeatedly sought to settle the case, long before, shortly before, and during trial.  They informally furnished Sushi Sushi's wage and hour records to plaintiffs' counsel long before trial, in the absence of a discovery demand from plaintiffs' counsel, in an effort to bring about settlement.  During trial, in a sealed discussion between the Court and counsel, defense counsel credibly proffered that Grinberg and Herrera had offered *several times* the amount of the ultimate judgment to settle, but plaintiffs, apparently desirous of a large fee-and-cost recovery, rejected this offer.  To be sure, in the Rule 68 context, the Second Circuit has stated that, "[a]bsent a showing of bad faith, a party's

establishing their goals.  And for the reasons chronicled, and as the record (pretrial and trial) reflects, plaintiffs' counsels' lawyering in support of these claims was anemic.  Counsel forewent all discovery during the discovery period; took discovery only after defendants' pro bono counsel asked that discovery be reopened; repeatedly missed deadlines; provoked the Court's ire for their inattention to detail and to their clients' interests; were ineffective in their jury addresses and witness examinations; and, after trial, put in a jaw-dropping demand for fees that outstripped by 20 times their clients' recovery while neglecting to seek a damages award for their clients.[22]

On the most important factor, the success achieved for their clients, plaintiffs' counsel's fee demand must be subject to a weighty reduction, for reasons both quantitative and qualitative. *See, e.g.*, *Barfield*, 537 F.3d at 152–53 (describing the district court as having "got[ten] it exactly right" by reducing fees by 50% where plaintiff's "primary aim" was collective action certification, which failed, and "the reasonableness of the attorney's fees incurred linked directly

_____

declining settlement offers should not operate to reduce an otherwise appropriate fee award." *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992) (cleaned up).  However, "courts have reduced fee awards where plaintiffs unreasonably rejected settlement offers and eventually obtained relief which they could have gotten by settling earlier."  *Marisol A.*, 111 F. Supp. 2d at 398.  Here, every indication is that plaintiffs could have achieved *significantly* more relief had they settled, or that they could have achieved the same relief at a far earlier stage while expending far fewer hours.  Therefore, although the Court does not rely upon the settlement dynamics as an independent reason to reduce the fees, these reinforce the assessment that plaintiffs' counsel achieved limited actual success.

[22] Mindful of the Second Circuit's directive that there is no proportionality requirement in FLSA cases, *see Fisher v. SD Prot., Inc.*, 948 F.3d 593, 605 (2d Cir. 2020), the Court's analysis of the appropriate fee does not turn on the disproportion between plaintiffs' monetary recovery and the fees counsel seek.  Had plaintiffs' counsel reasonably worked heavy hours to achieve success on low-damages claims, the Court would not have hesitated to approve a fee award well outstripping the client recovery.  Where appropriate, this Court, like others, has awarded substantial fees even when the damages recovery was relatively modest.  *See, e.g.*, *Arroyo v. J & M Realty Servs. Corp.*, No. 21 Civ. 3611 (PAE) (JLC), 2022 WL 595936, at *1 (S.D.N.Y. Feb. 28, 2022) (awarding 40% of settlement award as fees); *Lee v. Santiago*, No. 12 Civ. 2558 (PAE) (DF), 2013 WL 4830951, at *14–15 (S.D.N.Y. Sept. 10, 2013) (where plaintiff accepted $7,501 offer of judgment, awarding $40,035 in attorneys' fees).

to the ability to maintain the case as an FLSA collective action"); *Jianmin Jin v. Shanghai Original*, No. 16 Civ. 5633 (ARR), 2020 WL 4783399, at *8 (E.D.N.Y. Aug. 18, 2020) (reducing fees 20% "to account for the firm's limited success in certifying collective actions," because of a plaintiff whose claims were dismissed, and because class had to be decertified due to inadequate representation); *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 660–62 (S.D.N.Y. 2019) (where "[i]t is impossible to say with any precision how much of the time spent by [plaintiffs' counsel] was devoted to the prevailing Plaintiffs . . . how much of the time spent by those attorneys was devoted to claims that the prevailing Plaintiffs lost . . . [and] it is difficult to quantify the number of 'excessive' hours,'" reducing fees by 66% for two attorneys and 70% for a third); *Sanchez v. I&A Rest. Corp.*, No. 14 Civ. 726 (DF), 2017 WL 2537814, at *6 (S.D.N.Y. May 22, 2017) (reducing fees "to account for Plaintiff's limited success"); *Dajbabic v. Rick's Cafe*, 995 F. Supp. 2d 210, 212–13 (E.D.N.Y. 2014) ("Through the enactment of fee-shifting provisions [including FLSA], Congress intended to ensure that plaintiffs be able to secure competent counsel.  Congress's intent was decidedly not, however, to create an incentive for counsel to prioritize their interests above those of their clients and to submit exaggerated or overblown requests for fees.  Thus, while plaintiff's counsel here may, in fact, have achieved some success for his client, such success must be considered in light of counsel's unwavering focus on his own fees.") (citation omitted); *Lucerne Textiles, Inc. v. H.C.T. Textiles Co.*, No. 12 Civ. 5456 (KMW) (AJP), 2013 WL 174226, at *8 (S.D.N.Y. Jan. 17, 2013) ("[A] reduction is warranted where the hours billed are disproportionate to the quantity or quality of the attorneys' work.") (collecting cases), *report and recommendation adopted*, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013); *Harris v. Fairweather*, No. 11 Civ. 2152 (PKC) (AJP), 2012 WL 3956801, at *8 (S.D.N.Y. Sept. 10, 2012) ("The documents that counsel submitted . . . were mediocre, included

numerous errors, and failed to cite to authority for much of the relief requested.  The poor quality

of counsel's work justifies a reduction in the fee award."), *report and recommendation adopted*,

2012 WL 5199250 (S.D.N.Y. Oct. 19, 2012); *Hardaway v. Ridgewood Corp.*, 706 F. Supp. 2d

436, 442 (S.D.N.Y. 2010) (reducing fees by 25% where, *inter alia*, "one of the facts that Plaintiff

learned during discovery . . . could have been discovered more efficiently than through

litigation" and plaintiff "achieved his primary aim in a formalistic sense (he received money),

[but] he did not achieve it in a substantive sense (he did not receive much) . . . he achieved no

injunctive or other non-monetary relief").

### 2.      Administrative Work Billed by Attorneys

Separately, plaintiffs' billing records are rife with entries that, where it is even possible to

isolate the nature of the work involved, describe administrative work.[23]  As the Second Circuit

has recognized, "district courts have the legal authority and discretion to either reduce an

attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction to

the hours billed or total fee award to account for time spent on clerical tasks (or block-billed time

entries reflecting a mix of clerical and legal work)."  *Lilly v. City of New York*, 934 F.3d 222, 234

(2d Cir. 2019).

Here, Grinberg argues that the Court should eliminate *in toto* the hours spent on

administrative work.  Although that request is understandable, the Court, on the premise that a

limited degree of administrative work was warranted, finds the proper remedy instead to be an

across-the-board reduction.  Plaintiffs' counsel billed for reading, *see, e.g.*, Billing Records at 1

(time entry for June 19, 2019, in which Qu billed 0.4 hours for "Review/analyze affidavits of

---

[23] As Grinberg notes, due to the billing records' deficiencies, he cannot determine—and nor can
the Court—whether the work captured was substantive/legal or administrative.  Opp. at 6 n.7.
The vagueness of counsels' records is a separate basis for an across-the-board fee reduction, as
discussed *infra*.

service"), 32 (time entry for February 8, 2022, in which Alvarado billed 0.1 hours for "r/r court email re: trial date adjourned this quarter"), for reviewing scheduling emails and marking the time on their calendars, *see id.* at 7 (time entry for December 30, 2020, in which Zhu billed 0.3 hours for "R/R emails from OC and the Court re: settlement conference.  Marked on clendar [*sic*]"), 33 (time entry for April 5, 2022, in which Zhu billed 0.2 hours for "Reviewed court notice re: trial day marked calendar"), for word processing, and other tasks lacking legal or substantive character, *see id.* at 16 (time entry from April 21, 2021, in which Zhu billed 1.9 hours for "Created table of content [*sic*] & table of authority."), 31–32 (time entries from February 8, 2022, in which Alvarado billed 0.2 hours for "scanned remaining relevant Notebook page," another 0.3 hours for "taking pictures of receipts," and another 0.3 hours for "saving pictures"). Counsel billed at full lawyers' rates for time spent preparing administratively for trial, in a manner suggesting that counsel served as their own paralegals.  *See, e.g.*, *id.* at 36 (time entries for May 5, 2022 in which Zhu billed 0.3 hours for "Phone conference with MY re: exhibits and transcript," another 0.1 for "Phone conference with MY re: transcript and mailing instruction," and another 0.5 hours for "Phone conference with MY re: deposition and trial exhibits prep."), 38 (time entries for May 10, 2022, in which Alvarado billed 0.5 hours for "dropped off Deposition transcripts," and Zhu billed 0.5 hours for "Tech walk through with the Court"), 39 (time entries for May 16, 2022, in which Alvarado billed 0.2 hours for "sent Mario Bautista adress [*sic*] for trial" and May 18, 2022, in which Alvarado billed 0.1 hours for "sent text in morning to clients reminding them of trial time"), 40 (time entries from May 18, 2022, in which Zhu billed 0.3 hours for "called and emailed interpreter re: arrange phone conference with

Clients" and May 20, 2022, in which Zhu billed 0.5 hours for "Arrange interpreter for the conference.").[24]

The pervasive nature of such entries favors a substantial across-the-board reduction. *See, e.g.*, *Ortiz*, 843 F. App'x at 360; *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 509 (S.D.N.Y. 2012) ("tak[ing] issue with" "administrative tasks performed by attorneys (*e.g.*, assembling and binding motion papers creating tables of contents and authorities, and uploading scanned materials to ECF" and reducing fees accordingly); *E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 433 (S.D.N.Y. 2011) (reducing fee where attorneys performed a significant amount of administrative work), *aff'd sub nom. E.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist.*, 487 F. App'x 619 (2d Cir. 2012) (summary order); *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) ("BWP should not be compensated for the time that Ms. Duguay spent executing purely clerical tasks[.]"); *Siegel v. Bloomberg L.P.*, No. 13 Civ. 1351 (DF), 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016) ("With respect to tasks that are 'purely clerical,' such as downloading, scanning, or copying documents and organizing files, such work is generally not compensable, whether performed by an attorney or a paralegal."); *see also Garcia-Severino v. TDL Restoration, Inc.*, No. 18 Civ. 11401 (CS), 2020 WL 7239678, at *4 (S.D.N.Y. Dec. 9, 2020) (where administrative work was block-billed, erring in defendants' favor and assuming "that the administrative work consumed as much of the block as it realistically could have").

---

[24] Grinberg points to Yanes's entries as the worst offenders on this front. Opp. at 7 (citing, for example, Billing Records at 14 (time entry from April 12, 2021, in which Yanes billed 0.1 hour for, "Receive clients in reception and provide restroom's password"), 19 (time entry from July 8, 2021, in which Yanes billed 0.1 hours for "add phone numbers to merge phone calls between clients and me from my cell phone")). That critique is on the mark. But the Court has already struck Yanes's time entries in their entirety and thus focuses this discussion on the remaining four timekeepers.

### 3.      Overstaffing or Duplicative Work

"While the use of multiple attorneys is not unreasonable *per se*, courts should reduce the

hours actually expended to account for duplicative or repetitive work." *LV v. New York City*

*Dep't of Educ.*, 700 F. Supp. 2d 510, 524 (S.D.N.Y. 2010) (cleaned up).  Here, Grinberg points

to demonstrated episodes of overstaffing or unnecessary, duplicative work.  Qu, for example,

billed 37.3 hours for time spent preparing for, traveling to, and attending trial.  But he did not

participate in any aspect of trial—rather, he merely supervised Zhu, and, based on the Court's

observations, did literally nothing to intervene or assist at trial, even when the trial-inexperienced

Zhu was flailing.  *See* Opp. at 12.  Alvarado, for his part, billed 10 hours for traveling to and

attending the trial's first day, and 6.9 hours for attending the May 3, 2022, final pretrial

conference.  But he was immobile in the Court's presence, and plaintiffs' counsel have not

explained any contribution his presence made to plaintiffs' case.  *See id.* at 12–13.  He also

appeared to the Court during the final pretrial conference somnolent—to the point of periodically

dozing off at counsel table.  Similarly, Alvarado billed 12.4 hours for preparing for and attending

Cajero Torres's deposition.  But he did not defend that deposition, the transcript of the deposition

does not reveal any consequential contribution he made to it, and plaintiffs have not explained

what utility his presence served at the deposition.  *Id.* at 13.  Finally, Grinberg notes that name

partner Hang billed a handful of hours to the case across 127 different time entries.  *Id.*  All but

four of these tasks involve reviewing court filings or emails.  *See, e.g.*, Billing Records at 17

(time entries for April 23, 2021, in which Hang billed 0.1 hours for "review court filing," April

26, 2021, when Hang similarly billed 0.1 hours for "review court filing," and May 4, 2021, in

which Hang billed 0.1 hours to "address phone call issue").  It is not clear what, if any, practical

37

good that did other than enabling Hang to claim in a fee application to have worked on the case.[25]

The Court agrees with Grinberg that these deficiencies favor a substantial percentage reduction in the fee application, as they are indicative of persistent and egregious overbilling. Based on its experience with the case, no attorney substantively participated in this case except for Zhu, an inexperienced lawyer trying his first case effectively without supervision.  On these circumstances, a fee award that would make Grinberg pay for the time at proceedings at which other attorneys (like Qu and Alvarado) were physically present but inert, or for the non-substantive and opaque review of records by senior attorneys like Hang, would be unreasonable. *See Luciano*, 109 F.3d at 117 ("it was within the purview of the [district] court's discretion to determine whether or not the actual time expended by an additional attorney was reasonable"); *Marisol A.*, 111 F. Supp. 2d at 395–96 (taking staffing into account in reducing plaintiffs' fees); *Siegel*, 2016 WL 1211849, at *12 (agreeing that time entries reflected duplicative billing with respect to court conferences "by billing for the time of two or more attorneys when tasks could have been accomplished by one" and reducing hours); *cf. United States ex rel. Yasti v. Nagan Constr.*, No. 17 Civ. 7163 (AT), 2021 WL 1063437, at *5 (S.D.N.Y. Mar. 18, 2021) (noting that "multiple attorneys may be necessary at critical points in a litigation, or where each made a distinct contribution").

### 4.    Vagueness of Billing Entries

Counsel are "not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time

---

[25] Hang's time spent preparing a court-ordered declaration explaining his firm's failure to take discovery self-evidently would not be properly compensable by the defense.  However, the Billing Records do not explicitly reflect time on this declaration.  *See* Billing Records at 7.

expenditures." *Hensley*, 461 U.S. at 437 n.12. "If the time records lack such specificity that the court is unable to determine a proper fee allocation, then plaintiffs' fee recovery may be reduced." *Marisol A.*, 111 F. Supp. 2d at 397. Here, the time entries of plaintiffs' counsel are frequently opaque, to the point where the Court cannot understand or meaningfully appraise the work that was done, let alone whether the time claimed to have been expended on it was reasonable.

A significant percentage reduction in counsels' claimed fee is necessary to account for these deficiencies, which span all four timekeepers whose work remains under consideration. For example, Hang's entries— "review court filing", "review email from OC", or "review email from court" is his refrain—do not enable an independent assessment of whether Hang fruitfully spent such time. Alvarado's entries are similarly lacking. *See* Billing Records at 25 (time entries from December 29, 2021, in which Alvarado billed 0.1 for "rev'd email," 0.4 hours for "spoke tiwith [*sic*] MY and YL," 0.2 hours for "REVIEWD OC EMAIL" [*sic*]), 28 (time entry from January 3, 2022, in which Alvarado billed 0.2 hours to "spoke with client"), 34 (time entry for May 2, 2022, in which Alvarado billed 0.6 hours for "review file"), 38 (time entries for May 11, 2022, in which Alvarado billed 0.3 hours to "called clients" and 0.1 to "email to"), 39 (time entries for May 16, 2022, in which Alvarado billed 0.1 hours to "spoke w/ Mario Bautista," 0.2 hours to "call from Mario Bautista," 0.2 hours to "call," another 0.2 hours to "text," another 0.2 hours to "spoke w/ SZ," another 0.2 hours to "call w/ Ricardo," another 0.2 hours to "texted Ricardo," another 0.2 hours to "spoke w/ JH and SZ," and 0.1 hours for "SENT [*sic*] text to Manuel"). Zhu, lead counsel on this matter, has entries that consist of "R/R email from MY," *id.* at 13, "discuss with MY," *id.* at 14, and "Filed ltr response," *id.* at 17. And Qu, completing the quartet, has listed time entries for "Email to Anqi Yu Re: Sushi Sushi (1044)," *id.* at 2, "review

discovery status," *id.* at 3, "review files re discovery," *id.*, "review case files," *id.* at 5–6, "discussion" or "discussions" with "JH," *id.* at 6–7.

These time entries, "stated in the sparest of terms," "omit information about the subject matter of the work," and thus justify across-the-board reductions of hours. *See LV*, 700 F. Supp. 2d at 526 (collecting cases). A reduction on account of these shortcomings is clearly in order here, inasmuch as plaintiffs' counsel succeeded in only a small corner of claims, against only one defendant. And there is little or nothing in plaintiffs' time entries that is keyed to the two discrete wage infractions which were ultimately established. On these circumstances, the Court is left to guess at whether any of the thinly described work reflected in counsels' time records had any connection to plaintiffs' small areas of trial success. It is therefore necessary to make an across-the-board reduction in hours to avoid unfairly compensating plaintiffs' counsel, or unfairly docking Grinberg, for large swaths of work that—if spent at all—may been spent on wasteful projects in the service of frivolous, unsubstantiated or documentarily contradicted claims. *See, e.g., Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) ("[S]ome specificity is required in time entries to enable the court to determine whether a reasonable amount of time was spent on each activity, and to determine whether the particular activity is compensable. Thus courts commonly make percentage reductions for such entries[.]"); *Dajbabic*, 995 F. Supp. 2d at 214 (reducing fee award where "billing records are not sufficiently informative to allow a meaningful evaluation of their reasonableness").

### 5.   Other Improper Billing Practices and Inaccuracies

Finally, other improper billing practices and inaccuracies, to which Grinberg has rightly alerted the Court, support a significant across-the-board reduction.

First, there are strong indications that counsel billed excessive hours on certain tasks. For example, Zhu billed 1.9 hours to creating a table of contents and table of authority—which is not

only administrative work, but is also an automatic function in Microsoft Word.  Zhu also billed 2.4 hours to draft and review comments on a seven-sentence letter to the Court seeking an extension of time.  These troublesome entries fairly call into question whether the time counsel claimed to have worked on more substantive projects was similarly inflated.  *See Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 216 (E.D.N.Y. 2019); *Top Jet Enters., Ltd. v. Kulowiec*, No. 21 Misc. 789 (RA) (KHP), 2022 WL 1184245, at *5–6 (S.D.N.Y. Apr. 21, 2022) (reducing fee request by 75% where "not only was the billing patently excessive, but Plaintiff utterly failed to justify the expenditure of these hours, failed to provide complete information on the experience of the attorneys, and forced the Court to weed through hundreds of pages of materials wholly extraneous to the instant motion to ascertain the time spent on the motion to compel").

Second, there is a profusion of entries for one-tenth of an hour for tasks that are unlikely to have taken six minutes.  "Courts in this circuit have found that billing 0.1 hours for each brief, trivial task is an inflationary billing tactic that results in excessive billing."  *Smith v. City of New York*, No. 19 Civ. 6198 (KAM), 2022 WL 939711, at *9 (E.D.N.Y. Mar. 28, 2022) (collecting cases).  Here, Grinberg notes plaintiffs' counsel—through the aggregation of 0.1-hour time entries—billed more than 18 hours to reviewing court filings and correspondence, more than 16 hours to reviewing emails from the defense, and more than 42 hours in client communications.  Hang's entries supply good examples of this practice.  Over nearly three years, Hang billed for his review of nearly every docket entry in the case, always billing 0.1 hours for their review, and billed several hours for "review email from OC."  *See* Opp. at 14–15 (citing Billing Records).  *See, e.g.*, *Schoolcraft v. City of New York*, No. 10 Civ. 6005 (RWS), 2016 WL 4626568, at *13 (S.D.N.Y. Sept. 6, 2016) (describing "a long and excessively billed case" where counsel repeatedly billed 0.1 hour entries "for very brief, mundane tasks such as emailing a document, e-

filing, or receiving a . . . notification from the Court's [ECF] system"; "[t]his excessive specificity appears designed to inflate the total number of hours billed," resulting in "even greater unjustified fees than usual") (cleaned up), *modified on reconsideration*, 248 F. Supp. 3d 506 (S.D.N.Y. 2017); *Goode v. Vision Fin. Corp.*, No. 14 Civ. 4272 (SJ) (RER), 2015 WL 4629249, at *6 (E.D.N.Y. May 7, 2015) ("the requested hours are replete with multiple 0.1 hour entries for very brief tasks, such as emailing a document or interoffice directives," such that "the result is twelve minutes or more billed for communications that likely took one or two minutes, if not less"), *report and recommendation adopted*, 2015 WL 4634224 (E.D.N.Y. Aug. 3, 2015); *Dickey v. Allied Interstate, Inc.*, No. 12 Civ. 9359 (RJS), 2013 WL 4399212, at *2 (S.D.N.Y. Aug. 1, 2013) (reducing fees where, *inter alia*, "Plaintiff's highest-billing attorneys record multiple '0.1' and '0.2' hour entries for unspecified conference calls, internal emails, and review of mundane court notices"); *Barile v. Allied Interstate, Inc.*, No. 12 Civ. 916 (LAP) (DF), 2013 WL 795649, at *7 (S.D.N.Y. Jan. 30, 2013) (where firm "submitted extremely detailed time records, but that very detail often hides exaggeration and excess," including "multiple entries of '0.1 hour'—often several in one day"), *report and recommendation adopted*, 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013).

Third, other entries are demonstrably inaccurate, to the extent, Grinberg argues, that they "call into question the veracity of *all* time entries." Opp. at 15 (emphasis in original). He points to entries in which attorneys Alvarado and Liu billed 0.9 hours and 1.1 hours, respectively, for attending Bautista's deposition prep—whereas Bautista testified that he met with his counsel for only 10 or 15 minutes. *Id.* Attorney Qinyu Fan also claimed to have spent 0.8 hours reviewing defendants' discovery responses in January 2022—but defendants never served such responses. *Id.* Although these examples largely concern lawyers whose hours the Court has already struck

in their entirety, the existence of multiple dubious claims as to work calls into question the overall integrity and accuracy of the Hang firm's time records on this matter. *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (no abuse of discretion in reducing fees because of "vagueness, inconsistencies, and other deficiencies, in the billing record").

### 6.       Extent of the Across-the-Board Reduction

The Court has carefully considered, separately and together, the above factors, mindful of the Second Circuit's admonition that in the face of persistent shortcoming and irregularities, an across-the-board reduction is more sensible than either aggregating the individual time entries that survive attentive scrutiny or attempting to find and eliminate those that do not. Particularly in light of plaintiffs' counsel's marginal success, yielding a client recovery of $7,238.85; counsel's attempt to recover for projects that are non-compensable; counsel's substandard advocacy and disregard of their clients' interests; and counsel's persistently problematic, if not alarming, staffing and timekeeping practices, the Court will reduce the otherwise compensable fees requested by 90%. This leaves plaintiffs' counsel with a fee award of $5,145 in fees. *See, e.g.*, *Piccolo v. Top Shelf Prods., Inc.*, 541 F. Supp. 3d 256, 263 (E.D.N.Y. 2021) (reducing fee request by 90% "to account for the plaintiffs' limited success, the unnecessary work engendered by the unreasonable tactics consistently employed during the life of the litigation, and various billing issues on this application"); *Knoll v. Equinox Fitness Clubs*, No. 02 Civ. 9120 (SAS) (DFE), 2006 WL 2998754, at *3 (S.D.N.Y. Oct. 20, 2006) (granting 10% of fee request as to period where non-fee-related issues "eclipsed the [statutory fee] claims and were of paramount importance"); *Betancourt v. Giuliani*, 325 F. Supp. 2d 330, 335 (S.D.N.Y. 2004) (reducing fee request by 90% where successful claim "involved settled law and essentially uncontested facts . . . [i]n other words, Defendants essentially conceded the issue"); *Savino v. Computer Credit, Inc.*, 71 F. Supp. 2d 173, 175, 177 (E.D.N.Y. 1999) (where plaintiff's attorney submitted a fee request

for "roughly 187 hours spent in pursuit of the initial litigation," finding "that the lodestar

calculation should reflect an across-the-board reduction of the reasonable hours expended on this

case to a total of 20 hours," an approximately 90% reduction); *Amato v. City of Saratoga

Springs*, 991 F. Supp. 62, 66 (N.D.N.Y. 1998) ("Because the Court is faced with both an

unreasonably high request for hours and grossly inadequate specificity in the proffered billing

records, the Court is tempted to deny Mr. Brickman's request for attorneys' fees outright.

However, in light of the fact that some effort was evidently expended on behalf of his client, the

Court will reduce the number of hours claimed by 90%."); *West v. DOCCS*, No. 05 Civ. 447,

2018 WL 2901330, at *6 (W.D.N.Y. June 12, 2018) (reducing fees by 85% due to unaccepted

Rule 68 offer of judgment, limited degree of success, and to account for unsuccessful claims in

litigation); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14 Civ. 10234 (JGK) (JLC), 2016

WL 4704917, at *21 (S.D.N.Y. Sept. 8, 2016) (recommending that the court award only 20% of

fees because of boilerplate nature of pleadings and hours related to claims as against non-

defaulting defendants), *report and recommendation adopted*, 2016 WL 6879258 (S.D.N.Y. Nov.

21, 2016); *Days Inn Worldwide, Inc. v. Amar Hotels, Inc*., No. 05 Civ. 10100 (KMW) (KNF),

2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008) (reducing fee request by 75% where billing

record entries were vague, duplicative, the case was simple, and hours were not reasonably

necessary to resolve the case); *Dajbabic*, 995 F. Supp. 2d at 215 (reducing fees by about half

based on "detailed review of the bills and the docket sheet, [the court's] familiarity with the

proceedings in the case, and . . . conclusion . . . that plaintiff's counsel was motivated more by an

interest in his own fees than by achieving maximum efficiencies for his client").

     This Court is aware of the extent of this reduction relative to counsel's fee request.  But

that request was blatantly outsized, for the reasons reviewed above.  The Court will not allow its

assessment of the proper fee here to be influenced by a numerical anchor—plaintiffs' counsels' fee demand—that any objective observer would find preposterous.  From a different perspective, the Court notes, counsel's fee award of $5,145 represents 71% of the recovery that counsel's clients will receive pursuant to the jury's verdict—and more than 40% of the sum of the recovery and the fee award.

## IV.    Costs

Plaintiffs' counsel are also entitled to an award of costs.  "Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (cleaned up).  The requesting party must substantiate the request for costs.  *See Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6, 2017).  Such substantiation may be in the form of (1) entries on the Court's docket, (2) extrinsic proof, including an invoice or a receipt, or, ordinarily, (3) a sworn statement or declaration of expenses.  *See id.*; *Abel v. Town Sports Int'l LLC*, No. 09 Civ. 10388 (DF), 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 18, 2012).

Here, plaintiffs seek $10,125.55 in expenses, in the amounts below:

| Date | Description | Amount |
|---|---|---|
| January 27, 2022 | "deposition cost cost [*sic*] of Mr. Grinberg's deposition transcript (Bee reporting)" | $1,054.55 |
| January 27, 2022 | "filing fees" | $400 |
| January 27, 2022 | "process of services fees" | $57 |
| March 15, 2022 | "deposition cost $2,244.20 Deposition of Plaintiff Bautista (Veritext)" | $2,244.20 |
| March 15, 2022 | "deposition cost $1,269.80 Deposition of Plaintiff Torres (Veritext)" | $1,269.80 |
| May 18, 2022 | "translation fees" | $5,100 |

Grinberg argues that the costs should be reduced to $1,285.63, for several reasons.

A.      **Translation Fees**

First, Grinberg argues that the documentation the Hang firm has submitted in support of the costs for translation is insufficient.  In support, plaintiffs' counsel submitted a "Letter of Appointment" of Elizabeth Caruso and Vivian Goa, the court-certified translators in this case.  Li Decl., Ex. 2 at 7.  The letter lists fees of $800 a day for each of May 17, 18, and 19, 2022, for each interpreter, with additional fees for additional hours and overtime, and simultaneous interpreting equipment at $100 a day.  *Id.* at 7–8.  It states that the agreement "shall become effective once it is signed and dated by both parties," is signed by Ms. Caruso on behalf of herself and Ms. Goa, but it is not dated or signed by Zhu, whose signature line is blank.  *Id.* at 9. Plaintiffs' counsel also submitted an electronic verification of a money transfer indicating that, on May 12, 2022, $2,700 was sent to Caruso with the subject "sushi sushi trial translation fees retainer" from an account ending -3572, and that, also on May 12, 2022, $100 was sent to Vivian Goa from the same -3572 account with the subject "sushi sushi trail [*sic*] retainer $100 today, $2,300 tomorrow due to daily limit."  *Id.* at 10–12.[26]

These documents substantiate that $2,800 was sent to the translators.  It does not show that more money has been paid to the translators.  These documents also, critically, do not show that *plaintiffs' counsel* paid those expenses.  Other documentation contradicts counsel's assertion that the firm's business account ends in -3572.  *See* Billing Records at 11 (requesting wire payments to account ending in -6166 for balance as of March 29, 2021), 41 (requesting wire payments to account ending -7281 for balance as of May 27, 2022).  And plaintiffs' counsel has not submitted a sworn affidavit attesting to having paid these funds to the translator.

---

[26] Pages 10 and 11 appear to be duplicates of the same document.  *See* Li Decl., Ex. 2 at 10–11.

The documentation is therefore insufficient to support an award of costs to the firm for the translators. *See, e.g., Song v. 47 Old Country, Inc.*, No. 09 Civ. 5566 (LDW) (SIL), 2015 WL 10641286, at *7 (E.D.N.Y. Oct. 1, 2015) (declining to award $25,897.20 for interpreters where "[p]laintiffs fail to provide any substantiation, such as invoices or receipts, documenting the costs they now seek to recover" and noting that "a spreadsheet summarizing the costs allegedly incurred . . . is insufficient"), *report and recommendation adopted*, 2016 WL 1425811 (E.D.N.Y. Mar. 31, 2016); *Pastor v. Alice Cleaners, Inc.*, No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at *9 (S.D.N.Y. Nov. 21, 2017) ("[I]n the absence of supporting documentation, the Court will not award costs for the interpreters' fees."). This is, the Court notes, not the first time the Hang firm has been denied recovery for its claimed costs, including for interpreter expenses, for a failure of documentation. *See Piedra v. Ecua Rest., Inc.*, No. 17 Civ. 3316 (PKC) (CLP), 2018 WL 1136039, at *20 (E.D.N.Y. Jan. 31, 2018), *report and recommendation adopted*, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018)).

## B. Deposition Costs

Grinberg next argues that all three deposition costs should be reduced. First, plaintiffs have included $64.50 in exhibit production fees for Grinberg's deposition, but at the deposition, they used only copies of defendants' exhibits. Accordingly, his deposition cost should be only $990.05. Second, plaintiffs purchased real-time service ($622.50) and a rough draft ($497.50) of Bautista's deposition, but neither, Grinberg argues, was necessary. He therefore argues that the compensable costs for his deposition should be $1,124.20. Third, plaintiffs purchased Torres's deposition transcript the last day of trial ($1,269.80)—after it no longer could be useful or necessary.

"Deposition transcripts are recoverable as costs if parties reasonably expect to use them at trial." *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548 (GHD) (AJP), 2008 WL

4613752, at *17 (S.D.N.Y. Oct. 17, 2008). However, additional services, including rough drafts, are "rarely recoverable." *See id.* Here, the Court will not award costs for plaintiffs' production of defendants' own exhibits; the real-time costs or rough draft costs of Bautista's deposition; or Cajero Torres's deposition transcript, purchased on the eve of the trial's conclusion. Plaintiffs have not indicated, much less demonstrated that such costs were necessary, rather than excess, in any of these cases. And on the Court's own review of the record and observation of this case, they were not necessary, such that it is not reasonable to ask Grinberg to cover them. *See, e.g.*, *Farberware Licensing Co. LLC v. Meyer Mktg. Co.*, No. 09 Civ. 2570 (HB), 2009 WL 5173787, at *6 (S.D.N.Y. Dec. 30, 2009) ("[I]n attempting to tax the full invoice value of their deposition costs, Meyer has included untaxable costs including RealTime service, delivery, appearance fees, rough disks, and expedited service."), *aff'd*, 428 F. App'x 97 (2d Cir. 2011) (summary order); *AIG Glob. Sec. Lending Corp. v. Banc of Am. Sec. LLC*, No. 01 Civ. 11448 (JGK), 2011 WL 102715, at *2 (S.D.N.Y. Jan. 6, 2011) (denying request to include costs related to real-time transcripts because plaintiffs "failed . . . to establish that they were entitled to recover these costs. Specifically, they have failed to establish that realtime transcripts, the most expensive transcription option available, were necessary, as opposed to merely convenient or helpful, to the prosecution of their case").

### C.    Cost Reduction for Limited Success

Finally, Grinberg seeks a reduction in the costs he must bear because of plaintiffs' limited success on their claims. Several courts in this Circuit have taken this approach. *See, e.g.*, *Crowhurst v. Szczucki*, No. 16 Civ. 182 (BAF) (GWG), 2019 WL 6122645, at *12 (S.D.N.Y. Nov. 19, 2019), *report and recommendation adopted*, No. 16 Civ. 182 (JGK), 2020 WL 133509 (S.D.N.Y. Jan. 11, 2020); *Salustio v. 106 Colum. Deli Corp.*, No. 15 Civ. 6857 (GWG), 2017 WL 5714089, at *3 (S.D.N.Y. Nov. 27, 2017); *Dotson v. City of Syracuse*, No. 04 Civ. 1388

48

(NAM) (ATB), 2012 WL 4491095, at *9 (N.D.N.Y. Sept. 28, 2012) (reducing costs by 30% to reflect plaintiff's limited success), *aff'd*, 549 F. App'x 6 (2d Cir. 2013) (summary order).

    The Court agrees that, on the record here and informed by the Court's familiarity with the case, such a reduction is warranted.  Had plaintiffs' counsel early on sought and critically and dispassionately analyzed Sushi Sushi's wage and hour records, it would have immediately been apparent that Cajero Torres's and Bautista's claims of sweeping FLSA and NYLL violations—beyond the narrow ones the records established—were untenable.  Instead, plaintiffs' counsel bulled forward based on wide-ranging claims that the records made factually unsustainable and which did not otherwise find record support.  This effectively prevented the case from being resolved much earlier, on terms consistent with the ultimate verdict, and caused all parties to incur avoidable expenses, including the late-stage deposition expenses.  The Court accordingly will reduce, by 50%, the portion of plaintiffs' costs that Grinberg would otherwise be required to pay due to plaintiffs' counsel's obstinacy, willful ignorance, and legal ineptitude.  *See Kim v. Dial Serv. Int'l, Inc.*, No. 96 Civ. 3327 (DLC), 1997 WL 458783, at *20 (S.D.N.Y. Aug. 11, 1997) (reducing costs and fees by 35%), *aff'd*, 159 F.3d 1347 (2d Cir. 1998); *see also Semi-Tech Litig., LLC v. Bankers Tr. Co.*, No. 02 Civ. 0711 (LAK), 2006 WL 3690659, at *1 (S.D.N.Y. Dec. 14, 2006) (because most critical factor in attorneys' fees award is degree of success, "see[ing] no reason for a different result when the question is taxable costs").

    Plaintiffs are therefore entitled to the following amounts in costs.  These total $1,285.63.

| Date | Description | Amount Requested | Amount Awarded (and Justification) |
|------|-------------|------------------|-------------------------------------|
| January 27, 2022 | "deposition cost cost [*sic*] of Mr. Grinberg's deposition transcript (Bee reporting)" | $1,054.55 | $495.03 (-$64.50 in exhibit production fees, then 50% reduction) |
| January 27, 2022 | "filing fees" | $400 | $200 (50% reduction) |
| January 27, 2022 | "process of services fees" | $57 | $28.50 (50% reduction) |
| March 15, 2022 | "deposition cost $2,244.20 Deposition of Plaintiff Bautista (Veritext)" | $2,244.20 | $562.10 (-$622.50 in real-time and -$497.50 of rough draft costs, then 50% reduction) |
| March 15, 2022 | "deposition cost $1,269.80 Deposition of Plaintiff Torres (Veritext)" | $1,269.80 | $0 (not necessary on last day of trial) |
| May 18, 2022 | "translation fees" | $5,100 | $0 (insufficient documentation) |
| **Totals** | | **$10,125.55** | **$1,285.63** |

## CONCLUSION

The Court therefore awards $4,625.19 to Cajero Torres and $2,613.66 to Bautista in damages, and, to Hang & Associates, PLLC, $5,145 in fees and $1,285.63 in costs.

In light of plaintiffs' counsel's demonstrated lack of attention to their clients' interests during this case and counsels' monetary interest in recouping expenses that the Court has found not justifiably incurred on behalf of these clients, the Court seeks to assure that Cajero Torres and Bautista actually receive the recovery the jury has awarded. Accordingly, the Court intends that Grinberg (himself or through counsel) pay these sums to Cajero Torres and Bautista in a manner that does *not* involve plaintiffs' counsel taking custody of such funds.[27]

---

[27] The Court recognizes that the Hang firm's retainer agreements with Cajero Torres and Bautista state that: "Attorney will be reimbursed [for costs] out of the recovery before any distribution of fees to Attorney or any distribution to Client" and "Attorney will have a lien for Attorney's fees and costs . . . on all proceeds of any recovery obtained." *See* Dkt. 201-1 at 2; Dkt. 202-2 at 2. To the extent that these or any other provisions might be cited to justify the firm's invading the

The Court directs counsel for Grinberg to confer with plaintiffs' counsel and submit a letter to the Court by July 20, 2022, proposing a date and time at which Cajero Torres, Bautista, plaintiffs' counsel, and Grinberg's counsel may appear in Courtroom 1305 of the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, New York, 10007.  Grinberg's counsel shall bring checks in the amounts above.  The Court will then put the exchange of checks on the record.

Plaintiffs are also to file a letter within one week of this decision indicating whether they seek to pursue the inquest held in abeyance before Judge Lehrburger as against the corporate

---

recovery that the Court has found warranted for Cajero Torres and Bautista, the imperative of assuring recovery to the plaintiffs in this FLSA and NYLL case must overcome the firm's interest in recovering the fees and costs it expended that this Court has found unworthy of an award.  In cases under the FLSA, the Court serves the vital role in assuring the vindication of plaintiffs' statutory rights as to wages.  *Fisher*, 948 F.3d at 606 (recognizing that "FLSA rights cannot be abridged via contract"); *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 207 (2d Cir. 2015) ("[T]he FLSA is a uniquely protective statute. . . . [T]he need for such employee protections, even where the employees are represented by counsel, remains.").  The provisions of the retainer agreement that would enable the Hang firm to eat into—potentially entirely—their clients' recovery so as to enable the firm to recoup fees and costs must give way to the Court's assessment of reasonable fees and costs.  *See Li v. HLY Chinese Cuisine Inc.*, No. 18 Civ. 5077 (MMH), 2022 WL 1597302, at *7 n.7, *8 (E.D.N.Y. Mar. 31, 2022) (reducing costs where retainer agreement, as here, provided for reimbursement out of the recovery before any distribution of fees but costs were unsubstantiated); *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 230–31 (S.D.N.Y. 2016) ("While counsel's retainer agreement with the prevailing plaintiff may certainly be considered in assessing the reasonableness of the allocation of the proposed settlement corpus, in the end, it remains the Court's authority under § 216(b) of the FLSA to determine whether the proposed fee is a 'reasonable attorney's fee.'"); *Cuevas v. Our Child. First, Inc.*, No. 19 Civ. 7322 (SDA), 2019 WL 7815619, at *1 (S.D.N.Y. Dec. 4, 2019) ("[W]hen a district court considers the reasonableness of a FLSA settlement, the Retainer Agreement is not 'immune from scrutiny' nor can the parties impede on 'the Court's vital role under the FLSA as independent arbiter of a settlement's fairness, including assuring that its legal-fee component is free from over-reaching.'") (quoting *Gurung*, 226 F. Supp. 3d at 231); *Tapia v. Lira*, No. 18 Civ. 10771 (AEK), 2021 WL 5086300, at *4 (S.D.N.Y. Nov. 2, 2021) (directing parties to revise settlement agreement to "remove any language that may be read to preclude judicial oversight of the amount allocated to attorneys' fees, or that binds Plaintiffs to paying their counsel in accordance with his retainer agreement regardless of any judicial determination with respect to a reasonable fee").

defendants.  If so, Judge Lehrburger will enter an appropriate order as to how to proceed.  The Court expects that, in tabulating damages in the course of any inquest, Judge Lehrburger will give due attention to the jury's verdict in this case.  It provides a far more reliable measure of the vitality of plaintiffs' claims, and the damages therein, than do plaintiffs' stated claims in their complaints.  If plaintiffs' counsel do not affirmatively indicate an interest in pursuing the inquest, the Court will enter an order terminating plaintiffs' claims against the corporate defendants, and will close this case.

The Clerk of the Court is respectfully directed to close the motions pending at dockets 189 and 195.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 15, 2022
       New York, New York

# **Appendix**

| Name | Hours | Hourly Rate | Fees |
|------|-------|-------------|------|
| Yu Anqi | 7.9 | 200 | 1580 |
| Ge Qu | 68.4 | 300 | 20520 |
| Ge Yan | 5.8 | 150/175 | 885 |
| Jiajing Fan | 0.4 | 300 | 120 |
| Jian Hang | 14.1 | 350 | 4935 |
| Leticia Ochoa | 2.9 | 150 | 435 |
| Lorena Duarte | 5 | 300 | 1500 |
| Maritza Yanes | 90 | 150/175 | 13952.5 |
| Oscar Alvarado | 56.8 | 300 | 17040 |
| Qinyu Fan | 0.8 | 300 | 240 |
| Shan Zhu | 285.2 | 150/300 | 85440 |
| Suelen Chimanski | 3.1 | 150 | 465 |
| Yuezhu Liu | 25.4 | 300 | 7620 |
| Zindzi Baugh Corbett | 0.3 | 300 | 90 |
|  | 566.1 |  | 154822.5 |